**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, ALLSTATE FIRE & CASUALTY INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, ALLSTATE NEW JERSEY INSURANCE COMPANY, ALLSTATE NEW JERSEY PROPERTY & CASUALTY INSURANCE COMPANY AND ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, <br><br> PLAINTIFFS, <br><br> -AGAINST- <br><br> MICHAEL CHILLEMI JR., MICHAEL CHILLEMI, SR., D.C., JOHN MANFREDI, D.C., LANDIS BARNES, D.O., NILAY R. SHAH, M.D., DAVID ABRAMS, D.C., FOKION AVGERINOS, D.C., ANGELA CANCELLIERI, D.C., CHARLES CANCELLIERI, D.C., STEPHEN J. COSTA, D.C., DENNY JULEWICZ, D.C., JOHN PIAZZA, D.C., LEONID REYFMAN, M.D. A/K/A LEON REYFMAN, D.C. JEFFREY SPINA, D.C., AVGERINOS CHIROPRACTIC, P.C., BEDFORD-FLATBUSH CHIROPRACTIC, P.C., CANCELLIERI CHIROPRACTIC, P.C., DRS. ABRAMS, PIAZZA & JULEWICZ DC, PLLC, FIRST COLUMBUS MEDICAL P.C., LR MEDICAL, PLLC, MEDICAL DIAGNOSTIC SERVICES P.C., MIDDLETOWN CHIROPRACTIC P.C. D/B/A CHIROCARE CHIROPRACTIC, MOUNT VERNON MEDICAL CARE, P.C. D/B/A MOUNT VERNON MEDICAL CARE AND REHABILITATION, JOHN DOES 1 THROUGH 20 AND ABC CORPORATIONS 1 THROUGH 20, <br><br> DEFENDANTS. | AMENDED COMPLAINT <br><br> INDEX NO: <br><br> 19-CV-3051 (ERK)(VMS) <br><br><br> JURY TRIAL DEMANDED |

Allstate Insurance Company, Allstate Fire & Casualty Insurance Company, Allstate

Indemnity Company, Allstate New Jersey Insurance Company, Allstate New Jersey Property

& Casualty Insurance Company and Allstate Property & Casualty Insurance Company

(collectively referred to herein interchangeably as "Plaintiffs" or "Allstate"), by their attorneys

Morrison Mahoney, LLP, for their Complaint against Michael Chillemi Jr., D.C. ("Chillemi,

Jr."), Michael Chillemi, Sr. ("Chillemi, Sr."), John Manfredi, D.C. ("Manfredi"), Landis

Barnes, D.O. ("Barnes"), Nilay R. Shah, M.D., ("Shah") David Abrams, D.C. ("Abrams"),

Fokion Avgerinos, D.C. ("Avgerinos"), Angela Cancellieri, D.C. ("A. Cancellieri"), Charles

Cancellieri, D.C. ("C. Cancellieri"), Stephen J. Costa, D.C. ("Costa"),  Denny Julewicz, D.C.

("Julewicz"), John Piazza, D.C. ("Piazza"), Leonid Reyfman, M.D. a/k/a Leon Reyfman

("Reyfman"), Alan Rosen, D.C. ("Rosen"), Jeffrey Spina, D.C. ("Spina"), Avgerinos Chiropractic, P.C. ("Avgerinos Chiropractic"), Bedford-Flatbush Chiropractic, P.C. ("Bedford-Flatbush Chiropractic"), Cancellieri Chiropractic, P.C. ("Cancellieri Chiropractic"), Drs. Abrams, Piazza & Julewicz DC, PLLC ("Drs. Abrams, Piazza & Julewicz"), First Columbus Medical P.C. ("First Columbus Medical"), LR Medical, PLLC ("LR Medical"), Medical Diagnostic Services, P.C. ("Medical Diagnostic Services"), Middletown Chiropractic P.C. d/b/a ChiroCare Chiropractic ("Middletown Chiropractic"), Mount Vernon Medical Care, P.C. d/b/a Mount Vernon Medical Care and Rehabilitation ("Mount Vernon Medical Care"), John Does 1 through 20 and ABC Corporations 1 through 20 (collectively referred to hereinafter as the "Defendants"), allege as follows:

## PRELIMINARY STATEMENT

1.     On information and belief, beginning in or about February 2014, through the filing of this Complaint, Defendants Michael Chillemi, Jr. and Michael Chillemi, Sr. (when not referred to individually by name, Michael Chillemi Jr. and Michael Chillemi Sr. are collectively referred to herein as the "Chillemi Defendants") and/or one or more of the John Doe Defendants (collectively referred to with the Chillemi Defendants as the "Controllers") presided over numerous enterprises that systematically stole millions of dollars from automobile insurance companies, including Allstate, through New York State's No-fault system via the submission of fraudulent claims for medical services submitted and/or billed by Medical Diagnostic Services and First Columbus Medical, each an entity formed and operated in violation of Article 15 of the Business Corporation Law, Article 65 of the Education Law and the implementing regulations promulgated by the New York State Department of Financial Services concerning the eligibility requirements of health care providers seeking reimbursement under the No-fault Law.

2.      In furtherance of the schemes to defraud, the Controllers, none of whom are licensed and/or authorized to operate and/or own a medical professional corporation in the State of New York, created Medical Diagnostic Services, through which they provide technicians and mobile equipment to perform what they referred to as "Evidence Based Functional Evaluation" and/or "Functional Evaluation Test" tests (hereinafter referred to as "Functional Evaluation Testing") at the offices of healthcare providers across New York State, as well as provide boilerplate reports that purport to document the results of the Functional Evaluation Testing.

3.      In furtherance of their scheme to defraud, subsequent to their creation of Medical Diagnostic Services, in or about October 2016, based upon their belief that Medical Diagnostic Services could not bill No-fault insurers such as Allstate, the Controllers created First Columbus Medical for the sole and specific purpose of being used as a vehicle through which services purportedly performed by Medical Diagnostic Services could be submitted to insurers in general, and Allstate in particular, for reimbursement under First Columbus Medical's name.

4.      At all times relevant herein, First Columbus Medical did not perform any of the services for which it billed Allstate; rather, the services were performed by Medical Diagnostic Services pursuant to an independent contractor agreement that Medical Diagnostic Services entered into with First Columbus Medical.

5.      Under New York's No-fault Law, a medical provider may not seek reimbursement of No-fault benefits for services rendered by an independent contractor.

6.      The Controllers orchestrated the fraud alleged herein, with the assistance, participation and agreement of Defendant Doctor Nilay Shah ("Shah"), through the creation of Medical Diagnostic Services and First Columbus Medical, both of which are illegally owned,

fraudulently incorporated and improperly licensed professional corporations that were used to fraudulently bill insurance companies in general, and Allstate, in particular.

7.      The practice of medicine by one who is not a physician, as well as the sale of a medical license by a physician, are felonies pursuant to New York Education Law § 6512.

8.      On information and belief, in violation of Article 15 of the BCL, once Medical Diagnostic Services and First Columbus Medical were incorporated in the State of New York, Defendant Shah abdicated and/or was divested of any and all attributes of true ownership and control, which were diverted and/or ceded by the Controllers to themselves and/or one or more of the ABC Corporations, in which one or more of the Controllers also maintained a similar ownership and financial interest.

9.      In *State Farm Mut. Auto. Ins. Co. v. Mallela*, 4 N.Y.3d 313, 827 N.E.2d 758, 794 N.Y.S.2d 700 (2005), the New York Court of Appeals held, in part, that (1) a professional corporation not licensed in accordance with applicable New York State law is not entitled to recover benefits under the New York State No-fault Law and implementing regulations irrespective of the date of service, and (2) an insurer is entitled to recover payments made to such an entity on or after April 4, 2002, the effective date of the amended No-fault regulations.

10.     On information and belief, in violation of Article 15 of New York's Business Corporation Law ("BCL") and the stringent eligibility and reimbursement requirements mandated under the New York State No-fault Law and implementing regulations, from its respective date of incorporation, the Controllers have been the illegal owners of Medical Diagnostic Services and First Columbus Medical, which are purportedly professional corporations owned on paper by Defendant Shah.

11.     At all relevant times mentioned herein, although pursuant to, and in purported compliance with, Section 1503 of the BCL, the Controllers listed Defendant Shah as the sole

shareholder, officer and director of Medical Diagnostic Services and First Columbus Medical on their certificates of incorporation filed with the Department of State, Defendant Shah was, in fact, a nominal, paper owner, who, upon Medical Diagnostic Services' and First Columbus Medical's incorporation, abdicated any true ownership interest therein and control to the Controllers, who were non-physicians.

12.     By allowing his name and license to be used to fraudulently incorporate and/or vest ownership, control and operation of Medical Diagnostic Services and First Columbus Medical in the Controllers, Defendant Shah held out Medical Diagnostic Services and First Columbus Medical to be legitimate professional corporations in compliance with core licensing requirements when, in fact, they were not.  In doing so, Defendant Shah, together with the Controllers, perpetrated a fraud upon the public and Allstate, among others.

13.     On information and belief, the Controllers submitted and/or caused to be submitted claims through Medical Diagnostic Services and/or First Columbus Medical for Functional Evaluation Testing purportedly rendered to persons who allegedly sustained injuries covered under the No-fault Law ("Covered Persons").

14.     Under the No-Fault law, policyholders and others who sustain injuries in automobile accidents can obtain payments from the policyholders' automobile insurance companies for necessary medical care, including treatments, tests and medical equipment ordered by the patients' physicians.

15.     Under the No-fault Law, Covered Persons can only assign the right to payment of those benefits directly to doctors and other properly licensed healthcare providers through an assignment of benefits, or similar form (referred to herein as an "Assignment of Benefits"), enabling them to bill insurance companies directly for their services.

16.     On information and belief, the Controllers exploited the No-fault system by

obtaining such Assignments of Benefits, and billing insurers, including Allstate, for Functional Evaluation Testing or medical services purportedly rendered and/or billed by fraudulently incorporated professional corporations.

17.     On information and belief, at all relevant times mentioned herein, the Controllers, and/or one or more of the ABC Corporations entered into and/or arranged for Defendant Shah to enter into fake agreements with them to ostensibly provide management, marketing, billing and/or other services.  In fact, these purported agreements were used to funnel thousands of dollars in fraudulently obtained insurance payments to the Controllers.

18.     In contravention of the strong public policy concerns of the New York State Legislature in regulating the licensing of, and limiting the practice of medicine to, qualified professionals, the Controllers circumvented the laws of the State and imperiled the welfare of the public by engaging in the wholesale purchase and misuse of Defendant Shah's medical license.

19.     The Controllers, by submitting fraudulent claims for medical services through Medical Diagnostic Services and First Columbus Medical, each an entity formed and operated in violation of Article 15 of the Business Corporation Law, Article 65 of the Education Law and the implementing regulations promulgated by the New York State Department of Financial Services, violated the laws established by the State of New York to protect the public from the unlicensed practice of medicine, for the purpose of converting money, in disregard of its impact on the premium-paying public.

20.     Such claims continue to be submitted by and/or in the name of Medical Diagnostic Services and First Columbus Medical and are, or can be, the subject of No-fault collection actions and/or arbitrations to recover benefits, and thus, constitute a continuing harm to Allstate.

21.     By way of example and not limitation, annexed hereto as Exhibit "A" is a spreadsheet listing the No-fault claims that Allstate paid to Medical Diagnostic Services and First Columbus Medical to which they are not entitled, because of their fraudulent corporate structure.  By way of further example and not limitation, annexed hereto as Exhibit "B" is a spreadsheet listing the current No-fault claims that form the basis of Allstate' request for declaratory relief as it relates to Medical Diagnostic Services and First Columbus Medical.

22.     In addition to billing for services purportedly provided by and/or billed through fraudulently incorporated and improperly licensed PCs, in furtherance of the scheme to defraud alleged herein, the Controllers also engaged in kickback arrangements with a number of health care providers that the Controllers did not own, operate or control, and/or their owners, including Landis Barnes, D.O., David Abrams, D.C., Fokion Avgerinos, D.C., Angela Cancellieri, D.C., Charles Cancellieri, D.C., Stephen J. Costa, D.C., Denny Julewicz, D.C., John Piazza, D.C., Leonid Reyfman, M.D. a/k/a Leon Reyfman,  Alan Rosen, D.C., Jeffrey Spina, D.C. (the Licensed Healthcare Professionals"), Avgerinos Chiropractic, P.C., Bedford-Flatbush Chiropractic, P.C., Cancellieri Chiropractic, P.C., Drs. Abrams, Piazza & Julewicz, DC, PLLC, LR Medical, PLLC, Middletown Chiropractic P.C., and Mount Vernon Medical Care, P.C., (the "Referring PCs") (referred to collectively with the Licensed Healthcare Professionals as the "Referring Providers.").

23.     Pursuant to the arrangements between the Controllers and the Referring Providers, in exchange for a kickback and/or other financial compensation paid directly and/or indirectly by the Controllers, Medical Diagnostic Services and/or First Columbus Medical, the Referring Providers referred, or caused to be referred, Covered Persons who were purportedly receiving treatment at the Referring Providers for Functional Evaluation Testing, pursuant to a pre-determined fraudulent protocol of treatment, irrespective of medical necessity and/or

diagnostic value.

24.    On information and belief, the healthcare providers associated with the Referring Providers referred Covered Persons for Functional Evaluation Testing and signed and/or authorized their signature to be affixed to boilerplate letters of medical necessity ordering the tests, falsely representing that the Functional Evaluation Testing was medically necessary and/or had diagnostic value.

25.    In furtherance of Defendants' scheme to defraud alleged herein, a Covered Person's treatment by a Referring Provider resulted in a referral for Functional Evaluation Testing that was used to allegedly justify the billing for Functional Evaluation Testing by both Medical Diagnostic Services and/or First Columbus Medical and the Referring Provider.

26.    On information and belief, the Controllers created a pattern and protocol that Medical Diagnostic Services and/or First Columbus Medical, and the Referring Providers, followed which involved the submission of virtually identical documents, provided to the Referring Providers by Medical Diagnostic Services and/or First Columbus Medical, including but not limited to, Functional Evaluation Testing reports, medical order forms and certificates of medical necessity.

27.    On information and belief, the Functional Evaluation Testing, which purportedly consisted of, among other things, computerized range of motion testing, muscle and strength testing and/or impairment rating was performed on-site at the office of the Referring Providers with mobile equipment and technicians provided by Medical Diagnostic Services.

28.    On information and belief, once the Functional Evaluation Testing was performed, the test results were purportedly processed by Medical Diagnostic Services and/or First Columbus Medical and transmitted to the Referring Providers for the purported

interpretation and review of the testing.

29.     On information and belief, although Medical Diagnostic Services provided the technicians that purportedly performed the Functional Evaluation Testing, Medical Diagnostic Services did not interpret the testing.  Instead, the Referring Providers billed for the purported interpretation and review of the Functional Evaluation Testing.

30.     On information and belief, the Referring Providers referred Covered Persons for Functional Evaluation Testing to enable Medical Diagnostic Services and/or First Columbus Medical to seek reimbursement under the No-fault Law for such testing, in exchange for its own opportunity to seek reimbursement for purportedly reviewing and interpreting the test results.

31.     On information and belief, in violation of the New York State Workers' Compensation Medical Fee Schedule (the "Fee Schedule") and Current Procedural Terminology ("CPT") Code published by the American Medical Association ("AMA"), Medical Diagnostic Services and First Columbus Medical fraudulently billed for what they purported was the "performance" of Functional Evaluation Testing as range of motion and muscle testing procedures under CPT codes 95831, 95832, 95851, 95852, while the Referring providers concurrently submitted bills for what they purported was the "interpretation" and "review" of the same test under CPT 97750, which is the CPT code designated for physical performance testing.

32.     First Columbus Medical also fraudulently billed for what it purported was the "performance" of Functional Evaluation Testing under CPT 97750, while one or more of the Referring Providers concurrently billed for the "interpretation" and "review" of the same test under CPT 99358, which is the CPT code designated for non-face to face prolonged evaluation and management service.

33.    On information and belief, in furtherance of their scheme to defraud and as part of a kickback arrangement, Medical Diagnostic Services, First Columbus Medical and the Referring Providers intentionally misused the aforementioned CPT codes to conceal and misrepresent the actual services provided and did not provide the services as billed.

34.    On information and belief, in violation of the Fee Schedule and the CPT Code, and in order to allow the Referring Providers to bill for the interpretation and review of the Functional Evaluation tests Medical Diagnostic Services purported to perform, Medical Diagnostic Services and First Columbus Medical routinely and fraudulently billed for the Functional Evaluation Tests as separate range of motion and muscle testing procedures, which in actuality are integral components of the total Functional Evaluation test.

35.    On information and belief, in violation of the Fee Schedule and the CPT code, and in order to allow the Referring Providers to bill for the interpretation and review of the Functional Evaluation Testing Medical Diagnostic Services purported to perform, Medical Diagnostic Services, First Columbus Medical and/or the Referring Providers also routinely and fraudulently billed using CPT 97750, to split the Functional Evaluation Testing into independent billing for the performance and interpretation components, irrespective that such a split is not permitted or otherwise recognized under the 97750 CPT Code by the AMA or the Fee Schedule.

36.    On information and belief, in violation of the Fee Schedule and the CPT code, despite attesting to have reviewed and interpreted the Functional Evaluation testing "with the patient," one or more of the Referring Providers routinely and fraudulently billed for interpretation and review of the Functional Evaluation Testing as a non-face-to-face prolonged evaluation and management service.

37.    On information and belief, the Referring Providers did not interpret and/or

review the Functional Evaluation Testing results with Covered Persons and/or modify their treatment plan based thereon.

38.     On information and belief, despite not interpreting Functional Evaluation Testing reports, reviewing the Functional Evaluation Testing results with Covered Persons, and/or modifying their treatment protocol(s) based thereon, the Referring Providers nevertheless billed Allstate for such services.

39.     On information and belief, in exchange for referring their patients to Medical Diagnostic Services and/or First Columbus Medical for Functional Evaluation Testing, the Referring Providers increased their billing inasmuch as they billed for the interpretation and review of the Functional Evaluation Testing purportedly provided by Medical Diagnostic Services and/or First Columbus Medical, as well as billed for additional services purportedly based on the interpretation and review of the test.

40.     On information and belief, the amounts paid by Allstate, among others, to the Referring Providers, provided the financial incentive for the Referring Providers to refer patients to Medical Diagnostic Services and/or First Columbus Medical for Functional Evaluation Testing pursuant to a predetermined course of treatment, irrespective of medical necessity.

41.     Pursuant to New York's Education Law, the payment by a healthcare practitioner or P.C. to another party for the referral of a patient is prohibited.

42.     Because the Covered Persons purportedly treated by the Referring Providers were referred for Functional Evaluation Testing as a result of a kickback scheme in furtherance of Defendants' scheme to defraud, any bills submitted to Allstate for such services were fraudulent and, as such, never eligible for reimbursement.

43.     In addition to being fraudulently incorporated and unlicensed professional

corporations that engaged in illegal kickback arrangements with the Referring Providers, at all relevant times mentioned herein, Medical Diagnostic Services and/or First Columbus Medical submitted and continue to submit bills to and/or seek collection for payment from No-fault insurers, in general, and Allstate, in particular, for Functional Evaluation Testing that was not rendered as billed, was of no diagnostic value and/or provided pursuant to a pre-determined fraudulent protocol, based on an unlawful kickback scheme, irrespective of medical necessity.

44.     On information and belief, the primary purpose for which Functional Evaluation Testing was purportedly performed and/or billed through Medical Diagnostic Services and/or First Columbus Medical was to financially enrich the Controllers.

45.     As more fully alleged in the "Functional Evaluation Testing Scheme to Defraud" section below, as a matter of practice, procedure and protocol, Medical Diagnostic Services and/or First Columbus Medical, and the Referring Providers, fraudulently submitted bills and reports for Functional Evaluation Testing that was not rendered, not rendered as billed, was of no diagnostic value, contained material misrepresentations and/or fabricated test results, including but not limited to, incomplete range of motion measurements, fraudulent billing for uninjured segments of the spine and/or extremities for the purpose of increasing reimbursement, fraudulent diagnosis of nerve impairment, and fraudulent misrepresentation of lumbosacral and/or cervical regional impairment.

46.     By way of example and not limitation, annexed hereto as Exhibit "C" is a spreadsheet listing the No-fault claims that Allstate paid to Medical Diagnostic Services, First Columbus Medical and the Referring Providers to which they are not entitled, because of their fraudulent scheme.  By way of further example and not limitation, annexed hereto as Exhibit "D" is a spreadsheet listing the current No-fault claims that form the basis of Allstate's request for declaratory relief as it relates to Medical Diagnostic Services, First Columbus Medical and

the Referring Providers fraudulent scheme. Said spreadsheets are grouped by claim number, P.C., date of service and the amount billed.

47.     The practices alleged herein were conducted willfully, with the sole object of converting money, in utter disregard of their impact on the premium-paying public and in flagrant disregard of the rules and laws governing provision of services under the No-fault Law.

48.     The fraudulent billing activity described herein not only is an imminent and ongoing threat to consumers' health, but it drains the limited health care resources of this Country, resources which are already under strain to meet legitimate healthcare needs.  The New York State Department of Financial Services and insurance committees in both the New York State Senate and Assembly each estimate that No-fault insurance fraud is costing New York State consumers in excess of one billion dollars a year.

49.     On information and belief, separate and apart from his participation in the kickback scheme alleged herein, Defendant Manfredi presided over a separate and related enterprise that systematically stole thousands of dollars from automobile insurance companies, including Allstate, through New York State's No-fault system via the submission of fraudulent claims for medical services submitted by Referring Provider Mount Vernon Medical Care, P.C. ("Mount Vernon Medical Care").

50.     Defendant Manfredi, a chiropractor, not licensed and/or authorized to operate and/or own a medical professional corporation in the State of New York, was the true beneficial owner of Mount Vernon Medical Care.  With the assistance, participation and agreement of Defendant Barnes and other non-party physicians, Defendant Manfredi purchased or otherwise was permitted to use the physicians' names and licenses to fraudulently incorporate, and illegally own, control and/or operate Mount Vernon Medical Care, an improperly licensed

professional corporation that was used to fraudulently bill insurance companies in general and Allstate, in particular.

51. On information and belief, in violation of Article 15 of New York's Business Corporation Law ("BCL") and the stringent eligibility and reimbursement requirements mandated under the New York State No-fault Law and implementing regulations, at all times relevant herein, Defendant Manfredi has been the illegal owner of Mount Vernon Medical Care, which is purportedly a professional corporation, owned on paper by Defendant Barnes, and/or Joseph Greenspan, M.D., ("Greenspan") who is deceased and not named as a Defendant in this action.

52. On information and belief, at all relevant times mentioned herein, although pursuant to, and in purported compliance with, Section 1503 of the BCL, Defendant Barnes has been listed as the sole shareholder, officer and director of Mount Vernon Medical Care on corporate documentation filed with the Departments of State and/or Education, when he was, in fact, a nominal, paper owner, who, upon obtaining his interest in Mount Vernon Medical Care, abdicated any true ownership interest therein and control to Defendant Manfredi, who is not a physician.

53. On information and belief, Defendant Manfredi violated the laws established by the State of New York to protect the public from the unlicensed practice of medicine for the purpose of converting money, in disregard of its impact on the premium-paying public.

54. By allowing his name and license to be used to fraudulently vest ownership, control and operation of Mount Vernon Medical Care in Defendant Manfredi, Defendant Barnes held out Mount Vernon Medical Care to be legitimate professional corporation in compliance with core licensing requirements when, in fact, it was not. In doing so, Defendant Barnes, together with Defendant Manfredi, perpetrated a fraud upon the public and Allstate,

among others.

55.     On information and belief, Defendant Manfredi exploited the No-fault system by obtaining Assignments of Benefits from Covered Persons, and billing insurers, including Allstate, for Functional Evaluation Testing and other medical services purportedly rendered by a fraudulently incorporated professional corporation.

56.     On information and belief, at all relevant times mentioned herein, Defendant Manfredi entered into and/or arranged for Defendant Barnes to enter into fake agreements with one or more of the ABC Corporations to ostensibly provide management, marketing, billing and/or other services.  In fact, these purported agreements were used to funnel thousands of dollars in fraudulently obtained insurance payments to Defendant Manfredi.

57.     On information and belief, Defendant Manfredi presided over a scheme intended to circumvent, and in fact, violate Article 15 of the BCL and its proscription against the corporate practice of medicine, as well as Article 65 of the Education Law.

58.     In contravention of the strong public policy concerns of the New York State Legislature in regulating the licensing of, and limiting the practice of medicine to, qualified professionals, Defendant Manfredi circumvented the laws of the State and imperiled the welfare of the public by engaging in the wholesale purchase and misuse of Defendant Barnes' medical license.

59.     Defendant Manfredi, by submitting fraudulent claims for medical services through Mount Vernon Medical Care, an entity formed and operated in violation of Article 15 of the Business Corporation Law, Article 65 of the Education Law and the implementing regulations promulgated by the New York State Department of Financial Services, violated the laws established by the State of New York to protect the public from the unlicensed practice of medicine, for the purpose of converting money, in disregard of its impact on the premium-

paying public.

60.    Such claims continue to be submitted by and/or in the name of Mount Vernon Medical Care, and are, or can be, the subject of No-fault collection actions and/or arbitrations to recover benefits, and thus, constitute a continuing harm to Allstate.

61.    By way of example and not limitation, annexed hereto as Exhibit "E" is a spreadsheet listing the No-fault claims that Allstate paid to Mount Vernon Medical Care to which they are not entitled, because of its fraudulent corporate structure.  By way of further example and not limitation, annexed hereto as Exhibit "F" is a spreadsheet listing the current No-fault claims that form the basis of Allstate's request for declaratory relief as it relates to Mount Vernon Medical Care.

62.    The duration, scope and nature of all Defendants' illegal conduct brings this case well within the realm of criminal conduct to which the Racketeering Influenced and Corrupt Organization Act ("RICO") applies.  Defendants did not engage in sporadic acts of fraud -- although that would be troubling enough -- they adopted a fraudulent blueprint as their business plan, and used it to participate in a systematic pattern of racketeering activity.  Every facet of Defendants' operations, from generating fraudulent supporting medical documents to record keeping to billing, was carried out for the purpose of committing fraud.

## NATURE OF THE ACTION

63.    This action is brought pursuant to:

i)    The United States Racketeer Influenced and Corrupt Organizations Act ("RICO"); 18 U.S.C. §§ 1961, 1962(c), and 1964(c);

ii)  New York State common law; and

iii) Federal Declaratory Judgment Act.

### NATURE OF RELIEF SOUGHT

64.     Allstate seeks treble damages that it sustained as a result of the Defendants' schemes and artifices to defraud, and acts of mail fraud (pursuant to 18 U.S.C. § 1341), in connection with their use of the facilities of the No-fault system and its assignment of benefits mechanism to fraudulently obtain payments from Allstate for medical services they allegedly rendered to individuals covered by Allstate under New York State's No-fault Law.

65.     Allstate seeks compensatory damages to recover all payments made to Medical Diagnostic Services, First Columbus Medical and Mount Vernon Medical Care, and punitive damages sustained as a result of Defendants' fraudulently obtaining payments from Allstate for purported medical services rendered by fraudulently incorporated professional corporations to individuals covered by Allstate under New York State's No-fault Law.

66.     Allstate also seeks compensatory and punitive damages to recover all payments made to Medical Diagnostic Services, First Columbus Medical Care and/or the Referring Providers for purported health services rendered as a result of an unlawful kickback scheme, services performed by independent contractors, and/or as a result of fraudulent billing.

67.     Allstate further seeks recovery of the No-fault claim payments made under the independent theory of unjust enrichment.

68.     Allstate further seeks a judgment declaring that:

    i)   Allstate is under no obligation to pay any of Medical Diagnostic Services', First Columbus Medical's or Mount Vernon Medical Care's No-fault claims due to their fraudulent corporate structure;

    ii)   Medical Diagnostic Services, First Columbus Medical and Mount Vernon Medical Care never had, and do not now have, standing to prosecute any claim for first-party No-fault benefits as assignees of Covered Persons in any arbitration proceeding or lawsuit commenced in state or federal court due to their fraudulent corporate structure; and

iii) Allstate is under no obligation to pay any of the No-fault claims submitted by Medical Diagnostic Services, First Columbus Medical, and the Referring Providers to Allstate because the billed for services were performed pursuant to a fraudulent treatment protocol, irrespective of medical necessity, as a result of an unlawful kickback scheme.

iv) Plaintiffs are under no obligation to pay First Columbus Medical's No-fault claims because the billed for services were performed pursuant to an illegal independent contractor relationship.

69. As a result of Defendants' actions alleged below, Allstate was defrauded of an amount in excess of $600,000.00, the exact amount to be determined at trial, in payments which Defendants received for billing Allstate for purported medical services provided by fraudulently incorporated professional corporations, pursuant to a pre-determined fraudulent protocol and/or as a result of an unlawful kickback scheme.

## THE PARTIES

A.   **Plaintiffs**

70. Allstate Insurance Company is duly organized and existing under the laws of the State of Illinois; having its principal place of business in Northbrook, Illinois.

71. Allstate Indemnity Company is duly organized and existing under the laws of the State of Illinois; having its principal place of business in Northbrook, Illinois.

72. Allstate Fire & Casualty Insurance Company is duly organized and existing under the laws of the State of Illinois; having its principal place of business in Northbrook, Illinois.

73. Allstate New Jersey Insurance Company is duly organized and existing under the laws of the State of Illinois; having its principal place of business in Northbrook, Illinois.

74. Allstate New Jersey Property & Casualty Insurance Company is duly organized and existing under the laws of the State of Illinois; having its principal place of business in

Northbrook, Illinois.

75.    Allstate Property & Casualty Insurance Company is duly organized and existing under the laws of the State of Illinois; having its principal place of business in Northbrook, Illinois.

76.    Allstate Insurance Company, Allstate Fire & Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Insurance Company, Allstate New Jersey Property & Casualty Insurance Company and Allstate Property & Casualty Insurance Company are collectively referred to herein interchangeably as "Plaintiffs" or "Allstate."

77.    Plaintiffs are duly organized and licensed to engage in the writing of automobile insurance policies in the State of New York and provide automobile insurance coverage to its policyholders under and in accordance with New York State Law.

**B.    The Defendant Controllers**

78.    Defendant Michael Chillemi, Jr. ("Chillemi Jr.") is a natural person residing in the State of New Jersey who owned, managed, controlled, operated and/or is an undisclosed Controller and owner Medical Diagnostic Services and First Columbus Medical. In furtherance of the scheme to defraud alleged herein, Defendant Chillemi Jr. transacted business within New York State and/or contracted to provide services within New York State. Defendant Chillemi Jr. is licensed to practice chiropractic in the State of New York under license number 008580, issued by the New York State Education Department on or about May 20, 1997. Chillemi Jr. is not a physician and have never been licensed practice medicine in the State of New York.

79.    On information and belief, at all times mentioned herein, Defendant Chillemi Jr. played an integral role in Defendants' elaborate scheme to defraud Allstate; entered into agreements on behalf of Medical Diagnostic Services and/or First Columbus

Medical to engage in unlawful kickback schemes and ensure that the profits from Medical Diagnostic Services and/or First Columbus Medical were funneled to him; solicited Defendant Shah to form Medical Diagnostic Services and/or First Columbus Medical in violation of the New York Business Corporation Law; operated, controlled and was the true beneficial owner of Medical Diagnostic Services and/or First Columbus Medical and marketed and/or solicited relationships with one or more healthcare providers that he did not own, operate or control, including the Referring Providers, to secure a referral source for Medical Diagnostic Services and/or First Columbus Medical's patients.

80.     On information and belief, at all relevant times mentioned herein, Defendant Chillemi Jr. owned, operated and/or controlled one or more of the ABC Corporations.

81.     On information and belief, Defendant Chillemi Jr. is also one of the true owners of Medical Diagnostic Services and First Columbus Medical and/or maintains a controlling financial interest therein.

82.     Defendant Michael Chillemi, Sr. ("Chillemi Sr.") is a natural person residing in the State of New Jersey who managed, owned, controlled, operated and/or is an undisclosed Controller and owner of Medical Diagnostic Services and/or First Columbus Medical.  In furtherance of the scheme to defraud alleged herein, Defendant Chillemi Sr. transacted business within New York State and/or contracted to provide services within New York State. Defendant Chillemi Sr. is a layperson who has never been licensed to practice any healthcare profession in the State of New York.

83.     On information and belief, at all times mentioned herein, Defendant Chillemi Sr. played an integral role in Defendants' elaborate scheme to defraud Allstate; entered into agreements on behalf of Medical Diagnostic Services and/or First Columbus Medical to engage in unlawful kickback schemes and ensure that the profits from Medical Diagnostic

Services and/or First Columbus Medical were funneled to him; solicited Defendant Shah to form Medical Diagnostic Services and/or First Columbus Medical in violation of the New York Business Corporation Law; operated, controlled and was the true beneficial owner of Medical Diagnostic Services and/or First Columbus Medical and marketed and/or solicited relationships with one or more healthcare providers that he did not own, operate or control, including the Referring Providers, to secure a referral source for Medical Diagnostic Services and/or First Columbus Medical's patients.

84.  On information and belief, at all relevant times mentioned herein, Defendant Chillemi Sr. owned, operated and/or controlled one or more of the ABC Corporations.

85.  On information and belief, Defendant Chillemi Sr. is also one of the true owners of Medical Diagnostic Services and/or First Columbus Medical and/or maintains a controlling financial interest therein.

86.  Defendant John Manfredi, D.C. ("Manfredi") is a natural person residing in the State of New York who owned, controlled, operated and/or is an undisclosed Controller and owner of Mount Vernon Medical Care.  In furtherance of the scheme to defraud alleged herein, Defendant Manfredi transacted business within New York State and/or contracted to provide services within New York State.  Defendant Manfredi is licensed to practice chiropractic in the State of New York under license number 005560, issued by the New York State Education Department on or about May 31, 1988.  Manfredi is not a physician and have never been licensed practice medicine in the State of New York.

87.  On information and belief, at all times mentioned herein, Defendant Manfredi entered into agreements on behalf of Mount Vernon Medical Care to engage in unlawful kickback schemes and ensure that the profits from Mount Vernon Medical Care were funneled to him and solicited Defendant Barnes to form Mount Vernon Medical Care in violation of the

New York Business Corporation Law.

88.     On information and belief, Defendant Manfredi is one of the true owners of Mount Vernon Medical Care and/or maintains a controlling financial interest therein.

**C.     The Defendant Licensed Healthcare Professionals**

89.     Defendant Nilay Shah, M.D. ("Shah") is a natural person residing in the State of New York and practices medicine in the State of New York under license number 227852 issued by the New York State Education Department on or about March 21, 2003.  Defendant Shah is listed with the Department of State and Education as the sole owner of Medical Diagnostic Services and First Columbus Medical, and, on information and belief is the owner on paper of those professional corporations.

90.     On information and belief, to facilitate the fraudulent incorporation and/or illegal corporate structure of Medical Diagnostic Services and First Columbus Medical, Defendant Shah sold his name and/or the use of his license for a fee and/or other compensation to the Controllers and provided the essential means for the Controllers to fraudulently incorporate and/or operate Medical Diagnostic Services and First Columbus Medical and/or bill for purported medical services through Medical Diagnostic Services and/or First Columbus Medical in violation of applicable New York State Law.

91.     On information and belief, in furtherance of the scheme to defraud and as a matter of practice, procedure and protocol, Defendant Shah purportedly performed or caused to be performed and/or billed for Functional Evaluation Testing through Medical Diagnostic Services and/or First Columbus Medical that he knew or should have known would produce medically invalid test results of no diagnostic value and therefore, any bills for such services submitted to Allstate for reimbursement based thereon were fraudulent.

92.     On information and belief, in furtherance of the scheme to defraud alleged

herein, Defendant Shah, through Medical Diagnostic Services and/or First Columbus Medical, enabled the Controllers to submit bills and supporting documents to induce payment for services that were not performed as billed and, were fabricated and/or of no diagnostic value, and were purportedly provided by fraudulently incorporated medical professional corporations.

93.   Defendant David C. Abrams, D.C. ("Abrams") is a natural person residing in the State of New York and has practiced chiropractic in the State of New York under license number 003201, issued by the New York State Education Department on or about August 13, 1982.  Defendant Abrams is listed with the Departments of State and Education as one of the owners of Drs. Abrams, Piazza & Julewicz DC, PLLC.

94.    On information and belief, at all relevant times mentioned herein, Defendant Abrams knowingly participated in the scheme to defraud, including, but not limited to, receiving kickbacks from Medical Diagnostic Services, First Columbus Medical, the Controllers and/or others at their direction, and billing for services that were not medically necessary.

95.   On information and belief, in exchange for kickbacks paid by or at the direction of one or more of the Controllers, Abrams, directly and/or indirectly, referred or caused to be referred for Functional Evaluation Testing, Covered Persons who were purportedly receiving treatment by him as part of an unlawful kickback scheme, without regard to medical necessity.

96.   On information and belief, following the referral for Functional Evaluation Testing to Medical Diagnostic Services and/or First Columbus Medical, Abrams, directly and/or indirectly, caused Drs. Abrams, Piazza & Julewicz DC, PLLC to submit bills to insurers, including Allstate, for the interpretation and review of Functional Evaluation Testing that he purportedly rendered to Covered Persons pursuant to a scheme to defraud.

23

97.     Defendant Fokion Avgerinos, D.C. ("Avgerinos") is a natural person residing in the State of New York and has practiced chiropractic in the State of New York under license number 007732, issued by the New York State Education Department on or about October 14, 1994.  Defendant Avgerinos is listed with the Departments of State and Education as the owner of Avgerinos Chiropractic, P.C.

98.      On information and belief, at all relevant times mentioned herein, Defendant Avgerinos knowingly participated in the scheme to defraud, including, but not limited to, receiving kickbacks from Medical Diagnostic Services, First Columbus Medical, the Controllers and/or others at their direction, and billing for services that were not medically necessary.

99.     On information and belief, in exchange for kickbacks paid by or at the direction of one or more of the Controllers, Avgerinos, directly and/or indirectly, referred or caused to be referred for Functional Evaluation Testing, Covered Persons who were purportedly receiving treatment by him as part of an unlawful kickback scheme, without regard to medical necessity.

100.    On information and belief, following the referral for Functional Evaluation Testing to Medical Diagnostic Services and/or First Columbus Medical, Avgerinos, directly and/or indirectly, caused Avgerinos Chiropractic, P.C. to submit bills to insurers, including Allstate, for the interpretation and review of Functional Evaluation Testing that he purportedly rendered to Covered Persons pursuant to a scheme to defraud.

101.    Defendant Landis Barnes, D.O. ("Barnes") is a natural person residing in the State of New York and practices medicine in the State of New York under license number 208727 issued by the New York State Education Department on or about October 21, 1997. Defendant Barnes is listed with the Department of State and Education as the sole owner of

Mount Vernon Medical Care, and, on information and belief is the owner on paper of that professional corporation.

102.   On information and belief, to facilitate the fraudulent incorporation and/or illegal corporate structure of Mount Vernon Medical Care, Defendant Barnes sold his name and/or the use of his license for a fee and/or other compensation to the Controllers and provided the essential means for the Controllers to fraudulently incorporate and/or operate Mount Vernon Medical Care and/or bill for purported medical services through Mount Vernon Medical Care in violation of applicable New York State Law.

103.   Defendant Angela Marie Cancellieri, D.C. ("A. Cancellieri") is a natural person residing in the State of New York and has practiced chiropractic in the State of New York under license number 005472, issued by the New York State Education Department on or about May 2, 1988.  Defendant A. Cancellieri is listed with the Departments of State and Education as one of the owners and/or officers of Cancellieri Chiropractic, P.C.

104.   On information and belief, at all relevant times mentioned herein, Defendant A. Cancellieri knowingly participated in the scheme to defraud, including, but not limited to, receiving kickbacks from Medical Diagnostic Services, First Columbus Medical, the Controllers and/or others at their direction, and billing for services that were not medically necessary.

105.   On information and belief, in exchange for kickbacks paid by or at the direction of one or more of the Controllers, A. Cancellieri, directly and/or indirectly, referred or caused to be referred for Functional Evaluation Testing, Covered Persons who were purportedly receiving treatment by him as part of an unlawful kickback scheme, without regard to medical necessity.

106.   On information and belief, following the referral for Functional Evaluation

Testing to Medical Diagnostic Services and/or First Columbus Medical, A. Cancellieri, directly and/or indirectly, caused Cancellieri Chiropractic, P.C. to submit bills to insurers, including Allstate, for the interpretation and review of Functional Evaluation Testing that she purportedly rendered to Covered Persons pursuant to a scheme to defraud.

107.    Defendant Charles J. Cancellieri, D.C. ("C. Cancellieri") is a natural person residing in the State of New York and has practiced chiropractic in the State of New York under license number 004628, issued by the New York State Education Department on or about May 23, 1986.  Defendant C. Cancellieri is listed with the Departments of State and Education as one of the owners and/or officers of Cancellieri Chiropractic, P.C.

108.    On information and belief, at all relevant times mentioned herein, Defendant C. Cancellieri knowingly participated in the scheme to defraud, including, but not limited to, receiving kickbacks from Medical Diagnostic Services, First Columbus Medical, the Controllers and/or others at their direction, and billing for services that were not medically necessary.

109.    On information and belief, in exchange for kickbacks paid by or at the direction of one or more of the Controllers, C. Cancellieri, directly and/or indirectly, referred or caused to be referred for Functional Evaluation Testing, Covered Persons who were purportedly receiving treatment by him as part of an unlawful kickback scheme, without regard to medical necessity.

110.    On information and belief, following the referral for Functional Evaluation Testing to Medical Diagnostic Services and/or First Columbus Medical, C. Cancellieri, directly and/or indirectly, caused Cancellieri Chiropractic, P.C. to submit bills to insurers, including Allstate, for the interpretation and review of Functional Evaluation Testing that he purportedly rendered to Covered Persons pursuant to a scheme to defraud.

111.    Defendant Stephen J. Costa, D.C. ("Costa") is a natural person residing in the State of New York and has practiced chiropractic in the State of New York under license number 009386, issued by the New York State Education Department on or about July 16, 1999.

112.    On information and belief, at all relevant times mentioned herein, Defendant Costa knowingly participated in the scheme to defraud, including, but not limited to, receiving kickbacks from Medical Diagnostic Services, First Columbus Medical, the Controllers and/or others at their direction, and billing for services that were not medically necessary.

113.    On information and belief, in exchange for kickbacks paid by or at the direction of one or more of the Controllers, Costa, directly and/or indirectly, referred or caused to be referred for Functional Evaluation Testing Covered Persons who were purportedly receiving treatment by him as part of an unlawful kickback scheme, without regard to medical necessity.

114.    On information and belief, following the referral for Functional Evaluation Testing to Medical Diagnostic Services and/or First Columbus Medical, Costa submitted bills to insurers, including Allstate, for the interpretation and review of Functional Evaluation Testing that he purportedly rendered to Covered Persons pursuant to a scheme to defraud.

115.    Defendant Denny Alex Julewicz, D.C. ("Julewicz") is a natural person residing in the State of New York and has practiced chiropractic in the State of New York under license number 010570, issued by the New York State Education Department on or about December 17, 2002.  Defendant Julewicz is listed with the Departments of State and Education as one of the owners of Drs. Abrams, Piazza & Julewicz DC, PLLC.

116.    On information and belief, at all relevant times mentioned herein, Defendant Julewicz knowingly participated in the scheme to defraud, including, but not

limited to, receiving kickbacks from Medical Diagnostic Services, First Columbus Medical, the Controllers and/or others at their direction, and billing for services that were not medically necessary.

117.    On information and belief, in exchange for kickbacks paid by or at the direction of one or more of the Controllers, Julewicz, directly and/or indirectly, referred or caused to be referred for Functional Evaluation Testing, Covered Persons who were purportedly receiving treatment by him as part of an unlawful kickback scheme, without regard to medical necessity.

118.    On information and belief, following the referral for Functional Evaluation Testing to Medical Diagnostic Services and/or First Columbus Medical, Julewicz, directly and/or indirectly, caused Drs. Abrams, Piazza & Julewicz DC, PLLC to submit bills to insurers, including Allstate, for the interpretation and review of Functional Evaluation Testing that he purportedly rendered to Covered Persons pursuant to a scheme to defraud.

119.    Defendant John P. Piazza ("Piazza") is a natural person residing in the State of New York and has practiced chiropractic in the State of New York under license number 008326, issued by the New York State Education Department on or about June 28, 1996. Defendant Piazza is listed with the Departments of State and Education as one of the owners of Drs. Abrams, Piazza & Julewicz DC, PLLC.

120.    On information and belief, at all relevant times mentioned herein, Defendant Piazza knowingly participated in the scheme to defraud, including, but not limited to, receiving kickbacks from Medical Diagnostic Services, First Columbus Medical, the Controllers and/or others at their direction, and billing for services that were not medically necessary.

121.    On information and belief, in exchange for kickbacks paid by or at the direction of one or more of the Controllers, Piazza, directly and/or indirectly, referred or caused to be

referred for Functional Evaluation Testing, Covered Persons who were purportedly receiving treatment by him as part of an unlawful kickback scheme, without regard to medical necessity.

122. On information and belief, following the referral for Functional Evaluation Testing to Medical Diagnostic Services and/or First Columbus Medical, Piazza, directly and/or indirectly, caused Drs. Abrams, Piazza & Julewicz DC, PLLC to submit bills to insurers, including Allstate, for the interpretation and review of Functional Evaluation Testing that he purportedly rendered to Covered Persons pursuant to a scheme to defraud.

123. Defendant Leonid Reyfman, M.D. a/k/a Leon Reyfman ("Reyfman") is a natural person residing in the State of New York and has practiced medicine in the State of New York under license number 233144, issued by the New York State Education Department on or about June 29, 2004. Defendant Reyfman is listed with the Department of State and Education as the owner of LR Medical, PLLC.

124. On information and belief, at all relevant times mentioned herein, Defendant Reyfman knowingly participated in the scheme to defraud, including, but not limited to, receiving kickbacks from Medical Diagnostic Services, First Columbus Medical, the Controllers and/or others at their direction, and billing for services that were not medically necessary.

125. On information and belief, in exchange for kickbacks paid by or at the direction of one or more of the Controllers, Reyfman, directly and/or indirectly, referred or caused to be referred for Functional Evaluation Testing, Covered Persons who were purportedly receiving treatment by him as part of an unlawful kickback scheme, without regard to medical necessity.

126. On information and belief, following the referral for Functional Evaluation Testing to Medical Diagnostic Services and/or First Columbus Medical, Reyfman, directly and/or indirectly, caused LR Medical, PLLC to submit bills to insurers, including Allstate, for

the interpretation and review of Functional Evaluation Testing that he purportedly rendered to Covered Persons pursuant to a scheme to defraud.

127.    Defendant Alan J. Rosen, D.C. ("Rosen") is a natural person residing in the State of New York and has practiced chiropractic in the State of New York under license number 002112, issued by the New York State Education Department on or about October 6, 1978.  Defendant Rosen is listed with the Departments of State and Education as the owner of Bedford-Flatbush Chiropractic, P.C.

128.    On information and belief, at all relevant times mentioned herein, Defendant Rosen knowingly participated in the scheme to defraud, including, but not limited to, receiving kickbacks from Medical Diagnostic Services, First Columbus Medical, the Controllers and/or others at their direction, and billing for services that were not medically necessary.

129.    On information and belief, in exchange for kickbacks paid by or at the direction of one or more of the Controllers, Rosen, directly and/or indirectly, referred or caused to be referred for Functional Evaluation Testing, Covered Persons who were purportedly receiving treatment by him as part of an unlawful kickback scheme, without regard to medical necessity.

130.    On information and belief, following the referral for Functional Evaluation Testing to Medical Diagnostic Services and/or First Columbus Medical, Rosen, directly and/or indirectly, caused Bedford-Flatbush Chiropractic, P.C. to submit bills to insurers, including Allstate, for the interpretation and review of Functional Evaluation Testing that he purportedly rendered to Covered Persons pursuant to a scheme to defraud.

131.    Defendant Jeffrey Spina, D.C. ("Spina") is a natural person residing in the State of New York and has practiced chiropractic in the State of New York under license number 004509, issued by the New York State Education Department on or about January 31, 1986.

Defendant Spina is listed with the Departments of State and Education as the owner of Middletown Chiropractic P.C., d/b/a ChiroCare Chiropractic.

132.    On or about August 29, 2018, Spina was indicted by the United State Attorney's Office for the Southern District of New York in connection with his alleged participation in several insurance fraud schemes, including but not limited to, his fraudulent incorporation of numerous multidisciplinary medical practices in violation of Article 15 of the Business Corporation Law, Article 65 of the Education Law and the implementing regulations promulgated by the New York State Department of Financial Services, and billing for unnecessary medical treatment in several ways for physical medicine and rehabilitation, pain management, physical therapy, diagnostic testing, acupuncture and chiropractic services in exchange for kickbacks and/or other financial considerations through, Middletown Chiropractic, among several other medical practices over which he exerted ownership and control.

133.    On information and belief, at all relevant times mentioned herein, Defendant Spina knowingly participated in the scheme to defraud, including, but not limited to, receiving kickbacks from Medical Diagnostic Services, First Columbus Medical, the Controllers and/or others at their direction, and billing for services that were not medically necessary.

134.    On information and belief, in exchange for kickbacks paid by or at the direction of one or more of the Controllers, Spina, directly and/or indirectly, referred or caused to be referred for Functional Evaluation Testing, Covered Persons who were purportedly receiving treatment by him as part of an unlawful kickback scheme, without regard to medical necessity.

135.    On information and belief, following the referral for Functional Evaluation Testing to Medical Diagnostic Services and/or First Columbus Medical, Spina, directly and/or

indirectly, caused Middletown Chiropractic P.C., d/b/a ChiroCare Chiropractic to submit bills to insurers, including Allstate, for the interpretation and review of Functional Evaluation Testing that he purportedly rendered to Covered Persons pursuant to a scheme to defraud.

**D.    The Fraudulently Incorporated PCs**

136.    Medical Diagnostic Services P.C. was incorporated on or about February 20, 2014, and is purportedly a professional corporation authorized to do business in the State of New York, with its principal place of business located in New York.  Defendant Shah is the nominal owner of Medical Diagnostic Services, and, on information and belief, received a fee and/or other compensation for doing so from the Controllers and/or other entities owned, controlled and operated by them, in exchange for allowing his name and license to be used on corporate filings made with the New York State Departments of State and Education on behalf of Medical Diagnostic Services.

137.    On information and belief, at all relevant times mentioned herein, Shah in furtherance of the scheme to defraud, ceded control and ownership of Medical Diagnostic Services to the Controllers who were the true beneficial owners of that entity.

138.    On information and belief, at all relevant times mentioned herein, the Controllers were the true owners of Medical Diagnostic Services, in control of the P.C.

139.    On information and belief, in furtherance of the scheme to defraud and as a matter of practice, procedure and protocol, Medical Diagnostic Services billed and received payment from insurers, in general, and Allstate, in particular, for Functional Evaluation Testing that contained medically invalid test results, were of no diagnostic value and were fraudulent and/or provided pursuant to a pre-determined fraudulent protocol, based on an unlawful kickback scheme, irrespective of medical necessity.

140.    First Columbus Medical P.C. was incorporated on or about October 28, 2016,

and is purportedly a professional corporation authorized to do business in the State of New York, with its principal place of business located in New York.  Defendant Shah is the nominal owner of First Columbus Medical, and, on information and belief, received a fee and/or other compensation for doing so from the Controllers and/or other entities owned, controlled and operated by them, in exchange for allowing his name and license to be used on corporate filings made with the New York State Departments of State and Education on behalf of First Columbus Medical.

141.   On information and belief, at all relevant times mentioned herein, Shah, in furtherance of the scheme to defraud, ceded control and ownership of First Columbus Medical to the Controllers who were the true beneficial owners of that entity.

142.   On information and belief, at all relevant times mentioned herein, the Controllers were the true beneficial owners of First Columbus Medical, in control of the P.C.

143.   On information and belief, in furtherance of the scheme to defraud and as a matter of practice, procedure and protocol, First Columbus Medical billed and received payment from insurers, in general, and Allstate, in particular, for Functional Evaluation Testing that contained medically invalid test results, were of no diagnostic value and were fraudulent and/or provided pursuant to a pre-determined fraudulent protocol, based on an unlawful kickback scheme, irrespective of medical necessity.

144.   Mount Vernon Medical Care, P.C. was incorporated on or about January 13, 1997, and is purportedly a professional corporation authorized to do business in the State of New York, with its principal place of business located in New York.  Defendant Barnes is the nominal owner of Mount Vernon Medical Care, and, on information and belief, received a fee and/or other compensation for doing so from Manfredi and/or other entities owned, controlled and operated by them, in exchange for allowing his name and license to be used on corporate

filings made with the New York State Departments of State and Education on behalf of Mount Vernon Medical Care.

145.    On information and belief, at all relevant times mentioned herein, Barnes, in furtherance of the scheme to defraud, ceded control and ownership of Mount Vernon Medical Care to Manfredi, who is the true beneficial owners of that entity.

146.    On information and belief, in furtherance of the scheme to defraud and as a matter of practice, procedure and protocol, Mount Vernon Medical Care billed and received payment from insurers, in general, and Allstate, in particular, for Functional Evaluation Testing that contained medically invalid test results, were of no diagnostic value and were fraudulent and/or provided pursuant to a pre-determined fraudulent protocol, based on an unlawful kickback scheme, irrespective of medical necessity.

147.    On information and belief, in exchange for kickbacks paid by one or more of the Controllers, Mount Vernon Medical Care, directly and/or indirectly, referred or caused to be referred for Functional Evaluation Testing to Medical Diagnostic Services and/or First Columbus Medical, Covered Persons who were purportedly receiving treatment at Mount Vernon Medical Care as part of an unlawful kickback scheme, without regard to medical necessity.

148.    On information and belief, following the referral for Functional Evaluation Testing to Medical Diagnostic Services and/or First Columbus Medical, Mount Vernon Medical Care submitted bills to insurers, including Allstate, for the interpretation and review of Functional Evaluation Testing that it purportedly rendered to Covered Persons when, in fact, it did not render any such service and billing for such service is in violation of the Fee Schedule.

E.      **The Defendant Referring Providers**

149.    Defendant Avgerinos Chiropractic, P.C., was incorporated on or about October 9, 1997, and is a professional corporation authorized to do business in the State of New York, with its principal place of business located in New York.  Defendant Avgerinos is the record owner of Avgerinos Chiropractic, P.C.

150.    On information and belief, in exchange for kickbacks paid by one or more of the Controllers, Avgerinos Chiropractic P.C., directly and/or indirectly, referred or caused to be referred for Functional Evaluation Testing, Covered Persons who were purportedly receiving treatment at Avgerinos Chiropractic, P.C., as part of an unlawful kickback scheme, without regard to medical necessity.

151.    On information and belief, following the referral for Functional Evaluation Testing to Medical Diagnostic Services and/or First Columbus Medical, Avgerinos Chiropractic, P.C. submitted bills to insurers, including Allstate, for the professional component of Functional Evaluation Testing that it purportedly rendered to Covered Persons when, in fact, it did not render any such service and billing for such service is in violation of the Fee Schedule.

152.    Defendant Bedford-Flatbush Chiropractic, P.C. was incorporated on or about April 8, 1997, and is a professional corporation authorized to do business in the State of New York, with its principal place of business located in New York.  Defendant Rosen is the record owner of Bedford-Flatbush Chiropractic, P.C.

153.    On information and belief, in exchange for kickbacks paid by one or more of the Controllers, Bedford-Flatbush Chiropractic, P.C., directly and/or indirectly, referred or caused to be referred for Functional Evaluation Testing, Covered Persons who were purportedly receiving treatment at Bedford-Flatbush Chiropractic, P.C., as part of an unlawful

kickback scheme, without regard to medical necessity.

154.    On information and belief, following the referral for Functional Evaluation Testing to Medical Diagnostic Services and/or First Columbus Medical, Bedford-Flatbush Chiropractic, P.C. submitted bills to insurers, including Allstate, for the professional component of Functional Evaluation Testing that it purportedly rendered to Covered Persons when, in fact, it did not render any such service and billing for such service is in violation of the Fee Schedule.

155.    Defendant Cancellieri Chiropractic, P.C. was incorporated on or about September 3, 1991, and is a professional corporation authorized to do business in the State of New York, with its principal place of business located in New York.  Defendants C. Cancellieri and A. Cancellieri are the record owners of Cancellieri Chiropractic, P.C.

156.    On information and belief, in exchange for kickbacks paid by one or more of the Controllers, Cancellieri Chiropractic, P.C., directly and/or indirectly, referred or caused to be referred for Functional Evaluation Testing, Covered Persons who were purportedly receiving treatment at Cancellieri Chiropractic, P.C., as part of an unlawful kickback scheme, without regard to medical necessity.

157.    On information and belief, following the referral for Functional Evaluation Testing to Medical Diagnostic Services and/or First Columbus Medical, Cancellieri Chiropractic, P.C., submitted bills to insurers, including Allstate, for the professional component of Functional Evaluation Testing that it purportedly rendered to Covered Persons when, in fact, it did not render any such service and billing for such service is in violation of the Fee Schedule.

158.    Defendant Drs. Abrams, Piazza & Julewicz DC, PLLC was organized on or about February 23, 2011, and is a professional service limited liability company authorized to

do business in the State of New York, with its principal place of business located in New York. Defendants Abrams, Piazza and Julewicz are the record owners of Drs. Abrams, Piazza & Julewicz DC, PLLC.

159.    On information and belief, in exchange for kickbacks paid by one or more of the Controllers, Drs. Abrams, Piazza & Julewicz DC, PLLC, directly and/or indirectly, referred or caused to be referred for Functional Evaluation Testing, Covered Persons who were purportedly receiving treatment at Drs. Abrams, Piazza & Julewicz DC, PLLC, as part of an unlawful kickback scheme, without regard to medical necessity.

160.    On information and belief, following the referral for Functional Evaluation Testing to Medical Diagnostic Services and/or First Columbus Medical, Drs. Abrams, Piazza & Julewicz DC, PLLC, submitted bills to insurers, including Allstate, for the professional component of Functional Evaluation Testing that it purportedly rendered to Covered Persons when, in fact, it did not render any such service and billing for such service is in violation of the Fee Schedule

161.    Defendant LR Medical, PLLC was organized on or about February 26, 2014, and is a professional service limited liability company authorized to do business in the State of New York, with its principal place of business located in New York.  Defendant Reyfman is the record owner of LR Medical PLLC.

162.    On information and belief, in exchange for kickbacks paid by one or more of the Controllers, LR Medical, PLLC., directly and/or indirectly, referred or caused to be referred for Functional Evaluation Testing, Covered Persons who were purportedly receiving treatment at LR Medical, PLLC., as part of an unlawful kickback scheme, without regard to medical necessity.

163.    On information and belief, following the referral for Functional Evaluation

37

Testing to Medical Diagnostic Services and/or First Columbus Medical, LR Medical, PLLC submitted bills to insurers, including Allstate, for the professional component of Functional Evaluation Testing that it purportedly rendered to Covered Persons when, in fact, it did not render any such service and billing for such service is in violation of the Fee Schedule.

164.    Defendant Middletown Chiropractic P.C. d/b/a ChiroCare Chiropractic was incorporated on or about January 27, 2006, and is a professional corporation authorized to do business in the State of New York, with its principal place of business located in New York. Defendant Spina is the record owner of Middletown Chiropractic P.C.

165.    On information and belief, in exchange for kickbacks paid by one or more of the Controllers, Middletown Chiropractic P.C., directly and/or indirectly, referred or caused to be referred for Functional Evaluation Testing, Covered Persons who were purportedly receiving treatment at Middletown Chiropractic P.C., as part of an unlawful kickback scheme, without regard to medical necessity.

166.    On information and belief, following the referral for Functional Evaluation Testing to Medical Diagnostic Services and/or First Columbus Medical, Middletown Chiropractic P.C. submitted bills to insurers, including Allstate, for the professional component of Functional Evaluation Testing that it purportedly rendered to Covered Persons when, in fact, it did not render any such service and billing for such service is in violation of the Fee Schedule.

**G.    The John Doe Defendants**

167.    Defendants John Does 1 through 20 (collectively referred to as "John Does") are individuals who conspired, participated, conducted and assisted in the fraudulent and unlawful conduct alleged herein.  These individuals will be added as defendants when their names and the extent of their participation become known through discovery.

## H.    The ABC Corporations

168.    Defendant ABC Corporations 1 through 20 are additional companies that are unknown to Allstate, and are owned, controlled and operated by the Controllers and/or others unknown to Allstate, and which entered into ostensible agreements and other contracts with Medical Diagnostic Services, First Columbus Medical and/or Mount Vernon Medical Care and were used to funnel money to the Controllers.

169.    On information and belief, the ABC Corporations also are the alter egos of the Controllers and his associates and conspired and assisted in the fraudulent and unlawful conduct alleged herein.  These corporations will be added as defendants when their names and the extent of their participation become known through discovery.

## JURISDICTION AND VENUE

170.    The jurisdiction of the Court arises under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq*.; 28 U.S.C. § 1331; and principles of pendent jurisdiction.

171.    The Court has supplemental jurisdiction over the claims arising under state law pursuant to 28 U.S.C. § 1367(a) and under the Declaratory Judgment Act, 28 U.S.C. § 2201 and § 2202.

172.    The Court also has jurisdiction over the subject matter of this action under 28 U.S.C. § l332(a)(l) because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

173.    Pursuant to 18 U.S.C. § 1965, 28 U.S.C. § 1367 and New York CPLR § 302(a), this Court has personal jurisdiction over any non-domiciliary defendant.

174.    Venue lies in this District Court under the provisions of 28 U.S.C. § 1391, as the Eastern District of New York is the district where a substantial amount of the activities

forming the basis of the Complaint occurred.

### FACTUAL BACKGROUND AND ALLEGATIONS
### APPLICABLE TO ALL CAUSES OF ACTION

175.    Allstate underwrites automobile insurance in New York State and participates
in New York State's No-fault program.

176.    Under the Comprehensive Motor Vehicle Insurance Reparations Act of New
York State, Ins. Law §§ 5101, *et seq*., Allstate is required to pay, *inter alia*, for health service
expenses that are incurred as a result of injuries suffered by occupants of their insured motor
vehicles and pedestrians ("Covered Persons") that arise from the use or operation of such motor
vehicles in the State of New York.

177.    On information and belief, First Columbus Medical, Medical Diagnostic
Services, and each of the Referring Providers (collectively referred to as the "Defendant
Providers"), are ostensibly healthcare providers that bill for treatments to, among others,
individuals covered under the No-fault Law.  In exchange for its services, the Defendant
Providers accept assignments of benefits from their patients covered under the No-fault Law
(the "No-fault Covered Persons" or "Covered Persons") and submit claims for payment to No-
fault insurance carriers, in general, and to Allstate, in particular.

178.    Under the No-fault Law and implementing regulations, a provider of healthcare
services is not eligible for reimbursement under Section 5102(a)(1) of the Insurance Law if the
provider fails to meet any applicable New York State or local licensing requirement necessary
to perform such service in New York or meet any applicable licensing requirement necessary
to perform such service in any other state in which such service is performed.

**A.    Control / Ownership of Medical Diagnostic Services, First Columbus Medical and
Mount Vernon Medical Care**

179.    Pursuant to Section 1504(a) of the New York State Business Corporation Law

and regulations promulgated by the New York State Department of Health, professional service corporations may only render professional services through individuals authorized by law to render such professional services.

180.    Section 1504(c) of the Business Corporation Law of the State of New York requires, among other things, that:

> each report, diagnosis, prognosis, and prescription made or issued by a corporation practicing medicine, ... physiotherapy or chiropractic shall bear the signature of one or more physicians, ... physiotherapists, or chiropractors, respectively, who are in responsible charge of such report, diagnosis, prognosis, or prescription.

181.    Section 1507 of the Business Corporation Law of the State of New York prohibits a shareholder of a professional service corporation from issuing shares, entering into an agreement, granting proxies or transferring control to individuals who are not authorized by law to practice the profession for which the professional corporation is authorized to practice. "All shares issued, agreements made or proxies granted in violation of this section [1507] are void."

182.    Similarly, under section 1508 of the Business Corporation Law of the State of New York, no individual may be a director or officer of a professional service corporation unless that individual is authorized by law to practice in the same profession that the corporation is authorized to practice.

183.    Section 1503(b) of the Business Corporation Law of the State of New York requires that the certificates of incorporation for an entity seeking to practice as a professional service corporation state the profession to be practiced by such corporation and the names and resident addresses of all individuals who are to be the original shareholders, directors and officers of such corporation.

184.    The restrictions contained in Article 15 of the BCL were meant to "ensure that a professional service corporation renders professional services only through qualified members of the professions and are *in fact controlled only by qualified members*."  New York Legislative Annual 1970, p. 129 (emphasis added).  Restrictions in BCL § 1507 in particular were designed to "insure that a professional service corporation [such as Medical Diagnostic Services, First Columbus Medical and Mount Vernon Medical Care here] *could not be* controlled by a layperson".  *See* New York State Legislative Annual 1971, p. 130 (emphasis added).  These are not mere technical requirements, but are part of an important and long-established regulatory scheme specifically designed by the Legislature to protect patients' health and safety and to insure the ethical and competent practice of the profession of medicine. *See People v. Cole*, 219 N.Y. 98 (1916) (purpose of licensing provisions governing practice of medicine is to protect the public).  Indeed, Section 6512 of the Education Law makes it a Class E felony to "fraudulently sell...any...license...purporting to authorize the practice of a profession."  Moreover, the New York State Department of Health has determined that violating these important provisions constitutes "professional misconduct" that can result in the revocation of a physician's medical license.  Moreover, the statutory scheme "prohibits a licensed physician from allowing a non-licensed person to form a service corporation, to be a shareholder of a professional service corporation, *or to control a professional service corporation*."  *See* 9/5/00 DOH Opinion (emphasis added).

185.    The implementing No-fault regulation promulgated by the Superintendent of Financial Services (formerly the Superintendent of Insurance), 11 NYCRR § 65-3.16(a)(12) states, in relevant part, that "a provider of health care services is not eligible for reimbursement under section 5102(a)(l) of the Insurance Law if the provider fails to meet any applicable New York State or local licensing requirement necessary to perform such service in New York…."

42

**B.**   **Billing for Services Provided by Independent Contractors**

186.   Pursuant to 11 NYCRR § 65-3.11 reimbursement of No-fault benefits is limited to licensed providers of services in possession of a direct assignment.  Specifically, 11 NYCRR § 65-3.11, states, in pertinent part, that:

> An insurer shall pay benefits for any element of loss, other than death benefits, directly to the applicant or, when appropriate, to the applicant's parent or legal guardian or to any person legally responsible for necessities, or, upon assignment by the applicant or any of the aforementioned persons, shall pay benefits *directly to providers of health care services* as covered under section five thousand one hundred two (a)(1) of the Insurance Law, or to the applicant's employer for loss of earnings from work as authorized under section five thousand one hundred two(a)(2) of the Insurance Law. Death benefits shall be paid to the estate of the eligible injured person.

(emphasis added).

187.   Pursuant to 11 NYCRR 65-3.11, a provider's entitlement to seek recovery of No-fault benefits directly from the insurer is contingent upon a direct assignment of such benefits to the "provider of services."

188.   A provider cannot be reimbursed for services rendered by an independent contractor, since it is not the "provider of services" in possession of a *direct* assignment as required under 11 NYCRR § 65-3.11(a).

189.   In interpreting 11 NYCRR § 65-3.11(a), formerly 11 NYCRR § 65.15(j), the New York State Department of Financial Services, formerly the New York Department of Insurance, which is responsible for, among other things, interpreting the Insurance Law and implementing the No-fault regulations, clearly and unequivocally stated that a professional corporation is not entitled to bill for or receive No-fault benefits for services rendered by an independent contractor.  Rather, only the independent contractor as the service provider may bill for such services. *See* New York State, Dept. of Financial Services, Office of General

Counsel Op. Letters dated February 21, 2001, February 5, 2002, March 11, 2002, October 29, 2003, and March 21, 2005, annexed hereto as Exhibit "G."

190.    When services are performed by an independent contractor, the professional corporation is not deemed to be the licensed provider of those services and, thus, not entitled to reimbursement.

191.    The implementing No-fault regulations, codified in 11 NYCRR § 65-1, mandate that disclosure of the employment status of the service provider must be set forth in every single claim form, to wit: the prescribed NF-3 form. Such disclosure is an express prerequisite and precondition to entitlement to No-fault benefits.

**C.    Kickback Scheme Involving Unlawful Referrals**

192.    Section 6530(18) of New York's Education Law prohibits "[d]irectly or indirectly offering, giving, soliciting, or receiving or agreeing to receive, any fee or other consideration to or from a third party for the referral of a patient or in connection with the performance of professional services…" N.Y. Educ. Law § 6530(18), (19); *see also* 8 N.Y.C.R.R. § 29.1(b)(3), (4).

193.    The payment by a healthcare practitioner or PC to another party for the referral of a patient is a practice prohibited by New York State Law.

**D.    Backdrop and the Defendant Providers' Submission of Fraudulent Bills**

194.    In purported compliance with the No-fault Law and 11 NYCRR 65 *et seq*., the Defendant Providers submitted proof of its claims to Allstate, using the claim form prescribed by the New York State Department of Financial Services (known as a "Verification of Treatment by Attending Physician or Other Provider of Health Service" or "NYS form NF-3") and/or Health Insurance Claim Forms 1500.

195.    Pursuant to Section 403 of the New York State Insurance Law, the claim forms

(NF-3s) submitted to Allstate by the Defendant Providers contained the following warning at the foot of the page:

> "Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime."

196. To process and verify claims submitted by the Defendant Providers, Allstate required, and the Defendant Providers submitted, to the extent applicable, licenses, narrative reports and other medical records relative to the alleged medical service rendered to Covered Persons, for which the Defendant Providers were seeking payment from Allstate.

197. Pursuant to the No-fault Law and implementing regulations, as well as the applicable policies of insurance, Allstate is required to promptly process claims for which a professional corporation has standing to submit, within 30 days of receipt of proof of claim.

198. To fulfill their obligation to promptly process claims, Allstate justifiably relied upon the bills and documentation submitted by the Defendant Providers in support of their claims, and has paid the Defendant Providers based on the representations and information that Defendants mailed to Allstate.

199. The Controllers are non-physicians who purchased and/or otherwise were permitted to use the name and license of Defendant Shah, to fraudulently incorporate and/or otherwise own, control and operate Medical Diagnostic Services and First Columbus Medical in violation of applicable New York State law, including Article 15 of the BCL, which prohibits ownership of a medical professional corporation by non-physicians. By doing so, the Controllers concealed that they are the "true owners" of Medical Diagnostic Services or First Columbus Medical and all of the Defendants fraudulently represented that Medical Diagnostic

Services and First Columbus Medical were legitimate professional corporations in compliance with core licensing requirements, when, in fact, they were not.

200.    On information and belief, the Controllers created and/or used Medical Diagnostic Services and First Columbus Medical, medical practices ostensibly owned by Defendant Shah, as the centerpiece of an elaborate scheme to fraudulently bill No-fault insurance carriers for services that were never rendered or that were of no diagnostic value through fraudulently incorporated professional corporations and/or professional corporations owned, controlled and operated in violation of New York State Law, and by virtue thereof, were not and are not entitled to reimbursement of No-fault benefits.

201.    On information and belief, in violation of Article 15 of the BCL, Defendant Shah, a medical doctor, had no control and/or ownership interest in Medical Diagnostic Services and/or First Columbus Medical he purportedly owned, the proceeds of which were diverted by and to the Controllers from Allstate.

202.    On information and belief, at the time that Medical Diagnostic Services and First Columbus Medical were incorporated in the State of New York, Defendant Shah was divested of any true beneficial ownership and control.

203.    By selling and/or permitting the use of his name and license, Defendant Shah knowingly provided the essential means by which the Controllers, non-physicians, were able to own and control that in which they are prohibited by law from maintaining a financial interest in, to wit: a professional corporation that must be owned exclusively by a licensed medical professional or like professionals acting within the scope of the professional corporation's authorized practice, in this case medicine.

204.    The Controllers and Shah knew, or should have known, that medical records, reports, and bills would be submitted to insurers, in general and Allstate, in particular, on behalf

46

of Medical Diagnostic Services and First Columbus Medical, entities that were not licensed in accordance with applicable New York State Law, that were imbued with an illegal corporate structure, and not eligible to recover No-fault benefits.

205.    On information and belief, in violation of the BCL, Defendant Shah maintained no control over how Medical Diagnostic Services or First Columbus Medical were operated and managed.

206.    On information and belief, to ensure that ownership and complete control of Medical Diagnostic Services and First Columbus Medical remained with the Controllers, Medical Diagnostic Services and First Columbus Medical's true owners, the Controllers caused Medical Diagnostic Services and/or First Columbus Medical to enter into one or more agreements with one or more of the ABC Corporations, which the Controllers also controlled and owned.

207.    On information and belief, the Controllers used one or more of the ABC Corporations as the vehicle to operate and control all of Medical Diagnostic Services and First Columbus Medical's operations and/or to funnel fraudulently obtained insurance payments to themselves.

208.    On information and belief, Medical Diagnostic Services and/or First Columbus Medical were required to pay management, consulting, equipment and/or other fees that ensured that Defendant Shah had no beneficial interest in Medical Diagnostic Services and/or First Columbus Medical and that the proceeds derived therefrom were diverted to the Controllers, Medical Diagnostic Services and First Columbus Medical's true owners.

209.    On information and belief, in accordance with Defendant Shah's illegal transfer of ownership and control, and in contravention of Sections 1503, 1504(a) and (c) and 1508 of the BCL, the Controllers exercised control over all aspects of Medical Diagnostic Services and

First Columbus Medical, from billing; to preparing and creating medical reports, to signing medical records and/or bills; to hiring all professional and non-professional employees and support staff to work for Medical Diagnostic Services and First Columbus Medical; to collecting on medical bills submitted to insurance companies; to purchasing the equipment used, to marketing the Referring Providers for referrals to Medical Diagnostic Services and/or First Columbus Medical for Functional Evaluation Testing; to making personnel decisions, to controlling the bank account(s) opened in the name of Medical Diagnostic Services and First Columbus Medical; to determining what disbursements would be made from Medical Diagnostic Services and First Columbus Medical's accounts and to whom and for how much; to negotiating and determining what agreements would be entered into on behalf and/or in the name of Medical Diagnostic Services and/or First Columbus Medical and to controlling and managing all other aspects of the finances of Medical Diagnostic Services and First Columbus Medical.

210. On information and belief, consistent with the fact that Medical Diagnostic Services and First Columbus Medical were actually owned by the Controllers, the Controllers were not accountable to Defendant Shah with respect to the finances of Medical Diagnostic Services or First Columbus Medical.

211. On information and belief, Defendant Shah's interest in Medical Diagnostic Services and First Columbus Medical was, at best, that of a mere employee with no ownership or financial interest tied into the profits of Medical Diagnostic Services or First Columbus Medical.

212. Under the scheme to defraud alleged herein, the Controllers used the name and license of Defendant Shah to enable Medical Diagnostic Services and First Columbus Medical to bill for Functional Evaluation Testing throughout the metropolitan area of New York City

that they knew or should have known would produce medically improbable, fabricated and/or fraudulent test results and findings of no diagnostic value.

213. On information and belief, Medical Diagnostic Services and First Columbus Medical's billing and collection activities were firmly controlled by the Controllers and others under their direction, supervision and control. Through Medical Diagnostic Services and First Columbus Medical, the Controllers prepared and caused to be mailed insurance claim forms in Medical Diagnostic Services and First Columbus Medical's name. The claim forms prepared by the Controllers directed insurers to mail checks to locations that were designated by the Controllers and the proceeds of those claims were either deposited in bank accounts under their control and/or later transferred to accounts under the control of the Controllers.

214. At all relevant times mentioned herein, Medical Diagnostic Services and First Columbus Medical were medical offices in name only. In fact, Medical Diagnostic Services and First Columbus Medical served as alter egos for the Controllers, and did not adhere to a separate and distinct function or corporate structure that would entitle them to be recognized as legitimate corporate entities. For all practical and legal purposes, Medical Diagnostic Services and First Columbus Medical were created and used for the sole purpose of defrauding insurers into paying No-fault claims to fraudulently incorporated professional corporations and/or professional corporations that were (a) not licensed in accordance with applicable New York State Law; (b) and/or engaging in unlawful kickback schemes that are prohibited by the New York Education Law.

215. On information and belief, Medical Diagnostic Services and/or First Columbus Medical were each well-organized illegal enterprises that engaged in systematic and fraudulent practices that distinguish them from legitimate healthcare providers. For instance, the components of each enterprise followed practices that were part of a racketeering scheme

dictated by the Controllers:

- Unlike legitimate providers, Medical Diagnostic Services and First Columbus Medical submitted, or caused to be submitted bills to insurers, in general, and Allstate, in particular, that represented that they were professional corporations owned by a medical doctor when, in fact, they were not;

- Unlike legitimate providers, Medical Diagnostic Services and First Columbus Medical made false and misleading statements and/or provided false information regarding who owned, controlled and operated Medical Diagnostic Services and First Columbus Medical;

- Unlike legitimate providers, Medical Diagnostic Services, made false and misleading statements and/or provided false information intended to mislead Allstate into believing that it was being operated by Defendant Shah, whose name was listed on the certificate of incorporation when, in fact, it was not;

- Unlike legitimate providers, First Columbus Medical, made false and misleading statements and/or provided false information intended to mislead Allstate into believing that First Columbus Medical was being operated by Defendant Shah, whose name was listed on the certificate of incorporation when, in fact, it was not;

- Unlike legitimate providers, Medical Diagnostic Services and First Columbus Medical made false and misleading statements and/or provided false information intended to circumvent Article 15 of the New York State Business Corporation Law, which prohibits ownership by individuals not licensed to practice the profession for which a professional corporation was incorporated; and

- Unlike legitimate providers, Medical Diagnostic Services and First Columbus Medical, concealed the fact that they were engaged in the illegal corporate practice of medicine in contravention of New York State law, and that they were billing for physician services through fraudulently incorporated PCs.

- Unlike legitimate providers, Medical Diagnostic Services and First Columbus Medical billed for medically unnecessary services that were provided as the result of unlawful patient referrals stemming from an unlawful kickback scheme;

- Unlike legitimate providers, Medical Diagnostic Services and First Columbus Medical, misrepresented the existence or severity of any injuries that the patient may have had and the course of any treatments;

- Unlike legitimate providers, Medical Diagnostic Services and First Columbus Medical, routinely submitted claims for Functional

Evaluation Testing that did not occur and/or did not occur as billed, and submitted false medical reports in support of those services;

- Unlike legitimate providers, Medical Diagnostic Services and First Columbus Medical, established a fraudulent protocol for the testing of "patients;"

- Unlike legitimate providers, Medical Diagnostic Services and First Columbus Medical, routinely fabricated and submitted fraudulent documentation to insurers for payment that contained material misrepresentations and/or reflected billing for services that were never rendered as billed; and

- Unlike legitimate providers, Medical Diagnostic Services and First Columbus Medical submitted bills wherein they knowingly, with the intent to deceive Allstate and induce payment as a result thereof, falsely misrepresented the services reflected therein, when in fact the services were not performed as billed and/or were of no diagnostic value.

216.    In these and numerous other ways the Controllers sought to deceive Allstate into paying fraudulent claims that typically exceeded hundreds of dollars per Covered Person.

217.    Each member of the separate enterprises alleged herein played a well-defined and essential role in the Defendants' scheme to defraud and in directing the affairs of the enterprises.  On information and belief, by way of example and not limitation, in furtherance of their scheme to defraud, the Controllers:

- Recruited Defendant Shah to serve as the nominal owner of Medical Diagnostic Services and First Columbus Medical, and divested him of any attributes of ownership;

- Managed the day to day operations of Medical Diagnostic Services and First Columbus Medical;

- Recruited, hired and trained professional medical and non-medical staff, including technicians employed by and/or used by Medical Diagnostic Services and on behalf of First Columbus Medical;

- Recruited, hired and trained personnel employed by and/or used by Medical Diagnostic Services and/or First Columbus Medical for, among other things, billing, marketing, and administrative services;

- Opened and/or caused those acting under their direction to open, maintain and/or control Medical Diagnostic Services and/or First

Columbus Medical's' bank accounts, including credit card accounts;

- Maintained and/or caused those acting under their direction and control to maintain the books and records of Medical Diagnostic Services and  First Columbus Medical;

- Entered into agreements with the Referring Providers, among others, to secure a referral source, patient base, a physical location to purportedly perform services, for Medical Diagnostic Services and First Columbus Medical;

- Entered into kickback agreements with the Referring Providers, among others, whereby the Controllers provided the means and opportunity for the Referring Providers, among others, to bill Allstate for a portion of the purported services provided by Medical Diagnostic Services and First Columbus Medical, in exchange for patient referrals;

- Determined the physical space from which Medical Diagnostic Services and  First Columbus Medical would (and did) purportedly maintain their back office operations, which was owned, operated and controlled by and/or at the direction of the Controllers;

- Leased and/or caused those acting under their direction to lease virtual offices to make it appear that Medical Diagnostic Services and First Columbus Medical maintained separate fixed treatment locations, when they did not;

- Purchased and maintained and/or caused those acting under their direction to purchase and maintain the equipment purportedly utilized by Medical Diagnostic Services and/or First Columbus Medical to perform the Functional Evaluation Testing tests;

- Created and provided the software and computers used by and/or at the direction of the Controllers to generate fraudulent reports for Functional Evaluation Testing in the name of Medical Diagnostic Services and First Columbus Medical;

- Created and maintained the websites used by the Controllers to "market" the Functional Evaluation Testing purportedly provided by Medical Diagnostic Services and First Columbus Medical;

- Supervised and/or caused those acting under their direction to supervise the technicians in the performance of Functional Evaluation Testing;

- Prepared or caused to be prepared fraudulent bills and sent or caused to them to be sent to Allstate;

- Participated, or caused those acting under their direction, in the preparation and mailing of bogus claims, knowing that they

contained materially false and misleading information;

- Ensured that the profits from the criminal enterprises were funneled to them and others unknown to Allstate;

- Created one or more of the ABC Corporations for the sole purpose of siphoning money from Medical Diagnostic Services and/or First Columbus Medical to the Controllers; and

- Siphoned money from Medical Diagnostic Services and/or First Columbus Medical through one or more of the ABC Corporations, entities exclusively controlled by the Controllers.

218. By way of further example, in furtherance of the scheme to defraud alleged herein, Defendant Shah:

- Allowed the use of his name and license by the Controllers to fraudulently incorporate Medical Diagnostic Services and First Columbus Medical;

- Provided the essential means through which the Controllers were able to own Medical Diagnostic Services and First Columbus Medical in contravention of New York State Law;

- Ceded ownership and control of Medical Diagnostic Services and First Columbus Medical;

- Maintained no control over how Medical Diagnostic Services or First Columbus Medical were operated and managed;

- Allowed his name and license to be used to pursue fraudulent claims on behalf of Medical Diagnostic Services and First Columbus Medical, which were unlawfully formed and operated by the Controllers;;

- Knew that he was causing to be performed Functional Evaluation Testing that was materially misrepresented in the bills submitted to Allstate and of no diagnostic and/or treatment value; and

- Prepared or caused to be prepared fraudulent medical reports documenting test results and diagnoses that he knew contained materially false and misleading information.

219. At all relevant time mentioned herein, Defendant Shah knew or should have known that the Functional Evaluation Testing for which Medical Diagnostic Services and/or First Columbus Medical billed Allstate was not performed as billed, was fabricated, was of no diagnostic value and/or was provided pursuant to a pre-determined fraudulent protocol, based

on an unlawful kickback scheme, irrespective of medical necessity.

220.    At all relevant times mentioned herein, the Controllers, through Medical Diagnostic Services and First Columbus Medical, directly or through others acting under and pursuant to their directions, instructions and control, submitted or caused to be submitted fraudulent bills for Functional Evaluation Testing, in furtherance of the scheme to defraud alleged herein, to obtain payment in connection with fraudulent claims.

221.    As a result of the Defendants' fraudulent billing scheme, Allstate has paid Defendants in excess of $600,000.00 in fraudulent and unnecessary medical services.

## MECHANICS OF THE SCHEME TO DEFRAUD

222.    On information and belief, the scheme to defraud alleged herein was a continuation of a separate but related scheme to defraud engaged in by the Controllers, beginning in 2001.

223.    By way of background, on information and belief, on or about June 15, 2001, one or more of the Controllers incorporated Tri-State Diagnostics, Inc., a New Jersey corporation, through which, despite being laypersons without healthcare licenses, they purportedly provided and submitted fraudulent bills to insurers for the same type of medical services purportedly provided by Medical Diagnostic Services and First Columbus Medical. Thereafter, on information and belief, one or more of the Controllers created various successor corporations, through which they continued the purported provision of, and fraudulent billing for the same type of medical services purportedly provided by Medical Diagnostic Services and First Columbus Medical.

224.    On information and belief, on or about December 21, 2004, one or more of the Controllers created Professional Healthcare & Chiropractic Svc., P.C., as a professional service corporation, listing Defendant Chillemi Jr., a chiropractor, as its owner on the certificate of

incorporation, through which they purportedly provided and billed (under a chiropractic billing rate), for Physical Performance Testing that was materially misrepresented, fabricated and/or never performed.

225.    On information and belief, Physical Performance Testing includes computerized range of motion testing, spinal range of motion testing, manual muscle testing, comparative muscle testing, pinch strength testing, grip strength testing and static lift testing also referred to as NIOSH (National Institute for Occupational Safety and Health) testing, and is substantially similar, if not identical to, Functional Evaluation Testing.

226.    On information and belief, recognizing that they were not entitled to bill for Physical Performance Testing at the more lucrative medical rate, one or more of the Controllers recruited James Avellini ("Avellini"), a medical doctor, to fraudulently incorporate two professional corporations (Professional Medical Healthcare Service of New York, P.C. ("PMHS") (2009) and Central Broadway Medical, P.C. ("Central Broadway") (2010) through which the Controllers submitted and/or caused to be submitted bills for Physical Performance Testing Functional Evaluation Testing seeking reimbursement at the higher medical rate.

227.    On information and belief, the Controllers submitted and/or caused to be submitted bills for Physical Performance Testing through PMHS and/or Central Broadway until on or about October 2012, when Defendant Avellini was suspended by the New York State Workers' Compensation Board for misrepresenting that he was a board certified physician and/or board certified cosmetic surgeon, the same misrepresentations for which he was sanctioned by the Office of Professional Misconduct in 2011. Based in part on Avellini's suspension from the practice of medicine, the Controllers transferred or caused Avellini to transfer his ownership on paper of PMHS to his daughter, Jami Avellini, after which the Controllers continued to submit, or cause to be submitted, bills for Physical Performance

Testing.

228. On information and belief, upon learning that that New York automobile insurance companies, including Allstate, started to become aware of the illegal ownership and control of PMHS and Central Broadway, in or about 2014, one or more of the Controllers, recruited Defendant Shah, to replace Avellini, and created Medical Diagnostic Services to succeed PMHS and/or Central Broadway as a conduit through which fraudulent bills for Physical Performance Testing could be submitted to insurers.

229. On information and belief, although Medical Diagnostic Services was purportedly an independent medical provider, medical records and other documents submitted to Allstate reveal that it was used as extension of the centralized scheme to defraud created by the Controllers. By way of example and not limitation:

- In connection with claim number 0286018510, PMHS and Medical Diagnostic Services purported to provide services to the same claimant. In that regard, PMHS submitted a bill and a report to Allstate for functional evaluation testing purportedly rendered to claimant C.L. on 01-07-14, pursuant to a referral made by Defendant Avgerinos Chiropractic. Almost four months later, Medical Diagnostic Services submitted a bill and similar report to Allstate for functional evaluation testing purportedly rendered to the same claimant on 05-01-14 and similarly referred by Defendant Avgerinos Chiropractic. Despite purporting to be unrelated medical providers, both the PMHS report and the Medical Diagnostic Services report identify claimant C.L. by the same internal patient identification number: 097605811. Thereafter, Medical Diagnostic Services continued to bill Allstate for at least four additional functional evaluation tests purportedly rendered to claimant, C.L. on 05-15-14, 06-19-14, 08-28-14, and 10-09-14. The reports submitted by Medical Diagnostic Services to Allstate corresponding to these dates of service all continue to identify claimant C.L. with the same patient identification number: 097605811, initially assigned by PMHS. In addition to the foregoing, PMHS and Medical Diagnostic Services submitted the aforementioned bills and reports to Allstate in envelopes bearing the same zip code 10312, which is not the zip code associated with Medical Diagnostic Services return address.

- In connection with claim number 0315644641, PMHS and Medical Diagnostic Services purported to provide services to the same claimant.

In that regard, PMHS submitted a bill and a report to Allstate for functional evaluation testing purportedly rendered to claimant D.C. on 02-18-14, pursuant to a referral made by Defendant Avgerinos Chiropractic. A little over one month later, Medical Diagnostic Services submitted a bill and similar report to Allstate for functional evaluation testing purportedly rendered to the same claimant on 03-24-14 and similarly referred by Defendant Avgerinos Chiropractic. Despite purporting to be unrelated medical providers, both the PMHS report and the Medical Diagnostic Services report identify claimant D.C. by the same internal patient identification number: 063768182. Thereafter, Medical Diagnostic Services continued to bill Allstate for at least six additional functional evaluation tests purportedly rendered to claimant, D.C. on 04-01-14, 04-15-14, 04-29-14, 05-13-14, 06-30-14 and 08-04-14. The reports submitted by Medical Diagnostic Services to Allstate corresponding to these dates of service all continue to identify claimant D.C. with the same patient identification number: 063768182, initially assigned by PMHS.

- In connection with claim number 0311014807-02, PMHS and Medical Diagnostic Services purported to provide services to the same claimant. In that regard, PMHS submitted bills and reports to Allstate for functional evaluation testing purportedly rendered to claimant A.H. on 01-20-14 and 02-01-14, pursuant to referrals made by Defendant Costa. One month later, Medical Diagnostic Services submitted a bill and similar report to Allstate for functional evaluation testing purportedly rendered to the same claimant on 03-01-14 and similarly referred by Defendant Costa. Despite purporting to be unrelated medical providers, both the PMHS report and the Medical Diagnostic Services report identify claimant A.H. by the same internal patient identification number: 077803976. Thereafter, Medical Diagnostic Services continued to bill Allstate for at least one additional Functional Evaluation Testing purportedly rendered to claimant, A.H. on 03-15-14. The report submitted by Medical Diagnostic Services to Allstate corresponding to this date of service continued to identify claimant A.H. with the same patient identification number: 077803976, initially assigned by PMHS.

- In connection with claim number 0312447659-02, PMHS submitted a bill and a report to Allstate for functional evaluation testing purportedly rendered to claimant M.C.V. on 01-24-14, pursuant to a referral made by Defendant Cancellieri Chiropractic. Two months later, Medical Diagnostic Services submitted a bill and similar report to Allstate for functional evaluation testing purportedly rendered to the same claimant on 03-24-14 and similarly referred by Defendant Cancellieri Chiropractic. Despite purporting to be unrelated medical providers, both the PMHS report and the Medical Diagnostic Services report identify claimant M.C.V by the same internal patient identification number:

110907283.

- In connection with claim number 0314979915-01, PMHS submitted a bill and a report to Allstate for functional evaluation testing purportedly rendered to claimant K.M. on 02-10-14, pursuant to a referral made by Defendant Mount Vernon Medical Care. One month later, Medical Diagnostic Services submitted a bill and similar report to Allstate for functional evaluation testing purportedly rendered to the same claimant on 03-10-14 and similarly referred by Defendant Mount Vernon Medical Care. Despite purporting to be unrelated medical providers, both the PMHS report and the MDS report identify claimant K.M. by the same internal patient identification number: 05111969, initially assigned by PMHS. Thereafter, Medical Diagnostic Services continued to bill Allstate for at least two additional functional evaluation tests purportedly rendered to claimant, K.M. on 03-24-14 and 04-21-14. On information and belief, in an effort to conceal its relationship with PMHS, Medical Diagnostic Services intentionally changed the patient identification number on the reports they submitted by Allstate corresponding to these dates of service.

- In connection with claim number 0306295717-03, PMHS submitted bills and reports to Allstate for functional evaluation testing purportedly rendered to claimant J.S. on 11-19-13 and 12-09-13, pursuant to referrals made by Defendant Costa. Despite purporting to be unrelated medical providers, a little over three months later, Medical Diagnostic Services submitted a bill and similar report to Allstate for functional evaluation testing purportedly rendered to the same claimant on 03-15-14 and similarly referred by Defendant Costa.

230.    In furtherance of their scheme to defraud, in or about October 2016, based upon their belief that Medical Diagnostic Services could no longer bill No-fault insurers such as Allstate, the Controllers created First Columbus Medical for the sole and specific purpose of being used as a vehicle through which an illegal independent contractor relationship could be created, and bills for services purportedly performed by Medical Diagnostic Services could be submitted to insurers in general, and Allstate in particular, for reimbursement.

231.    On information and belief, it was not until the Controllers began gradually phasing out Medical Diagnostic Services and stopping the billing for Functional Evaluation Testing through Medical Diagnostic Services that First Columbus Medical began to submit

bills for Functional Evaluation Testing to Allstate. By way of example and not limitation, First Columbus Medical began submitting bills to Allstate for reimbursement for Functional Evaluation Testing in April of 2017. At that time, the rate of bills for Functional Evaluation Testing from Medical Diagnostic Services decreased precipitously, with no bills submitted until October 2017 and only seven (7) bills over the following 6 month period, ending completely in April of 2018.

232. On information and belief, notwithstanding that First Columbus Medical submitted claims for Functional Evaluation Testing to Allstate for reimbursement, such services, if provided at all, were provided by employees of Medical Diagnostic Services using Medical Diagnostic Services' equipment, and billed for using the virtually the same templated medical forms and reports as Medical Diagnostic Services.

233. On information and belief, to conceal that First Columbus Medical was fraudulently billing for Functional Evaluation Testing which were performed by independent contractors, and not employees, and billed for services in direct contravention of the requirements of 11 NYCRR § 65-1 that the employment status of the service provider be set forth in every single NF-3 form, the Controllers, through First Columbus Medical, knowingly submitted NF-3 forms in which they intentionally omitted or materially misrepresented the employment status of the persons purportedly providing Functional Evaluation Testing on behalf of First Columbus Medical.

234. By causing First Columbus Medical to enter into an illegal independent contractor relationship with Medical Diagnostic Services, the Controllers realized significant economic benefits, including among other things:

- Avoiding the obligation to collect and remit the income tax which would be owed by employees as required by 26 U.S.C. § 3102;

- Avoiding payment of the FUTA excise tax required by 26 U.S.C. § 3301;

- Avoiding payment of the FICA excise tax required by 26 U.S.C. § 3111;

- Avoiding payment of Workers' Compensation Insurance to cover employees, as required by New York Workers' Compensation Law § 10;

- Avoiding the need to secure any malpractice insurance to cover employees; and

- Avoiding claims of agency-based liability arising from the employee's work.

235. Because First Columbus Medical utilized independent contractors who purportedly performed the billed-for services, First Columbus Medical does not have, and never had, any right to bill for or collect No-fault benefits in connection with those services.

236. At all relevant times mentioned herein, to carry out their scheme, the Controllers and Defendant Shah used Medical Diagnostic Services and/or First Columbus Medical to generate bogus reports and bills for Functional Evaluation Testing services that were purportedly rendered to persons involved in automobile accidents when, in fact, such Functional Evaluation Testing services were materially misrepresented, fabricated and/or never performed, and/or performed through fraudulently incorporated medical professional corporations.

237. On information and belief, in furtherance of their scheme to defraud, the Controllers and Defendant Shah created a bogus report generation and billing apparatus that was designed to exploit the No-fault laws and regulations, and in the process, drain the maximum amount of dollars from insurance companies for each and every patient, regardless of whether treatment was required at all.

238. On information and belief, the Controllers conducted their business, affairs and operations through various entities, known and unknown to Allstate.

239.    Though the Controllers attempted to conceal their ownership of Medical Diagnostic Services and First Columbus Medical, they did in fact use Defendant Shah as the Paper Owner of Medical Diagnostic Services and First Columbus Medical, over which they exercised control.

240.    From their respective dates of incorporation through the date of the filing of this Complaint, the Controllers hid their ownership of Medical Diagnostic Services and/or First Columbus Medical in order to falsely lead No-fault insurance carriers, in general, and Allstate, in particular, to believe that Medical Diagnostic Services and/or First Columbus Medical were lawfully incorporated and legitimate professional corporations when, in fact, they were not.

241.    Defendants also concealed the fact that the Controllers were the true owners and pecuniary beneficiaries of Medical Diagnostic Services and/or First Columbus Medical in order to circumvent the Business Corporation Law of New York State, which prohibits individuals who are not licensed to practice medicine from owning professional corporations in Medical field.  Specifically, Section 1507 of the Business Corporation Law of the State of New York permits the ownership of a professional corporation by only those "individuals who are authorized by law to practice in this state [New York] a profession which such corporation is authorized to practice...."

242.    By concealing the fact that the Controllers were the true owners and pecuniary beneficiaries of Medical Diagnostic Services and First Columbus Medical, Defendants circumvented the restrictions contained in Article 15 of the BCL, which are designed to "ensure that a professional service corporation renders professional services only through qualified members of the professions and are, *in fact, controlled only by qualified members*."  New York Legislative Annual 1970, p. 129 (emphasis added).

243.    On information and belief, Medical Diagnostic Services and First Columbus

Medical, and/or other entities not named as defendants herein but also owned by the Controllers are each interrelated and controlled by one or more of the Controllers.

244.    On information and belief, Medical Diagnostic Services and/or First Columbus Medical operated from and/or is otherwise associated with addresses and or telephone numbers that were also routinely used by Central Broadway, PMHS and/or one or more of the Controllers. By way of example and not limitation:

- Despite listing 520 White Plains Road, Suite 500, Tarrytown, New York, 10591, which is a virtual office as its address, on bills and medical reports submitted to Allstate, Medical Diagnostic Services is and/or was associated with the address of 3498 Richmond Avenue, Staten Island, New York 10312, a property owned by one or more of the Controllers and the same address used by a number of other entities owned by one or more of the Controllers, including but not limited to Tri-State Diagnostic, P.C., MAA Management Company, LLC, Functional Evaluation Testing of FL, Inc., Central Broadway and PMHS.

- Despite listing 100 South Bedford, Suite 340, Mt. Kisco, New York, 10549, which is a virtual office, as its address on bills and medical reports submitted to Allstate, First Columbus Medical is and/or was also associated with the address of 3498 Richmond Avenue, Staten Island, New York 10312, a property owned by one or more of the Controllers and the same address used by a number of other entities owned by one or more of the Controllers, including but not limited to Tri-State Diagnostic, P.C., MAA Management Company, LLC, Functional Evaluation Testing of FL, Inc., Central Broadway and PMHS.

- Despite continuing to list their respective virtual office addresses, on bills and medical reports submitted to Allstate, in or around 2017, Medical Diagnostic Services and First Columbus Medical relocated its office operations to the same location, *to wit*: 750 State Route 34, Suite 9, Matawan, New Jersey 07747, which is the same address used by other entities owned by one or more of the Controllers including but not limited to Functional Evaluation Testing of FL, Inc.

- Medical Diagnostic Services, and other entities owned by one or more of the Controllers, including but not limited to Tri-State Diagnostic, PC, PHC Svcs., Functional Evaluation Testing of FL, Inc., Central Broadway and PMHS are each associated with the same telephone number (866) 335-4040, irrespective of their physical location.

- Defendant Chillemi used telephone number (866) 335-4040 as his

contact information in the application for reinstatement of corporate charter of Functional Healthcare, PC and personally used a virtually identical telephone number of (732) 335-4040, in connection with an insurance claim for his own personal property.

245.     In addition to the foregoing, on information and belief, one or more of Medical Diagnostic Services and/or First Columbus Medical used virtually identical medical forms and reports in connection with the submission of bills to Allstate.  By way of example and not limitation, examples of the Defendants' centralized scheme are evident from the following:

- In connection with claim number 0351149117, Medical Diagnostic Service submitted bills and a reports to Allstate for functional evaluation testing purported rendered to claimant D.T. on 08-15-16, 10-03-16, 11-28-16, 01-11-17 pursuant to a referral made by Defendant Mount Vernon Medical Care. A little over one year later, First Columbus Medical submitted a bill and similar report to Allstate for functional evaluation testing purportedly rendered to the same claimant on 01-22-18 and similarly referred by Defendant Mount Vernon Medical Care. Despite purporting to be unrelated medical providers, both the Medical Diagnostic Services reports and the First Columbus Medical report identify claimant D.T. by the same internal patient identification number: 101608543, initially assigned by Medical Diagnostic Services.

- In connection with claim number 0490005543-01, despite purporting to be unrelated medical providers, First Columbus Medical and Medical Diagnostic Services name is used interchangeably on the "Assignment of Benefits Authorization, Responsibility for Payment, and Acknowledgment of Receipt of Notice of Privacy Practices Form," relating to a Functional Evaluation Testing purportedly rendered to claimant J.M. on 03-23-18.

- In connection with claim number 0461358301, despite purporting to be unrelated medical providers, First Columbus Medical and Medical Diagnostic Services name is used interchangeably on the "Assignment of Benefits Authorization, Responsibility for Payment, and Acknowledgment of Receipt of Notice of Privacy Practices Form," relating to a Functional Evaluation Testing purportedly rendered to claimant J.P. on 07-17-17.

- In connection with claim number 0445649288-06, despite purporting to be unrelated medical providers, First Columbus Medical utilized Medical Diagnostic Services' "Assignment of Benefits Authorization, Responsibility for Payment, and Acknowledgment of Receipt of Notice

of Privacy Practices Form," in relation to a Functional Evaluation Testing purportedly rendered to Claimant E.C. on 07-17-17.

- In connection with claim number 0420139016-02, despite purporting to be unrelated medical providers, First Columbus utilized Medical Diagnostic's patient intake form in relation to a Functional Evaluation Testing purportedly rendered to Claimant F.H. on 07-24-17.

246.    On information and belief, the Controllers also created the ABC Corporations, which served as alter egos for the purpose of concealing that the Controllers were the true owners of Medical Diagnostic Services and First Columbus Medical.

247.    On information and belief, the Controllers unilaterally established the manner and means through which the ABC Corporations purportedly provided management and other services for Medical Diagnostic Services and First Columbus Medical.

248.    On information and belief, the fee arrangements between Medical Diagnostic Services and/or First Columbus Medical and the ABC Corporations were set by the Controllers.  Pursuant to the arrangements, the monies Medical Diagnostic Services and/or First Columbus Medical paid to the ABC Corporations were eventually funneled to the Controllers.

249.    On information and belief, the Controllers provided nearly all start-up costs and investment in Medical Diagnostic Services and First Columbus Medical.

250.    On information and belief, the compensation that Defendant Shah received did not change based on the revenue that was generated, or expenses incurred, by Medical Diagnostic Services and First Columbus Medical, but rather remained the same regardless of the financial condition or profitability of Medical Diagnostic Services and First Columbus Medical.  As a result, Defendant Shah did not have an ownership or pecuniary interest in the profits of the business they purportedly owned.

251.    On information and belief, the sole purpose of the relationship among Medical

Diagnostic Services and First Columbus Medical, the Controllers, and/or one or more of the ABC Corporations was, after paying Shah their set draw, to funnel the money from Medical Diagnostic Services and/or First Columbus Medical to entities controlled by the Controllers, including but not limited to one or more of the ABC Corporations.

252. On information and belief, once Medical Diagnostic Services and/or First Columbus Medical were created, the Controllers generated or caused to be generated medical records, reports and bills for services purportedly provided by legitimate professional corporations, when, in fact, they were not.

253. On information and belief, Medical Diagnostic Services and/or First Columbus Medical provided the vehicle through which the Controllers were able to engage in a systematic, billing scheme premised entirely on their ability to pass hundreds of thousands of dollars through fraudulently incorporated professional corporations.

254. On information and belief, as part of the scheme to defraud, the Controllers directly and/or through one or more of the ABC Corporations, operated, controlled and managed Medical Diagnostic Services and First Columbus Medical, and employed personnel who were responsible for creating and generating their fraudulent bills, medical records and No-fault forms to be submitted to insurance carriers.

255. On information and belief, Defendant Shah did not exercise control over or maintain the books and records, including accounting, financial records, bank statements and reports relating to Medical Diagnostic Services and First Columbus Medical, all of which were controlled and maintained by the Controllers and/or others acting under their direction and control.

256. By way of further example and not limitation that Defendant Shah did not exercise control over Medical Diagnostic Services and First Columbus Medical, Defendant

Shah testified at *In the Matter of the Examination Under Oath of Medical Diagnostic Services, PC. by Dr. Nilay Shah* (January 14, 2015 and June 29, 2015), and *In the Matter of the Examination Under Oath of Dr. Nilay Shah/First Columbus Medical, P.C.* (May 18, 2018) that he did not:

- Maintain a physical presence at Medical Diagnostic Services or First Columbus Medical during the time that he purported to own those entities;

- Supervise the activities of Medical Diagnostic Services or First Columbus Medical's practice;

- Control Medical Diagnostic Services or First Columbus Medical's money and other assets;

- Contribute any capital to Medical Diagnostic Services or First Columbus Medical;

- Negotiate any lease and/or rental agreements relating to the physical premises and equipment for Medical Diagnostic Services or First Columbus Medical;

- Have exclusive and/or unlimited access to any corporate books, bank accounts, financial or business ledgers, or other related documents of Medical Diagnostic Services or First Columbus Medical;

- Manage the daily operations of Medical Diagnostic Services or First Columbus Medical's business;

- Hire and/or train any employees, professional or non-professional of Medical Diagnostic Services or First Columbus Medical;

- Negotiate or determine the salaries for any employees, professional or non-professional of Medical Diagnostic Services or First Columbus Medical;

- Purchase lease, select, order, arrange to maintain or repair any of the equipment used by Medical Diagnostic Services or First Columbus Medical;

- Market Medical Diagnostic Services or First Columbus Medical to develop relationships with the Referring Providers that referred Covered Persons to Medical Diagnostic Services and First Columbus Medical;

- Perform any Functional Evaluation Testing on any Covered Person on behalf of Medical Diagnostic Services or First

Columbus Medical;

- Physically supervise any technician purportedly employed by Medical Diagnostic Services during their performance of Functional Evaluation Testing.

- Train any technician purportedly employed by Medical Diagnostic Services in their performance of Functional Evaluation Testing;

- Regularly visit the Referring Providers where the technicians employed by Medical Diagnostic Services purportedly performed the Functional Evaluation Testing;

- Review most if not all bills which contained his signature that were submitted to Allstate on behalf of Medical Diagnostic Services or First Columbus Medical;

- Have knowledge of the date of Medical Diagnostic Services' incorporation;

- Have knowledge of the date of First Columbus Medical's incorporation;

- Recall the full names of any of the technicians who allegedly perform Functional Evaluation Testing on behalf of Medical Diagnostic Services;

- Recall the full names of the majority of account executives employed by Medical Diagnostic Services who were responsible for marketing Functional Evaluation Testing services to the referring providers; and

- Recall the full names of the majority of processors employed by Medical Diagnostic Services and/or First Columbus Medical.

257.    On information and belief, the Controllers exercised control over Medical Diagnostic Services and/or First Columbus Medical by, among other things:

- Causing Medical Diagnostic Services and/or First Columbus Medical to enter into management and/or other service agreements all for the purpose of diverting insurance payments received by Medical Diagnostic Services and/or First Columbus Medical to the Controllers, through one or more of the ABC Corporations, entities they owned and controlled;

- Making personnel decisions on behalf of Medical Diagnostic Services and/or First Columbus Medical, including hiring medical personnel and support staff and establishing their salaries;

- Managing, operating and supervising the affairs of Medical Diagnostic Services and First Columbus Medical;

- Preparing and generating medical records and bills for submission to insurers that fraudulently represented that the services were rendered by properly licensed providers of healthcare services when in fact they were not;

- Falsifying information contained in the New York State NF-3 forms submitted by Medical Diagnostic Services and/or First Columbus Medical to No-fault insurance carriers, in general, and Allstate, in particular, and by preparing fraudulent supporting documentation;

- Establishing the office locations for Medical Diagnostic Services and First Columbus Medical;

- Establishing, supervising and controlling Medical Diagnostic Services and First Columbus Medical's payroll; and

- Establishing, supervising and controlling Medical Diagnostic Services and First Columbus Medical's finances and bank accounts; including issuing and/or causing to be issued checks and disbursements out of Medical Diagnostic Services and First Columbus Medical's bank accounts.

258.    On information and belief, the Controllers purchased the right to use the name and license of Defendant Shah for the purpose of submitting claims to No-fault carriers, in general, and Allstate, in particular, for services provided by fraudulently incorporated professional corporations that are not entitled to reimbursement under New York State Law.

**THE KICKBACK SCHEME WITH REFERRING PROVIDERS**

259.    On information and belief, in furtherance of their scheme to defraud, in addition to seeking reimbursement for services provided by fraudulently incorporated professional corporations, to which they were not entitled, the Controllers entered into separate arrangements with one or more of the Referring Providers through which, in exchange for a kickback and/or other financial compensation, with respect to the claim files in which both a referring provider and Medical Diagnostic Services and/or First Columbus Medical submitted bills, the Referring Providers referred patients, to Medical Diagnostic Services and/or First

Columbus Medical for Functional Evaluation Testing, pursuant to a predetermined course of treatment, irrespective of medical necessity.

260. On information and belief, in exchange for kickbacks and/or other financial compensation or incentives in the form of, among other things, the ability to submit bills related to Functional Evaluation Testing to insurers, including but not limited to Plaintiffs, the Referring Providers, through their associated healthcare providers, referred Covered Persons for Functional Evaluation Testing pursuant to a predetermined course of treatment, irrespective of medical necessity.

261. By way of example and not limitation that referrals for Functional Evaluation Testing was made pursuant to a predetermined treatment protocol, *In the Matter of the Examination Under Oath of LR Medical, PLLC a/k/a Pain Physicians, NY  by Dr. Leonid Reyfman* (April 12, 2019) Defendant Reyfman testified that it is standard practice for him to refer the vast majority of his patients for Functional Evaluation Testing or to perform the functional equivalent of such testing himself.  By way of further example and not limitation, Reyfman also testified that all patients with spine related conditions are referred for Functional Evaluation Testing and/or the functional equivalent of such testing.

262. On information and belief, the Controllers and/or others acting under their direction and control, marketed and/or solicited the Referring Providers to refer patients to Medical Diagnostic Services and/or First Columbus Medical for Functional Evaluation Testing.  As part of such marketing, the Controllers and/or others acting under their direction and control informed the Referring Providers that, in exchange for the referrals, they would be able to enrich themselves by billing for medically unnecessary services relating to Functional Evaluation Testing, thereby ensuring the Referring Providers would receive kickbacks and/or other financial compensation from the referrals to the Defendant PCs.

263.     On information and belief, the Controllers arranged for marketers under their direction and/or control to aggressively recruit healthcare providers, including but not limited to the Referring Providers, into the scheme through solicitations which emphasized the financial incentives that they created to induce the healthcare providers to refer their patients for Functional Evaluation Testing.

264.     On information and belief, the financial incentives are derived through, among other things, reimbursement from insurers for the Referring Providers' review and/or interpretation of the Functional Evaluation Testing results.   Additionally, the Referring Providers derived a benefit after purported review and interpretation of the Functional Evaluation Testing in the form of additional medical services provided to the Covered Person, for which the Referring Providers billed Allstate, which were based on the results of the Functional Evaluation Testing that was performed pursuant to a predetermined course of treatment, irrespective of medical necessity.   These additional services performed on the basis of the fraudulent Functional Evaluation Testing resulted in further unnecessary procedures by the Referring Providers.

265.     On information and belief, in furtherance of their scheme to defraud, Medical Diagnostic Services and First Columbus Medical submit bills to Allstate, among other insurers, for what they purport is the performance of the Functional Evaluation Testing, while the Referring Providers submit bills to Allstate, among other insurers, for the review and interpretation of the Functional Evaluation Testing result.   By way of example and not limitation, annexed hereto as Exhibit "H" is a spreadsheet identifying, to the extent known, the No-fault claims paid by Allstate to the Defendant Referring Providers to which they are not entitled, because of their fraudulent scheme.

266.     Through this arrangement with the Medical Diagnostic Services and/or First

Columbus Medical, the Referring Providers were able to generate profits without having to do anything other than refer their patients for Functional Evaluation Testing using the boilerplate letters of medical necessity and physician's order forms supplied by Medical Diagnostic Services and/or First Columbus Medical.

267.    On information and belief, the letters of medical necessity supplied by Medical Diagnostic Services and/or First Columbus Medical to the Referring Providers contain diagnoses designed to justify the referral for medically unnecessary Functional Evaluation Testing.

268.    On information and belief, the Referring Providers did not create the letters of medical necessity and/or the physician order forms used to refer for the Functional Evaluation Testing and did not review them prior to their submission to insurance companies, in general, and Allstate, in particular in connection with seeking reimbursement for the billed for services. By way of example and not limitation, *In the Matter of the Examination Under Oath of LR Medical, PLLC a/k/a Pain Physicians, NY* (April 12, 2019) *by Dr. Leonid Reyfman*, despite claiming to have authored the certificate of medical necessity form, Dr. Reyfman testified that it was poorly written, should have been worded differently and he did not have an answer as to why certain text was included.

269.    On information and belief, with respect to the claim files in which both a referring provider and Medical Diagnostic Services and/or First Columbus Medical submitted bills, the Referring Providers automatically referred or caused the Covered Persons to be referred to Medical Diagnostic Services and/or First Columbus Medical during the course of their treatment as part of a medical protocol that they determined, without regard to medical necessity.   Once the referral was made by the Referring Providers and the Functional Evaluation Testing was allegedly performed by Medical Diagnostic Services and/or First

Columbus Medical, the Referring Providers would bill insurance companies, in general, and Allstate, in particular, for allegedly interpreting and reviewing the results and modifying the treatment plan accordingly.

270.    Furthermore, after the purported review and interpretation of the test, the Referring Providers would claim to "change" or "update" the treatment plan for the Covered Person in order to continue to bill and seek reimbursement for unnecessary medical treatment.

271.    On information and belief, to process and verify claims submitted by the Referring Providers, Allstate required, and the Referring Providers submitted, the Functional Evaluation Testing reports generated by Medical Diagnostic Services and/or First Columbus Medical, which contained boilerplate attestations signed by the Referring Providers falsely representing that the Referring Providers "read the report and interpreted the report,  made the appropriate treatment protocol changes or updates, and reviewed or will review the results with the patient" when, in fact, they never did.

272.    By way of example and not limitation that the Referring Providers attestations are false, *In the Matter of the Examination Under Oath of LR Medical, PLLC a/k/a Pain Physicians, NY* (April 12, 2019) Defendant Reyfman admitted that despite his signed attestations that he "interpreted" the Functional Evaluation report, the report data does not need interpretation and he did not interpret the Functional Evaluation reports. Similarly Dr. Reyfman admitted that despite his signed attestations that he "made the appropriate treatment protocol updates," "the report does not in any way shape or form change a treatment protocol. It's meant purely to report degree of impairment," and he would only change a protocol of treatment based on the results of Functional Evaluation testing in a setting where there is "significant weakness of the upper/lower extremity."  From a pain management standpoint, especially in this case where we are treating his lower back, it is not a deviated change in

treatment protocol."

273.     Likewise, *In the Matter of the Examination Under Oath of Cancellieri, Chiropractic P.C. by Charles Cancellieri, D.C.* (March 19, 2019)*,* Defendant Cancellieri testified that despite his signed attestation that he interpreted the report, he did not, stating that: "The test is the interpretation."   Moreover, Defendant Cancellieri testified that he did not consider any of the findings other than the impairment ratings and did nothing to verify the accuracy of the test results and/or impairment ratings.

274.     Furthermore*,* in some instances, to the extent that the one or more of the Referring Providers purported to review and interpret the Functional Evaluation Testing, the purported review was not performed until at least a month after the date of the test, indicating that the test was not medically necessary in the first place. Representative examples of claims wherein one or more of the Referring Providers failed to review the test until at least a month after it was performed are as follows: Claimant L.B., claim number 0495617763-01, Claimant D.M., claim number 0474520186-02, Claimant N.M., claim number 0344351382-02, Claimant J.C., claim number 0490037678-02, purported date of service 02-09-18, purported date of review 03-12-18, Claimant J.J., claim number 0379264996-02, claim number 0379264966-02 purported date of service 01-04-16, purported date of review 02-05-16.

275.     On information and belief, at all relevant times mentioned herein, the Defendant Referring Providers knowingly participated in the scheme to defraud, including, but not limited to, making referrals for medically unnecessary services that were the result of an unlawful kickback scheme and billing for services that were never rendered.

276.     On information and belief, at all relevant times mentioned herein, Medical Diagnostic Services and/or First Columbus Medical knew that the Covered Persons referred to them were referred pursuant to a predetermined protocol that resulted from the financial

arrangement or kickback scheme negotiated by the Controllers with the Referring Providers, irrespective of medical necessity.

## THE MOUNT VERNON MEDICAL CARE ENTERPRISE

277.    On information and belief, in addition to Mount Vernon Medical Care referring patients to Medical Diagnostic Services and/or First Columbus Medical pursuant to an illegal kickback/referral arrangement, Defendant Barnes' interest in Mount Vernon Medical Care was, at best, that of a mere employee with no ownership or financial interest tied into its profits.

278.    On information and belief, Mount Vernon Medical Care has a long history of being owned, operated and controlled by individuals who have engaged in numerous acts of insurance fraud with other fraudulently incorporated medical PCs.   In that regard, the individuals who formed, operated and controlled Mount Vernon Medical Care have been involved in similar schemes with other practices.   By way of background and not limitation, Triborough Medical Diagnostics, P.C. ("Triborough"), incorporated on or about June 27, 1996, was an illegally owned, fraudulently incorporated and improperly licensed professional corporation that was used to generate illegal self-referrals to several similarly fraudulently incorporated PCs by Dipak Nandi, Afsar Gul, Iftikhar Malik and Satrajit Rudra (collectively referred to as "NGMR"), who firmly controlled Triborough's billing and collection activities. From the date of Triborough's incorporation through on or about June 26, 1997, William G. Battaile, M.D., a pathologist and Maryland resident, was the nominal paper owner of Triborough, who at all relevant times, did not own or control the practice; rather, his in the practice was that of a mere employee with no ownership or financial interest tied into its profits. Thereafter, William G. Battaile's interest on paper in Triborough was transferred to Joseph J. Greenspan, M.D., who, for a fee, replaced Battaile as Triborough's nominal paper owner.   On information and belief, Joseph J. Greenspan's interest on paper in Triborough was thereafter

transferred to Robert Chandran Mallela, M.D. who, for a fee, replaced Joseph J. Greenspan as the paper owner.  On information and belief, Mallela's interest on paper in Triborough was thereafter transferred to Lahiri Swapnadip, M.D., who, for a fee, replaced Mallela as the paper owner.  On information and belief, Triborough, a specialty provider ostensibly engaged in providing acupuncture services did not have a principal office address, since its services were provided through independent contractors who reported to various multidisciplinary practice clinics that NGMR either owned and controlled or paid kickbacks to, in exchange for providing such services at various facilities that NGMR did not own.  Each of the foregoing doctors involved in Triborough -- Battaile, Greenspan, Mallela and Swapnadip --were stripped of their medical licenses as a result of their participation in various act of insurance fraud.

279.    On information and belief, Mount Vernon Medical Care was formed for the purpose of committing insurance fraud, with some of the very same doctors installed as the paper owners of the PC.  Similar to Triborough, on or about January 13, 1997, Mount Vernon Medical Care was incorporated with Battaile installed as the paper owner of the practice. Shortly thereafter, on or about March 11, 1999, Battaile's interest on paper was transferred to Greenspan who, for a fee, replaced Battaile as the paper owner.  Most recently, Greenspan's interest on paper was transferred to Barnes who, for a fee, replaced Greenspan and/or others unknown to plaintiffs, as the paper owner.

280.    On information and belief, throughout much of this time, Manfredi listed himself as the corporate secretary for Mount Vernon Medical Care, but at all times relevant herein, maintained the true beneficial ownership and control over the PC, by, *inter alia*, causing Mount Vernon Medical Care to enter into an agreement to ostensibly provide management and/or other services with Efficient Office Manager, Inc., a company incorporated by and owned and controlled by Manfredi, until it's dissolution in 2003.  Through Efficient Office

Manager, Inc., Manfredi divested the paper owners of Mount Vernon Medical Care of any and all attributes of true ownership and control, which were then diverted by Manfredi to himself and other entities, including but not limited to, Efficient Office Manager, Inc.

281.    Following the fraudulent blueprint adopted many years ago by Battaile and Greenspan, and orchestrated by Manfredi, Mount Vernon Medical Care has been used in various ways to fraudulently bill insurance companies in general, and Allstate, in particular. In that regard, on information and belief, and all relevant times herein, Mount Vernon Medical Care's billing and collection activities were firmly controlled by Manfredi, who is not a medical doctor, and others under his direction, supervision and control. Through Mount Vernon Medical Care, Manfredi prepared and caused to be mailed insurance claim forms in Mount Vernon Medical Care's name.  The claim forms prepared by the Manfredi directed insurers to mail checks to locations that were designated by the Manfredi, including but not limited to, ABC Corporations currently unknown to Plaintiffs over which Manfredi maintains ownership and/or a financial interest, and the proceeds of those claims were either deposited in bank accounts under his control and/or later transferred to accounts under his control.

282.    At all relevant times mentioned herein, Mount Vernon Medical Care was a medical office in name only.  For all practical and legal purposes, Mount Vernon Medical Care was used for the sole purpose of defrauding insurers into paying No-fault claims to a fraudulently incorporated professional corporation and/or professional corporation that was (a) not licensed in accordance with applicable New York State Law; (b) and/or engaged in an unlawful kickback scheme that is prohibited by the New York Education Law.

283.    On information and belief, Mount Vernon Medical Care is an illegal enterprise that engaged in systematic and fraudulent practices that distinguish it from legitimate healthcare providers.  For instance, the components of each enterprise followed practices that

were part of a racketeering scheme dictated by Manfredi:

- Unlike legitimate providers, the Manfredi, through Mount Vernon Medical Care , submitted or caused to be submitted bills to insurers, in general, and Allstate, in particular, that represented that Mount Vernon Medical Care was a professional corporations owned by a medical doctor when, in fact, it was not;

- Unlike legitimate providers, Manfredi, through Mount Vernon Medical Care, made false and misleading statements and/or provided false information regarding who owned, controlled and operated Mount Vernon Medical Care;

- Unlike legitimate providers, Manfredi, through Mount Vernon Medical Care, made false and misleading statements and/or provided false information intended to mislead Allstate into believing that Mount Vernon Medical Care was being operated by Defendant Barnes, whose name was listed on the certificate of incorporation when, in fact, it was not;

- Unlike legitimate providers, the Manfredi, through Mount Vernon Medical Care, made false and misleading statements and/or provided false information intended to circumvent Article 15 of the New York State Business Corporation Law, which prohibits ownership by individuals not licensed to practice the profession for which a professional corporation was incorporated; and

- Unlike legitimate providers, Manfredi, through Mount Vernon Medical Care, concealed the fact that Mount Vernon Medical Care was engaged in the illegal corporate practice of medicine in contravention of New York State law, and that they were billing for physician services through fraudulently incorporated PCs.

284. In these and numerous other ways, Defendants Manfredi, Barnes and Mount Vernon Medical Care sought to deceive Allstate into paying fraudulent claims that typically exceeded hundreds of dollars per Covered Person.

285. Each member of the Mount Vernon Medical Care enterprise played a well-defined and essential role in its scheme to defraud and in directing the affairs of the enterprise. On information and belief, by way of example and not limitation, in furtherance of their scheme to defraud, Manfredi:

- Recruited Defendant Barnes to serve as the nominal owner of the

Mount Vernon Medical Care, divesting Barnes of any attributes of ownership in the professional corporation;

- Managed the day to day operations of Mount Vernon Medical Care;

- Recruited, hired and trained the professional medical and non-medical staff, including technicians employed by and/or used by Mount Vernon Medical Care; and

- Recruited, hired and trained personnel employed by and/or used by Mount Vernon Medical Care for, among other things, billing, marketing, and administrative services.

286. By way of further example, in furtherance of the scheme to defraud alleged herein, Defendant Barnes:

- Allowed the use of his name and license by Manfredi to fraudulently incorporate Mount Vernon Medical Care;

- Provided the essential means through which Manfredi was able to own Mount Vernon Medical Care in contravention of New York State Law;

- Ceded ownership and control of Mount Vernon Medical Care;

- Abdicated any and all attributes of ownership and control to Manfredi;

- Maintained no control over how Mount Vernon Medical Care was operated and managed; and

- Allowed his name and license to be used to pursue fraudulent claims on behalf of Mount Vernon Medical Care, which was unlawfully formed and operated by Manfredi.

287. On information and belief, Manfredi purchased the right to use the name and license of Defendant Barnes for the purpose of submitting claims to No-fault carriers, in general, and Allstate, in particular, for services provided by a fraudulently incorporated professional corporation that is not entitled to reimbursement under New York State Law.

## THE FUNCTIONAL EVALUATION TESTING SCHEME TO DEFRAUD

288. On information and belief, Functional Evaluation Testing is a purported diagnostic test created by one or both of the Controllers in order to improperly seek

reimbursement for the purported performance of Functional Capacity Evaluation Testing which the New York Fee Schedule limits to using only to determine a patient's ability to return to work.

289. On information and belief, Functional Evaluation Testing purports to "objectively determine a person's functional ability to perform functional tasks" through a series of tests "designed to measure strength and/or functional ability" based solely upon the person's "own voluntary effort."

290. On information and belief, the Functional Evaluation Testing purportedly performed by Medical Diagnostic Services and/or First Columbus Medical, included, among other things, computerized range of motion testing of the spine and/or extremities, muscle strength testing, comparative muscle testing, grip strength testing, pinch grip strength testing, NIOSH (National Institute for Occupational Safety and Health) testing (also referred to as static lift testing) and impairment rating.

## 1. Fraudulent Billing For Services Not Performed

291. The AMA is the publisher of the CPT Code Book, which is the definitive medical source used by licensed medical professionals to accurately describe, among other things, medical and diagnostic services performed and billed to third-party payors, such as insurance companies.

292. Pursuant to Section 5108 of the Insurance Law, the New York State Department of Financial Services has adopted the Fee Schedule published by the Workers' Compensation Board, which sets forth the charges for professional health services that are reimbursable under the No-fault Law. The Fee Schedule incorporates the CPT codes published by the AMA, and the coding rules and regulations set forth by the AMA in the CPT Codebook, including the CPT Assistant ("the CPT Codebook and the CPT Assistant are collectively referred to as the

"AMA Guidelines").

293.    On information and belief, as a matter of procedure, practice and protocol and in furtherance of the scheme to defraud alleged herein, when submitting bills to Allstate for reimbursement for Functional Evaluation Testing, the Defendant Providers represented that they were entitled to reimbursement because the billed for services were performed in accordance with the Fee Schedule and the AMA Guidelines, when in fact, the Functional Evaluation Testing was not rendered, not rendered as billed, and/or was of no diagnostic value.

294.    On information and belief, in furtherance of the scheme to defraud alleged herein and in violation of the Fee Schedule and the AMA Guidelines, Medical Diagnostic Services and/or First Columbus Medical routinely and fraudulently billed for what they purported was the "performance" of Functional Evaluation Testing, while the Referring Providers concurrently submitted bills for what they purported was the "interpretation" and "review" of the same test.

295.    On information and belief, in most if not all instances, either the Referring Providers and/or Medical Diagnostic Services and First Columbus Medical submitted bills to Allstate for their purported portion of test using CPT Code 97750, which according to the AMA Guidelines, should be used when seeking reimbursement for "Physical performance test or measurement (e.g., musculoskeletal, functional capacity), with written report, each 15 minutes" and describes tests and measurements performed by a physician or other qualified health care professional.

296.    On information and belief, in those instances where the Referring Providers submitted bills to Allstate using CPT Code 97750 for the purported "interpretation" and "review" of Functional Evaluation Testing, Medical Diagnostic Services and/or First Columbus Medical, in an effort to deceive Allstate, concurrently submitted bills to Allstate for

the "performance" of the same test using one or more of CPT codes 95831, 95832, 95851, 95852, which are codes reserved for muscle testing and range of motion (the "Muscle Testing and Range of Motion Codes"), when in fact, services reimbursable pursuant to those codes were not performed.

297.    On information and belief, muscle testing and range of motion which are reimbursable pursuant to the Muscle Testing and Range of Motion Codes are integral components of Functional Evaluation Testing.

298.    On information and belief, the Muscle Testing and Range of Motion Codes are designated as "separate procedures" which cannot be billed in addition to the total procedure for which they are integral components.

299.    On information and belief, despite the fact that Medical Diagnostic Services and/or First Columbus Medical purported to perform Functional Evaluation Testing, of which muscle testing and range of motion are only component parts, they deliberately submitted bills to Allstate using the Muscle Testing and Range of Motion Codes in an effort to conceal the actual services provided and thus allow the Referring Providers to concurrently bill for the purported interpretation and review of the same Functional Evaluation Testing using CPT code 97750.

300.    On information and belief, because Medical Diagnostic Services and First Columbus Medical did not perform muscle testing and range of motion as "separate procedures," apart from total Functional Evaluation Testing, neither Medical Diagnostic Services nor First Columbus Medical are eligible for reimbursement pursuant to the Muscle Testing and Range of Motion Codes.

301.    On information and belief, in those instances where Medical Diagnostic Services and/or First Columbus Medical, submitted bills to Allstate using CPT Code 97750 for

the purported "performance" of Functional Evaluation Testing, one or more the Referring Providers billed Allstate for the purported "interpretation" and "review" of the Functional Evaluation Testing using CPT Code 99358, which is reserved for "prolonged evaluation and management service before and/or after direct (face to face) patient care; first hour."

302.    Moreover, in some instances, one or more of the Referring Providers billed Allstate under CPT Code 97750 when First Columbus Medical submitted bills using CPT Code 97750.

303.    On information and belief, the Fee Schedule prohibits splitting and/or otherwise billing separately for the performance and interpretation and review component of the services billed under CPT 97750.

304.    On information and belief, according to the Fee Schedule and the AMA Guidelines, reimbursement for physical performance testing ("PPT") billed under CPT Code 97750 includes the test or measurement procedure itself and the time required to analyze and interpret the resulting data while the patient is present.

305.    On information and belief, to be eligible for reimbursement under CPT Code 97750, a medical provider must both perform testing applicable to that code, and prepare an identifiable signed report that interprets the test results, sets forth the medical necessity for the billed for service and includes the following: (a) a description of the test and measure protocol, (b) the data collected, and (c) the impact of the outcome of the test and measure on the patient's plan for care (i.e., need for continuing treatment, discharge from treatment, or referral to other provider[s]).

306.    On information and belief, any written report submitted in support of billing for services rendered under CPT Code 97750 must include: Total time spent with the patient in providing the test and measurement, including the time spent preparing the patient for the test

and measurement procedure; the time spent performing the selected protocol; and the time spent with the patient in providing any post-testing instructions.

307. On information and belief, the Functional Evaluation Testing reports submitted to Plaintiffs by Medical Diagnostic Services and/or First Columbus Medical and the Referring Providers do not constitute a separate, distinctly identifiable signed report required to bill under CPT Code 97750.

308. On information and belief, to the extent the Referring Providers submitted any reports in support of their claims for reimbursement for Functional Evaluation Testing, such reports consisted of nothing more than a copy of the Medical Diagnostic Services' and/or First Columbus Medical's report data derived from the Functional Evaluation Testing, together with boilerplate language of the general nature or purpose of the testing that did not vary between claimants and did not include any interpretation and/or analysis concerning, among other things, the significance of the findings as they relate to the Covered Person's medical condition, and/or the impact of the Functional Evaluation Testing on the Covered Person's treatment plan. By way of example and not limitation, as noted above, Defendants Reyfman and Cancellieri both testified that they did not interpret the Functional Evaluation reports.

309. On information and belief, by submitting bills for Functional Evaluation Testing under CPT Code 97750 when Medical Diagnostic Services and/or First Columbus Medical, and the Referring Providers failed to prepare a separate, distinctly identifiable signed report that interpreted the results and set forth the medical necessity of the billed for services, Medical Diagnostic Services and/or First Columbus Medical and the Referring Providers misrepresented the services for which they billed, and were paid by Allstate.

310. On information and belief, in furtherance of their scheme to defraud and as part of a kickback arrangement, Medical Diagnostic Services, First Columbus Medical and the

Referring Providers intentionally misused the aforementioned CPT codes to conceal and misrepresent the actual services provided and did not provide the services as billed.

**2. Fraudulent Billing For Services Not Provided by a**
   **Physician or Other Qualified Health Care Professional**

311.    On information and belief, medical services are reimbursable, if at all, pursuant to CPT Code 97750 and the Muscle Testing and Range of Motion Codes only when the services are provided by a physician or other qualified healthcare professional, which includes an individual who is qualified by education, training, licensure/regulation (when applicable), and facility privileging (when applicable) who performs a professional service within his or her scope of practice and independently reports that professional service.

312.    On information and belief, to the extent any Functional Evaluation Testing was performed, Medical Diagnostic Services and/or First Columbus Medical routinely used technicians (that are not qualified healthcare professionals) to perform the testing.

313.    On information and belief, the Controllers recognized that such services had to be performed by a qualified healthcare professional and not a "technician" and, as such, Medical Diagnostic Services and/or First Columbus Medical omitted the names of the technician from the Functional Evaluation Testing reports submitted to Allstate and, in doing so, materially misrepresented that such services were performed by a qualified healthcare professional, when in fact, they were not.

314.    On information and belief, in furtherance of the scheme to defraud, the Defendant Providers billed for Functional Evaluation Testing regardless of whether such studies were actually performed in a medically valid manner and/or of diagnostic value, materially misrepresented the services performed and purported findings, and inflated their billing as part of their scheme to maximize profits through the provision and billing for

fraudulent services.

### 3.    Fraudulent Performance of Functional Evaluation Testing

315.    On information and belief, in addition to billing Allstate for separate procedures using the Muscle Testing and Range of Motion codes when no such separate procedures were performed, the Defendant Providers routinely submitted bills to Allstate for reimbursement for Functional Evaluation Testing purportedly performed on Covered Persons that, in most instances, were not performed in accordance with the requirements for those codes and/or within the standard set forth in guidelines published by the AMA (Cocchiarella, L. and Andersson G.., *Guides to the Evaluation of Permanent Impairment*, American Medical Association, (2001)) (referred to hereinafter as the "AMA Guides").

### a)    Incomplete Range of Motion Measurements

316.    On information and belief, as a matter of procedure, practice and protocol and in furtherance of the scheme to defraud alleged herein, the Defendant Providers submitted bills to Allstate for reimbursement for Functional Evaluation Tests purportedly performed that were fabricated and materially misrepresented in that they contained incomplete range of motion measurements, highly indicative of invalid impairment evaluations that were based on the incomplete measurements, that failed to meet the requirements of use of CPT codes 95851 and 95852 and the AMA Guides, and thus are not eligible for reimbursement as billed.

317.    On information and belief, according to the Fee Schedule and the AMA Guidelines, reimbursement for range of motion billed under CPT Codes 98851 and 95852 includes measurements of the degree of movement in multiple planes of motion, assessment of the capsular end feel of the joint, observation of muscles substitution patterns due to weakness of surrounding muscles, and notation of pain, tonus, and crepitus at specific places in the arc of motion.

318.    On information and belief, as a matter of procedure, practice and protocol and in furtherance of the scheme to defraud alleged herein, Medical Diagnostic Services and First Columbus Medical routinely performed incomplete range of motion tests which they used to calculate motion impairment.

319.    By way of example, on information and belief, according to the AMA Guides as it relates to determining impairments of the spine, spinal range of motion should be measured in three principal planes: sagittal (extension-flexion), frontal or coronal (movements toward-away from the midline) and transverse or axial (rotation).   The ratings for each impaired spinal motion are added to determine impairment.

320.    On information and belief, notwithstanding this requirement, while purportedly performing cervical and/or lumbar range of motion tests, in some instances, Defendants Medical Diagnostic Services and First Columbus Medical failed to measure all required planes of motion, including cervical lateral flexion and rotation and/or lumbar lateral flexion and straight leg raising.   By failing to perform these measurements, the cervical and/or lumbar range of motion evaluation purportedly performed by Medical Diagnostic Services and/or First Columbus Medical were incomplete.

321.    On information and belief, according to the AMA Guides as it relates to determining wrist motion impairment, flexion and extension at the wrist represents 70 percent of wrist function.   The remaining 30 percent of wrist function involves radial and ulnar deviation.   Impairments contributed by each of these functional units of motion are added to determine impairment of the upper extremity due to abnormal wrist motion.

322.    On information and belief, notwithstanding the consideration of each functional wrist unit to determine impairment, Defendants Medical Diagnostic Services and First Columbus Medical routinely failed to test, all required units of motion, including radial and

ulnar deviation and, in some instances, improperly made impairment determinations based on only wrist palmar flexion and dorsal flexion.

323.  On information and belief, according to the AMA Guides as it relates to determining elbow motion impairment, the elbow joint has two functional units of motion: flexion and extension which represents 60 percent of elbow function and pronation and supination which represents 40 percent of elbow function.  Impairments contributed by each of these functional units of motion are added to determine impairment of the upper extremity due to abnormal elbow motion.

324.  On information and belief, notwithstanding the consideration of each functional elbow unit to determine impairment, Defendants Medical Diagnostic Services and First Columbus Medical routinely failed to test all required units of motion, including pronation and supination of the elbow and, in some instances, improperly made impairment determinations based on only elbow flexion and extension. Representative examples of Functional Evaluation Testing reports submitted by Defendant Providers that illustrate Medical Diagnostic Services and First Columbus Medical's failure to test all planes and/or units of cervical, and/or wrist and elbow motion are as follows: Claimant J.C., claim number 0363506478-02, Claimant O.M., claim number 0473618874-02, Claimant F.H., claim number 0420139016-02, Claimant G.R., claim number 0369956825-01, Claimant S.Q., claim number 0480199818-01, Claimant V.S., claim number 0473457901-01, Claimant E.B.C., claim number 0329238075-04.

325.  On information and belief, to the extent that Medical Diagnostic Services and First Columbus Medical's functional analysis was based on incomplete range of motion measurements and impairment evaluations that do not take into consideration all range of motion measurements required to calculate motion impairment, it is of no diagnostic value.

326.  On information and belief, Medical Diagnostic Services and First Columbus

Medical regularly failed to test all required planes and/or units of motion because they knew that the Functional Evaluation reports were fictitious and not intended to actually diagnose a Covered Persons' medical condition and direct future treatment, but instead, intended solely to generate payments from insurance companies, in general, and Allstate, in particular. Indeed, in many instances, the areas being measured were not medically necessary, but rather tested only to inflate the number of units Medical Diagnostic Services and First Columbus Medical could bill under CPT Codes 95851 and 95852.

327.    On information and belief, because Medical Diagnostic Services and First Columbus Medical's functional analysis is based on incomplete range of motion measurements that likely resulted in invalid impairment evaluations, it is of no diagnostic value.

328.    On information and belief, because Medical Diagnostic Services and First Columbus Medical's range of motion testing failed to meet the requirements of CPT 95851 and 95852, the Defendant Providers were not entitled to reimbursement.

**b) Fraudulent Billing for Uninjured Segments of the Spine and/or Extremities For the Purpose of Increasing Reimbursement**

329.    On information and belief, CPT Code 95831 should be reported once for each extremity and/or once for the trunk (e.g., cervical, thoracic, or lumbar), and CPT Code 95832 should be reported once for the hand with or without comparison to the other hand.

330.    On information and belief, CPT Code 95851 may be reported for each extremity (excluding hand) measured or for each trunk section measured (e.g., cervical, thoracic, or lumbar).

331.    On information and belief, in order to increase the number of units of CPT codes that they could bill for, Medical Diagnostic Services and/or First Columbus Medical routinely tested segments of the spine and/or extremities that were not ordered and not within the area

88

of injury for the purpose of increasing reimbursement.

332.  On information and belief, the testing of segments of the spine and/or extremities that were not ordered and not within the area of injury were not medically necessary. Furthermore, in many instances when the tests resulted in impairments, those deficits were not listed as part of the impairment detail and/or not calculated as part of the whole person impairment rating.  For instance:

- In connection with claimant B.N., claim number 0330618620-02, purported date of service 07-31-14, though the test ordered was a lumbar series, Medical Diagnostic Services purportedly tested cervical range of motion and hand strength. Based on the measurements reported, cervical extension resulted in a 2% impairment and left and right hand grip was documented as low. Neither of these deficits was considered as part of the whole person impairment rating.

- In connection with Claimant J.C., claim number 0363506478-02, purported date of service 04-06-15, though the test ordered was a lumbar series, Medical Diagnostic Services purportedly tested cervical range of motion and hand strength. Based on the measurements reported, cervical extension resulted in a 2% impairment and left hand grip was documented as low. Neither of these deficits was considered as part of the whole person impairment rating.

- In connection with Claimant O.M., claim number 0473618874-02, purported date of service 09-20-17, though the test ordered was a lumbar series, Medical Diagnostic Services on behalf of First Columbus purportedly tested cervical range of motion and hand strength. Based on the measurements reported, cervical extension resulted in a 4% impairment and left and right hand grip was documented as low. None of these deficits was considered as part of the whole person impairment rating.

- In connection with Claimant G.R., claim number 0369956825-01, purported date of service 06-30-15, though the test ordered was a lumbar series, Medical Diagnostic Services purportedly tested cervical range of motion and hand strength. Based on the measurements reported, cervical flexion and extension resulted in a 6% impairment and left and right hand grip was documented as low. None of these deficits was considered as part of the whole person impairment rating.

- In connection with Claimant S.Q., claim number 0480199818-01, purported date of service 12-04-17, though the test ordered was a lumbar series, Medical Diagnostic Services on behalf of First Columbus purportedly tested cervical range of motion and hand strength. Based on the measurements reported, cervical extension resulted in a 4% impairment and left and right hand grip was documented as low. None of these deficits was considered as part of the whole person impairment rating.

- In connection with Claimant V.S., claim number 0473457901-01, purported date of service 11-17-17, though the test ordered was a lumbar series, Medical Diagnostic Services on behalf of First Columbus purportedly tested cervical range of motion and hand strength. Based on the measurements reported, cervical flexion and extension resulted in a 4% impairment and left and right hand grip was documented as low. None of these deficits was considered as part of the whole person impairment rating.

- In connection with Claimant E.B.C., claim number 0329238075-04, purported date of service 06-16-14, though the test ordered was a lumbar series, Medical Diagnostic Services purportedly tested cervical range of motion and hand strength. Based on the measurements reported, cervical flexion and extension resulted in a 4% impairment and left and right hand grip was documented as low. None of these deficits was considered as part of the whole person impairment rating.

c) **Fraudulent Diagnosis of Nerve Impairment**

333. On information and belief, in numerous instances and in furtherance of the scheme to defraud alleged herein, one or more of the Defendant Providers submitted Functional Evaluation Testing reports to Allstate for reimbursement that were fabricated and/or materially misrepresented in that they contained unsupported diagnoses regarding the existence of nerve damage contributing to cervical region impairment.

334. On information and belief, by way of example and not limitation, Medical Diagnostic Services and First Columbus Medical routinely attributed muscle weakness to specific nerve disorders without taking into account other potential causes of the purported muscle weakness. Furthermore, they "double counted" the impairment allegedly due to the muscle weakness and the independent impairment allegedly due to the nerve damage.

335.    According to the AMA Guide, "Impairment of the Upper Extremities Due to Peripheral Nerve Disorders", accurate diagnosis of a peripheral nerve disorder is based on numerous factors including (1) a detailed history, (2) a thorough physical examination and (3) appropriate diagnostic tests, including a variety of electrical and imaging studies.  Additionally, excellent knowledge of the morphologic anatomy and physiology of the nervous system is a prerequisite.

336.    On information and belief, as a matter of procedure, practice and protocol and in furtherance of the scheme to defraud alleged herein, Medical Diagnostic Services and First Columbus Medical routinely diagnosed nerve disorders without taking into account any of the above factors including the claimant's detailed history, a thorough physical examination and/or electrical or imaging studies.  Rather, in furtherance of their scheme to defraud, the diagnosis of a nerve disorder was solely based on a finding of muscle weakness during the Functional Evaluation Testing without consideration of any other factors.

337.    On information and belief, Medical Diagnostic Services and First Columbus Medical failed to consider other possible causes of muscle weakness because they knew that the Functional Evaluation reports were fictitious and not intended to actually diagnose a Covered Persons' medical condition and direct future treatment, but instead, intended solely to generate payments from insurance companies, in general, and Allstate, in particular.

338.    In addition, Medical Diagnostic Services and First Columbus Medical routinely misdiagnosed nerve damage based on grip and pinch strength testing.  In diagnosing such nerve disorders based upon the results of the grip and pinch strength testing, Medical Diagnostic Services and First Columbus Medical miscalculated the findings by adding together the impairment for the hand muscle weakness and the upper extremity nerve damage, as if they were two different and independent findings.

339. On information and belief, the AMA Guide prohibits the combining of the impairments found as a result of both the muscle weakness and the nerve damage. In instances where nerve damage is present, such nerve damage supersedes the muscle weakness and as such, the impairment would be attributed to the nerve disorder with no additional impairment contributed by muscle weakness.

340. On information and belief, indicative that the data was fabricated, materially misrepresented and/or has no diagnostic value is the fact that the diagnosis and findings improperly combined the impairments for the muscle weakness and the nerve damage.

341. Representative examples of Functional Evaluation Testing reports submitted by one or more of Defendant Providers wherein the Functional Evaluation reports contained misdiagnoses of nerve damage and findings improperly combining the impairments for the muscle weakness and nerve damage are as follows: Claimant T.D., claim number 0369505713-01, Claimant J.F., claim number 0369764369-02, Claimant G.G., claim number 0502308695-01,Claimant E.B.C, claim number 0329238075-04.

### d) Fraudulent Misrepresentation of Lumbosacral and/or Cervical Region Impairment

342. On information and belief, in numerous instances and in furtherance of the scheme to defraud alleged herein, one or more of the Defendant Providers submitted Functional Evaluation reports to Allstate for reimbursement that were fabricated and/or materially misrepresented in that they contained unsupported diagnoses regarding the existence of nerve damage contributing to lumbosacral and/or cervical region impairment.

343. On information and belief, in furtherance of the scheme to defraud, the Defendant Providers routinely submitted Functional Evaluation reports containing "Impairment Detail" which predominantly attributed lumbosacral and/or cervical region

impairment to an "unoperated intervertebral disc or other soft tissue lesion, with medically documented injury and a minimum of six months of medically documented pain."

344.    On information and belief, this impairment finding could not be made because less than 6 months elapsed between the date of the injury and the date of the purported testing. The fact that the diagnosed impairment is irreconcilable with the date of injury is highly indicative that the finding was contrived.   Representative examples of claims wherein the Functional Evaluation reports contained misrepresented findings of lumbosacral and/or cervical region impairment are as follows: Claimant L.B., claim number 0495617763-01, Claimant M.G., claim number 0376148029-01, , Claimant D.M., claim number 0474520186-02, Claimant J.F., claim number 0369764369-02, Claimant O.M., claim number 0473618874-02, Claimant A.H., claim number 0311014807-02, Claimant B.N., claim number 0330618620, Claimant J.C. , claim number 0490037678-02, Claimant E.B.C., claim number 0329238075-04, Claimant H.G., claim number 0468512470-03.

## DISCOVERY OF THE FRAUD

345.    Based upon the Defendants' material misrepresentations and other affirmative acts to conceal their fraud, described above, Plaintiffs did not discover and should not have reasonably discovered that their damages were attributable to fraud until shortly before they filed this Complaint.

## STATEMENT OF CLAIMS

### FIRST CLAIM FOR RELIEF

### AGAINST DEFENDANTS CHILLEMI JR., CHILLEMI SR., SHAH, JOHN DOES 1 THROUGH 20 AND ABC CORPORATIONS 1 THROUGH 20

### [RICO, pursuant to 18 U.S.C. § 1962(c)]

346.    The allegations of paragraphs 1 through 345 are hereby repeated and realleged as though fully set forth herein.

### THE RICO ENTERPRISE

347.    At all times relevant herein, Medical Diagnostic Services was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

348.    From in or about February 2014 through the present, Defendants Chillemi Jr., Chillemi Sr., Shah, and one or more of the John Doe Defendants 1 through 20 and ABC Corporations 1 through 20 knowingly conducted and participated in the affairs of the Medical Diagnostic Services Enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein, in the representative list of predicate acts set forth in the accompanying Appendix, which are incorporated by reference.   Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

349.    At all relevant times mentioned herein, Defendants Chillemi Jr., Chillemi Sr., and one or more of the John Doe Defendants 1 through 20, were the Controllers of, exerted control over, and directed the operations of the Medical Diagnostic Services Enterprise. Defendants Chillemi Jr. and Chillemi Sr., along with one or more of the John Doe Defendants 1 through 20, utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting

documents to Plaintiffs.

350. At all relevant times mentioned herein, Defendant Shah was employed by or associated with the Medical Diagnostic Services Enterprise and participated in the conduct of its affairs through a pattern of racketeering activity. In addition, Defendant Shah furnished his name and professional license to the Medical Diagnostic Services Enterprise and provided the essential means for the Enterprise to fraudulently incorporate a bogus professional service corporation and fraudulently bill insurance companies.

351. On information and belief, one or more of John Does 1 through 20 were associated with the Medical Diagnostic Services Enterprise and participated in the conduct of its affairs through a pattern of racketeering activity.

352. On information and belief, one or more of the ABC Corporations 1 through 20 were associated with the Medical Diagnostic Services Enterprise and participated in the conduct of its affairs through a pattern of racketeering activity.

## THE PATTERN OF RACKETEERING ACTIVITY
## (RACKETEERING ACTS)

353. The racketeering acts set forth herein were carried out over a five-year period, were related and similar, and were committed as part of Defendants' scheme to use their control of Medical Diagnostic Services to defraud insurers.

354. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Medical Diagnostic Services continues to pursue collection on the fraudulent bills to the present day.

355. As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Defendants caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341. The mailings were

made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Medical Diagnostic Services Enterprise based upon materially false and misleading information.

356.    Through the Medical Diagnostic Services Enterprise, Defendants submitted or caused to be submitted thousands of fraudulent claim forms seeking payment for healthcare services provided to numerous No-fault Claimants.  The bills and supporting documents that were sent by Defendants, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service.  By virtue of those activities, Defendants engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Medical Diagnostic Services Enterprise through the filing of this Complaint.

357.    A sample list of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendants in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

358.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

359.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

## DAMAGES

360.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company, Allstate Fire & Casualty Insurance Company, Allstate New Jersey Insurance Company, Allstate New Jersey Property & Casualty Insurance Company and Allstate Property & Casualty Insurance Company have been injured in their business and property and have been damaged in the aggregate amount presently in excess of $93,000.00, the exact amount to be determined at trial.

361.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Chillemi Jr., Chillemi Sr., Shah, John Does 1 through 20 and ABC Corporations 1 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## SECOND CLAIM FOR RELIEF

## AGAINST DEFENDANTS CHILLEMI JR., CHILLEMI SR., SHAH, JOHN DOES 1 THROUGH 20 AND ABC CORPORATIONS 1 THROUGH 20

### [RICO, pursuant to 18 U.S.C. § 1962(c)]

362.    The allegations of paragraphs 1 through 345 are hereby repeated and realleged as though fully set forth herein.

## THE RICO ENTERPRISE

363.    At all times relevant herein, First Columbus Medical was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

364.    From in or about October 2016 through the present, Defendants Chillemi Jr., Chillemi Sr., Shah, and one or more of the John Doe Defendants 1 through 20 and ABC Corporations 1 through 20 knowingly conducted and participated in the affairs of the First Columbus Medical Enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein, in the representative list of predicate acts set forth in the accompanying Appendix, which are incorporated by reference.  Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

365.    At all relevant times mentioned herein, Defendants Chillemi Jr., Chillemi Sr., and one or more of the John Doe Defendants 1 through 20, were the Controllers of, exerted control over, and directed the operations of the First Columbus Medical Enterprise. Defendants

Chillemi Jr. and Chillemi Sr., along with one or more of the John Doe Defendants 1 through 20, utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs.

366.    At all relevant times mentioned herein, Defendant Shah was employed by or associated with the First Columbus Medical Enterprise and participated in the conduct of its affairs through a pattern of racketeering activity.  In addition, Defendant Shah furnished his name and professional license to the First Columbus Medical Enterprise and provided the essential means for the Enterprise to fraudulently incorporate a bogus professional service corporation and fraudulently bill insurance companies.

367.    On information and belief, one or more of John Does 1 through 20 were associated with the First Columbus Medical Enterprise and participated in the conduct of its affairs through a pattern of racketeering activity.

368.    On information and belief, one or more of the ABC Corporations 1 through 20 were associated with the First Columbus Medical Enterprise and participated in the conduct of its affairs through a pattern of racketeering activity.

## THE PATTERN OF RACKETEERING ACTIVITY
## (RACKETEERING ACTS)

369.    The racketeering acts set forth herein were carried out over a three-year period, were related and similar, and were committed as part of Defendants' scheme to use their control of First Columbus Medical to defraud insurers.

370.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as First Columbus Medical continues to pursue collection on the fraudulent bills to the present day.

371.     As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Defendants caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the First Columbus Medical Enterprise based upon materially false and misleading information.

372.     Through the First Columbus Medical Enterprise, Defendants submitted or caused to be submitted thousands of fraudulent claim forms seeking payment for healthcare services provided to numerous No-fault Claimants. The bills and supporting documents that were sent by Defendants, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the First Columbus Medical Enterprise through the filing of this Complaint.

373.     A sample list of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendants in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

374.     Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

375.     Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### DAMAGES

376.     By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company, Allstate Indemnity Insurance Company, Allstate Fire & Casualty Insurance Company and Allstate Property & Casualty Insurance Company have been injured

in their business and property and have been damaged in the aggregate amount presently in excess of $94,000.00, the exact amount to be determined at trial. .

377.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Chillemi Jr., Chillemi Sr., Shah, John Does 1 through 20 and ABC Corporations 1 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## THIRD CLAIM FOR RELIEF

## AGAINST DEFENDANTS MANFREDI, BARNES, JOHN DOES 1 THROUGH 20 AND ABC CORPORATIONS 1 THROUGH 20

## [RICO, pursuant to 18 U.S.C. § 1962(c)]

378.    The allegations of paragraphs 1 through 345 are hereby repeated and realleged as though fully set forth herein.

## THE RICO ENTERPRISE

379.    At all times relevant herein, Mount Vernon Medical Care was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

380.    From in or about 2014 through the date of the filing of this Complaint, Defendants Manfredi, Barnes, John Does 1 through 20 and ABC Corporations 1 through 20 knowingly conducted and participated in the affairs of the Mount Vernon Medical Care Enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein, in the representative list of predicate acts set forth in the accompanying Appendix, which are incorporated by reference.  Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

381.    At all relevant times mentioned herein, Defendant Manfredi, together with one

or more of the John Doe Defendants, were the Controllers of, exerted control over, and directed the operations of the Mount Vernon Medical Care Enterprise. Defendant Manfredi, together with one or more of the John Doe Defendants, utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs.

382. At all relevant times mentioned herein, Defendant Barnes was employed by or associated with the Mount Vernon Medical Care Enterprise and participated in the conduct of its affairs through a pattern of racketeering activity. In addition, Defendant Barnes furnished his name and professional license to the Mount Vernon Medical Care Enterprise and provided the essential means for the Enterprise to fraudulently incorporate a bogus professional service corporation and fraudulently bill insurance companies.

383. On information and belief, one or more of John Does 1 through 20 were associated with the Mount Vernon Medical Care Enterprise and participated in the conduct of its affairs through a pattern of racketeering activity.

384. On information and belief, one or more of the ABC Corporations were associated with the Mount Vernon Medical Care Enterprise and participated in the conduct of its affairs through a pattern of racketeering activity.

## THE PATTERN OF RACKETEERING ACTIVITY
## (RACKETEERING ACTS)

385. The racketeering acts set forth herein were carried out over a more than a five year period, were related and similar, and were committed as part of Defendants' scheme to use their control of Mount Vernon Medical Care to defraud insurers and if not stopped will continue into the future.

386. On information and belief, this pattern of racketeering activity poses a specific

threat of repetition extending indefinitely into the future, inasmuch as Mount Vernon Medical Care continues to pursue collection on the fraudulent bills to the present day.

387.    As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Defendants caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341.  The mailings were made in furtherance of a scheme or artifice to defraud Allstate and to induce Allstate to issue checks to the Mount Vernon Medical Care Enterprise based upon materially false and misleading information.

388.    Through the Mount Vernon Medical Care Enterprise, Defendants submitted or caused to be submitted thousands of fraudulent claim forms seeking payment for healthcare services provided to numerous No-fault Claimants.  The bills and supporting documents that were sent by Defendants, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service.  By virtue of those activities, Defendants engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Mount Vernon Medical Care Enterprise through the filing of this Complaint.

389.    A sample list of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendants in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

390.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

391.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

**THE DAMAGES**

392.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Allstate Insurance

Company, Allstate Fire & Casualty Insurance Company and Allstate Property & Casualty Insurance Company any have been injured in their business and property and been damaged in the aggregate amount presently in excess of $99,000.00, the exact amount to be determined at trial.

393.    Pursuant to 18 U.S.C. § 1964(c), Allstate is entitled to recover from Defendants Manfredi, Barnes, one or more of John Does 1 through 20 and one or more of the ABC Corporations 1 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## FOURTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS CHILLEMI JR., CHILLEMI SR. SHAH, AVGERINOS, MEDICAL DIAGNOSTIC SERVICES, FIRST COLUMBUS MEDICAL AND JOHN DOES 1 THROUGH 20 AND ABC CORPORATIONS 1 THROUGH 20

### [RICO, pursuant to 18 U.S.C. § 1962(c)]

394.    The allegations of paragraphs 1 through 345 are hereby repeated and realleged as though fully set forth herein.

## THE RICO ENTERPRISE

395.    At all times relevant herein, Avgerinos Chiropractic was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

396.    From in or about 2014 through the present, Defendant Avgerinos, together with Defendants Chillemi Jr., Chillemi Sr., Shah, Medical Diagnostic Services, First Columbus Medical and one or more of the John Doe Defendants 1 through 20 and ABC Corporations 1 through 20, knowingly conducted and participated in the affairs of the Avgerinos Chiropractic Enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein, in the representative list of predicate acts set forth in the accompanying

Appendix, which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

397. At all relevant times mentioned herein, Defendant Avgerinos exerted control over, and directed the operations of the Avgerinos Chiropractic Enterprise. Defendant Avgerinos utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted fraudulent bills and supporting documents to Plaintiffs for services that were the result of an unlawful kickback scheme.

398. At all relevant times mentioned herein, Defendants Chillemi Jr., Chillemi Sr., Shah, Medical Diagnostic Services, First Columbus Medical and/or one or more of the John Doe Defendants 1 through 20 and ABC Corporations 1 through 20 were associated with the Avgerinos Chiropractic Enterprise and participated in the conduct of its affairs through a pattern of racketeering activity. In particular, Chillemi Jr. and Chillemi Sr., through Medical Diagnostic Services and First Columbus Medical, forged a relationship with the Avgerinos Chiropractic Enterprise through which, in exchange for a kickback and/or other financial compensation, Avgerinos Chiropractic referred patients to Medical Diagnostic Services and/or First Columbus Medical for Functional Evaluation Testing pursuant to a predetermined course of treatment, irrespective of medical necessity. In doing so, Defendants Chillemi Jr. and Chillemi Sr., through Medical Diagnostic Services and First Columbus Medical, provided the essential means for the Enterprise to fraudulently bill insurance companies for services rendered pursuant to an unlawful kickback scheme.

399. It was both foreseeable and the intended consequence that the Covered Persons that were being referred to Medical Diagnostic Services and/or First Columbus Medical by Avgerinos Chiropractic would be used as a source to submit bills and induce payment from insurers in general, and Plaintiffs in particular, in connection with fraudulent claims.

400.     On information and belief, Defendant Shah was associated with the Avgerinos Chiropractic Enterprise and participated in the conduct of its affairs through a pattern of racketeering activity.   In addition, by abdicating ownership and control over Medical Diagnostic Services and First Columbus Medical and agreeing to allow Chillemi Jr. and Chillemi Sr. to enter into illicit relationships on behalf of Medical Diagnostic Services and First Columbus Medical, Defendant Shah provided the essential means for Defendant Chillemi Jr. and Chillemi Sr. to forge a relationship and/or agreement with Defendant Avgerinos that ensured that the doctors associated with the Avgerinos Chiropractic Enterprise referred patients to Medical Diagnostic Services and/or First Columbus Medical for Functional Evaluation Testing irrespective of medical necessity, in exchange for a kickback and/or other financial compensation, which resulted in fraudulent bill submissions to insurance companies, including but not limited to Plaintiffs.

## THE PATTERN OF RACKETEERING ACTIVITY
## (RACKETEERING ACTS)

401.     The racketeering acts set forth herein were carried out over a five-year period, were related and similar, and were committed as part of Defendants' scheme to defraud insurers.

402.     On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Avgerinos Chiropractic continues to pursue collection on the fraudulent bills to the present day.

403.     As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Defendants, acting with the knowledge that the use of the mails would follow in the ordinary conduct of the Avgerinos Chiropractic Enterprise's business and/or with use of the mails reasonably foreseen even though not actually

intended, caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Avgerinos Chiropractic Enterprise based upon materially false and misleading information.

404.    Through the Avgerinos Chiropractic Enterprise, Defendants submitted or caused to be submitted numerous fraudulent claim forms seeking payment for healthcare services that were provided as a result of an unlawful kickback scheme, irrespective of medical necessity. The bills and supporting documents that were sent by Defendants, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants engaged in a continuous series of predicate acts of mail fraud.

405.    A sample list of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendants in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

406.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

407.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

## **DAMAGES**

408.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company, Allstate Fire & Casualty Insurance Company, and Allstate Property & Casualty Insurance Company have been injured in their business and property and have been damaged in the aggregate amount presently in excess of $19,000.00, the exact amount to be determined at trial.

409.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Chillemi Jr., Chillemi Sr., Shah, Avgerinos, Medical Diagnostic Services, First Columbus Medical and one or more of the John Doe Defendants 1 through 20 and ABC Corporations 1 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

### FIFTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS CHILLEMI JR., CHILLEMI SR. SHAH, ROSEN, MEDICAL DIAGNOSTIC SERVICES, FIRST COLUMBUS MEDICAL AND JOHN DOES 1 THROUGH 20 AND ABC CORPORATIONS 1 THROUGH 20

### [RICO, pursuant to 18 U.S.C. § 1962(c)]

410.    The allegations of paragraphs 1 through 345 are hereby repeated and realleged as though fully set forth herein.

### THE RICO ENTERPRISE

411.    At all times relevant herein, Bedford-Flatbush Chiropractic was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

412.    From in or about 2014 through the present, Defendant Rosen, together with Defendants Chillemi Jr., Chillemi Sr., Shah, Medical Diagnostic Services, First Columbus Medical and one or more of the John Doe Defendants 1 through 20 and ABC Corporations 1 through 20, knowingly conducted and participated in the affairs of the Bedford-Flatbush Chiropractic Enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein, in the representative list of predicate acts set forth in the accompanying Appendix, which are incorporated by reference.   Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

413.     At all relevant times mentioned herein, Defendant Rosen exerted control over, and directed the operations of the Bedford-Flatbush Chiropractic Enterprise.  Defendant Rosen utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted fraudulent bills and supporting documents to Plaintiffs for services that were the result of an unlawful kickback scheme.

414.     At all relevant times mentioned herein, Defendants Chillemi Jr., Chillemi Sr., Shah, Medical Diagnostic Services, First Columbus Medical and/or one or more of the John Doe Defendants 1 through 20 and ABC Corporations 1 through 20 were associated with the Bedford-Flatbush Chiropractic Enterprise and participated in the conduct of its affairs through a pattern of racketeering activity.  In particular, Chillemi Jr. and Chillemi Sr., through Medical Diagnostic Services and First Columbus Medical, forged a relationship with the Bedford-Flatbush Chiropractic Enterprise through which, in exchange for a kickback and/or other financial compensation, Bedford-Flatbush Chiropractic referred patients to Medical Diagnostic Services and/or First Columbus Medical for Functional Evaluation Testing pursuant to a predetermined course of treatment, irrespective of medical necessity.  In addition, Defendants Chillemi Jr. and Chillemi Sr., through Medical Diagnostic Services and First Columbus Medical, provided the essential means for the Enterprise to fraudulently bill insurance companies for services rendered pursuant to an unlawful kickback scheme.

415.     It was both foreseeable and the intended consequence that the Covered Persons that were being referred to Medical Diagnostic Services and/or First Columbus Medical by Bedford-Flatbush Chiropractic would be used as a source to submit bills and induce payment from insurers in general, and Plaintiffs in particular, in connection with fraudulent claims.

416.     On information and belief, Defendant Shah was associated with the Bedford-Flatbush Chiropractic Enterprise and participated in the conduct of its affairs through a pattern

of racketeering activity. In addition, by abdicating ownership and control over Medical Diagnostic Services and First Columbus Medical and agreeing to allow Chillemi Jr. and Chillemi Sr. to enter into illicit relationships on behalf of Medical Diagnostic Services and First Columbus Medical, Defendant Shah provided the essential means for Defendant Chillemi Jr. and Chillemi Sr. to forge a relationship and/or agreement with Defendant Rosen that ensured that the doctors associated with the Bedford-Flatbush Chiropractic Enterprise referred patients to Medical Diagnostic Services and/or First Columbus Medical for Functional Evaluation Testing irrespective of medical necessity, in exchange for a kickback and/or other financial compensation, which resulted in fraudulent bill submissions to insurance companies, including but not limited to Plaintiffs.

**THE PATTERN OF RACKETEERING ACTIVITY
(RACKETEERING ACTS)**

417. The racketeering acts set forth herein were carried out over a five-year period, were related and similar, and were committed as part of Defendants' scheme to defraud insurers.

418. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Bedford-Flatbush Chiropractic continues to pursue collection on the fraudulent bills to the present day.

419. As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Defendants, acting with the knowledge that the use of the mails would follow in the ordinary conduct of the Bedford-Flatbush Chiropractic Enterprise's business and/or with use of the mails reasonably foreseen even though not actually intended, caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme

or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Bedford-Flatbush Chiropractic Enterprise based upon materially false and misleading information.

420.    Through the Bedford-Flatbush Chiropractic Enterprise, Defendants submitted or caused to be submitted numerous fraudulent claim forms seeking payment for healthcare services that were provided as a result of an unlawful kickback scheme, irrespective of medical necessity.  The bills and supporting documents that were sent by Defendants, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service.  By virtue of those activities, Defendants engaged in a continuous series of predicate acts of mail fraud.

421.    A sample list of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendants in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

422.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

423.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

## **DAMAGES**

424.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company and Allstate Property & Casualty Insurance Company, have been injured in their business and property and have been damaged in the aggregate amount presently in excess of $22,000.00, the exact amount to be determined at trial.

425.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Chillemi Jr., Chillemi Sr., Rosen, Shah, Medical Diagnostic Services, First Columbus Medical and one or more of the John Doe Defendants 1 through 20 and ABC

Corporations 1 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## SEVENTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS CHILLEMI JR., CHILLEMI SR. SHAH, A. CANCELLIERI, C. CANCELLIERI, MEDICAL DIAGNOSTIC SERVICES, FIRST COLUMBUS MEDICAL AND JOHN DOES 1 THROUGH 20 AND ABC CORPORATIONS 1 THROUGH 20

### [RICO, pursuant to 18 U.S.C. § 1962(c)]

426.     The allegations of paragraphs 1 through 345 are hereby repeated and realleged as though fully set forth herein.

## THE RICO ENTERPRISE

427.     At all times relevant herein, Cancellieri Chiropractic was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

428.     From in or about 2014 through the present, Defendants A. Cancellieri and C. Cancellieri, together with Defendants Chillemi Jr., Chillemi Sr., Shah, Medical Diagnostic Services, First Columbus Medical and one or more of the John Doe Defendants 1 through 20 and ABC Corporations 1 through 20, knowingly conducted and participated in the affairs of the Cancellieri Chiropractic Enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein, in the representative list of predicate acts set forth in the accompanying Appendix, which are incorporated by reference.  Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

429.     At all relevant times mentioned herein, Defendants A. Cancellieri and C. Cancellieri exerted control over, and directed the operations of the Cancellieri Chiropractic Enterprise.  Defendants A. Cancellieri and C. Cancellieri utilized that control to conduct the

pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted fraudulent bills and supporting documents to Plaintiffs for services that were the result of an unlawful kickback scheme.

430.    At all relevant times mentioned herein, Defendants Chillemi Jr., Chillemi Sr., Shah, Medical Diagnostic Services, First Columbus Medical and/or one or more of the John Doe Defendants 1 through 20 and ABC Corporations 1 through 20 were associated with the Cancellieri Chiropractic Enterprise and participated in the conduct of its affairs through a pattern of racketeering activity.  In particular, Chillemi Jr. and Chillemi Sr., through Medical Diagnostic Services and First Columbus Medical, forged a relationship with the Cancellieri Chiropractic Enterprise through which, in exchange for a kickback and/or other financial compensation, Cancellieri Chiropractic referred patients to Medical Diagnostic Services and/or First Columbus Medical for Functional Evaluation Testing pursuant to a predetermined course of treatment, irrespective of medical necessity.  In addition, Defendants Chillemi Jr. and Chillemi Sr., through Medical Diagnostic Services and First Columbus Medical, provided the essential means for the Enterprise to fraudulently bill insurance companies for services rendered pursuant to an unlawful kickback scheme.

431.    It was both foreseeable and the intended consequence that the Covered Persons that were being referred to Medical Diagnostic Services and/or First Columbus Medical by Cancellieri Chiropractic would be used as a source to submit bills and induce payment from insurers in general, and Plaintiffs in particular, in connection with fraudulent claims.

432.    On information and belief, Defendant Shah was associated with the Cancellieri Chiropractic Enterprise and participated in the conduct of its affairs through a pattern of racketeering activity.  In addition, by abdicating ownership and control over Medical Diagnostic Services and First Columbus Medical and agreeing to allow Chillemi Jr. and

Chillemi Sr. to enter into illicit relationships on behalf of Medical Diagnostic Services and First Columbus Medical, Defendant Shah provided the essential means for Defendant Chillemi Jr. and Chillemi Sr. to forge a relationship and/or agreement with Defendants A. Cancellieri and C. Cancellieri that ensured that the doctors associated with the Cancellieri Chiropractic Enterprise referred patients to Medical Diagnostic Services and/or First Columbus Medical for Functional Evaluation Testing irrespective of medical necessity, in exchange for a kickback and/or other financial compensation, which resulted in fraudulent bill submissions to insurance companies, including but not limited to Plaintiffs.

## THE PATTERN OF RACKETEERING ACTIVITY
## (RACKETEERING ACTS)

433.    The racketeering acts set forth herein were carried out over a five-year period, were related and similar, and were committed as part of Defendants' scheme to defraud insurers.

434.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Cancellieri Chiropractic continues to pursue collection on the fraudulent bills to the present day.

435.    As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Defendants, acting with the knowledge that the use of the mails would follow in the ordinary conduct of the Cancellieri Chiropractic Enterprise's business and/or with use of the mails reasonably foreseen even though not actually intended, caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341.  The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Cancellieri Chiropractic Enterprise based upon materially false and misleading information.

436.    Through the Cancellieri Chiropractic Enterprise, Defendants submitted or caused to be submitted numerous fraudulent claim forms seeking payment for healthcare services that were provided as a result of an unlawful kickback scheme, irrespective of medical necessity.  The bills and supporting documents that were sent by Defendants, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service.  By virtue of those activities, Defendants engaged in a continuous series of predicate acts of mail fraud.

437.    A sample list of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendants in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

438.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

439.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

## **DAMAGES**

440.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company has been injured in its business and property and has been damaged in the aggregate amount presently in excess of $19,000.00, the exact amount to be determined at trial.

441.    Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover from Defendants Chillemi Jr., Chillemi Sr., Shah, Medical Diagnostic Services, First Columbus Medical and one or more of the John Doe Defendants 1 through 20 and ABC Corporations 1 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## EIGHTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS CHILLEMI JR., CHILLEMI SR. SHAH, ABRAMS, PIAZZA, JULEWICZ,  MEDICAL DIAGNOSTIC SERVICES, FIRST COLUMBUS MEDICAL AND JOHN DOES 1 THROUGH 20 AND ABC CORPORATIONS 1 THROUGH 20

### [RICO, pursuant to 18 U.S.C. § 1962(c)]

442.    The allegations of paragraphs 1 through 345 are hereby repeated and realleged as though fully set forth herein.

### THE RICO ENTERPRISE

443.    At all times relevant herein, Drs. Abrams, Piazza & Julewicz was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

444.    From in or about 2015 through the present, Defendants Abrams, Piazza and Julewicz, together with Defendants Chillemi Jr., Chillemi Sr., Shah, Medical Diagnostic Services, First Columbus Medical and one or more of the John Doe Defendants 1 through 20 and ABC Corporations 1 through 20, knowingly conducted and participated in the affairs of the Drs. Abrams, Piazza & Julewicz Enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein, in the representative list of predicate acts set forth in the accompanying Appendix, which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

445.    At all relevant times mentioned herein, Defendants Abrams, Piazza and Julewicz exerted control over, and directed the operations of the Drs. Abrams, Piazza & Julewicz Enterprise.  Defendants Abrams, Piazza and Julewicz utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be

submitted fraudulent bills and supporting documents to Plaintiffs for services that were the result of an unlawful kickback scheme.

446.    At all relevant times mentioned herein, Defendants Chillemi Jr., Chillemi Sr., Shah, Medical Diagnostic Services, First Columbus Medical and/or one or more of the John Doe Defendants 1 through 20 and ABC Corporations 1 through 20 were associated with the Drs. Abrams, Piazza & Julewicz Enterprise and participated in the conduct of its affairs through a pattern of racketeering activity.  In particular, Chillemi Jr. and Chillemi Sr., through Medical Diagnostic Services and First Columbus Medical, forged a relationship with the Drs. Abrams, Piazza & Julewicz Enterprise through which, in exchange for a kickback and/or other financial compensation, Drs. Abrams, Piazza & Julewicz referred patients to Medical Diagnostic Services and/or First Columbus Medical for Functional Evaluation Testing pursuant to a predetermined course of treatment, irrespective of medical necessity.  In addition, Defendants Chillemi Jr. and Chillemi Sr., through Medical Diagnostic Services and First Columbus Medical, provided the essential means for the Enterprise to fraudulently bill insurance companies for services rendered pursuant to an unlawful kickback scheme.

447.    It was both foreseeable and the intended consequence that the Covered Persons that were being referred to Medical Diagnostic Services and/or First Columbus Medical by Drs. Abrams, Piazza & Julewicz would be used as a source to submit bills and induce payment from insurers in general, and Plaintiffs in particular, in connection with fraudulent claims.

448.    On information and belief, Defendant Shah was associated with the Drs. Abrams, Piazza & Julewicz Enterprise and participated in the conduct of its affairs through a pattern of racketeering activity.  In addition, by abdicating ownership and control over Medical Diagnostic Services and First Columbus Medical and agreeing to allow Chillemi Jr. and Chillemi Sr. to enter into illicit relationships on behalf of Medical Diagnostic Services and

First Columbus Medical, Defendant Shah provided the essential means for Defendant Chillemi Jr. and Chillemi Sr. to forge a relationship and/or agreement with Defendants Abrams, Piazza and Julewicz that ensured that the doctors associated with the Drs. Abrams, Piazza & Julewicz Enterprise referred patients to Medical Diagnostic Services and/or First Columbus Medical for Functional Evaluation Testing irrespective of medical necessity, in exchange for a kickback and/or other financial compensation, which resulted in fraudulent bill submissions to insurance companies, including but not limited to Plaintiffs.

## THE PATTERN OF RACKETEERING ACTIVITY
## (RACKETEERING ACTS)

449.    The racketeering acts set forth herein were carried out over a four-year period, were related and similar, and were committed as part of Defendants' scheme to defraud insurers.

450.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Drs. Abrams, Piazza & Julewicz continues to pursue collection on the fraudulent bills to the present day.

451.    As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Defendants, acting with the knowledge that the use of the mails would follow in the ordinary conduct of the Drs. Abrams, Piazza & Julewicz Enterprise's business and/or with use of the mails reasonably foreseen even though not actually intended, caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341.  The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Drs. Abrams, Piazza & Julewicz Enterprise based upon materially false and misleading information.

452.     Through the Drs. Abrams, Piazza & Julewicz Enterprise, Defendants submitted or caused to be submitted numerous fraudulent claim forms seeking payment for healthcare services that were provided as a result of an unlawful kickback scheme, irrespective of medical necessity.  The bills and supporting documents that were sent by Defendants, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service.  By virtue of those activities, Defendants engaged in a continuous series of predicate acts of mail fraud.

453.     A sample list of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendants in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

454.     Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

455.     Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

## DAMAGES

456.     By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate New Jersey Property & Casualty Insurance Company and Allstate Property & Casualty Insurance Company have been injured in their business and property and have been damaged in the aggregate amount presently in excess of $120,000.00, the exact amount to be determined at trial.

457.     Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Chillemi Jr., Chillemi Sr., Shah, Abrams, Piazza, Julewicz, Medical Diagnostic Services, First Columbus Medical and one or more of the John Doe Defendants 1 through 20

and ABC Corporations 1 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## NINTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS CHILLEMI JR., CHILLEMI SR. SHAH, REYFMAN, MEDICAL DIAGNOSTIC SERVICES, FIRST COLUMBUS MEDICAL AND JOHN DOES 1 THROUGH 20 AND ABC CORPORATIONS 1 THROUGH 20

### [RICO, pursuant to 18 U.S.C. § 1962(c)]

458.    The allegations of paragraphs 1 through 345 are hereby repeated and realleged as though fully set forth herein.

## THE RICO ENTERPRISE

459.    At all times relevant herein, LR Medical was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

460.    From in or about 2014 through the present, Defendant Reyfman, together with Defendants Chillemi Jr., Chillemi Sr., Shah, Medical Diagnostic Services, First Columbus Medical and one or more of the John Doe Defendants 1 through 20 and ABC Corporations 1 through 20, knowingly conducted and participated in the affairs of the LR Medical Enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein, in the representative list of predicate acts set forth in the accompanying Appendix, which are incorporated by reference.  Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

461.    At all relevant times mentioned herein, Defendant Reyfman exerted control over, and directed the operations of the LR Medical Enterprise.  Defendants Reyfman utilized that control to conduct the pattern of racketeering activities that consisted of creating,

submitting and/or causing to be submitted fraudulent bills and supporting documents to Plaintiffs for services that were the result of an unlawful kickback scheme.

462.     At all relevant times mentioned herein, Defendants Chillemi Jr., Chillemi Sr., Shah, Medical Diagnostic Services, First Columbus Medical and/or one or more of the John Doe Defendants 1 through 20 and ABC Corporations 1 through 20 were associated with the LR Medical Enterprise and participated in the conduct of its affairs through a pattern of racketeering activity.  In particular, Chillemi Jr. and Chillemi Sr., through Medical Diagnostic Services and First Columbus Medical, forged a relationship with the LR Medical Enterprise through which, in exchange for a kickback and/or other financial compensation, LR Medical referred patients to Medical Diagnostic Services and/or First Columbus Medical for Functional Evaluation Testing pursuant to a predetermined course of treatment, irrespective of medical necessity.  In addition, Defendants Chillemi Jr. and Chillemi Sr., through Medical Diagnostic Services and First Columbus Medical, provided the essential means for the Enterprise to fraudulently bill insurance companies for services rendered pursuant to an unlawful kickback scheme.

463.     It was both foreseeable and the intended consequence that the Covered Persons that were being referred to Medical Diagnostic Services and/or First Columbus Medical by LR Medical would be used as a source to submit bills and induce payment from insurers in general, and Plaintiffs in particular, in connection with fraudulent claims.

464.     On information and belief, Defendant Shah was associated with the LR Medical Enterprise and participated in the conduct of its affairs through a pattern of racketeering activity.  In addition, by abdicating ownership and control over Medical Diagnostic Services and First Columbus Medical and agreeing to allow Chillemi Jr. and Chillemi Sr. to enter into illicit relationships on behalf of Medical Diagnostic Services and First Columbus Medical,

Defendant Shah provided the essential means for Defendant Chillemi Jr. and Chillemi Sr. to forge a relationship and/or agreement with Defendant Reyfman that ensured that the doctors associated with the LR Medical Enterprise referred patients to Medical Diagnostic Services and/or First Columbus Medical for Functional Evaluation Testing irrespective of medical necessity, in exchange for a kickback and/or other financial compensation, which resulted in fraudulent bill submissions to insurance companies, including but not limited to Plaintiffs.

## THE PATTERN OF RACKETEERING ACTIVITY
### (RACKETEERING ACTS)

465.    The racketeering acts set forth herein were carried out over a four-year period, were related and similar, and were committed as part of Defendants' scheme to defraud insurers.

466.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as LR Medical continues to pursue collection on the fraudulent bills to the present day.

467.    As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Defendants, acting with the knowledge that the use of the mails would follow in the ordinary conduct of the LR Medical Enterprise's business and/or with use of the mails reasonably foreseen even though not actually intended, caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341.  The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the LR Medical Enterprise based upon materially false and misleading information.

468.    Through the LR Medical Enterprise, Defendants submitted or caused to be submitted numerous fraudulent claim forms seeking payment for healthcare services that were

provided as a result of an unlawful kickback scheme, irrespective of medical necessity. The bills and supporting documents that were sent by Defendants, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants engaged in a continuous series of predicate acts of mail fraud.

469. A sample list of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendants in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

470. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

471. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

## DAMAGES

472. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company and Allstate Fire and Casualty Insurance Company have been injured in their business and property and have been damaged in the aggregate amount presently in excess of $17,000.00, the exact amount to be determined at trial.

473. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Chillemi Jr., Chillemi Sr., Shah, Reyfman, Medical Diagnostic Services, First Columbus Medical and one or more of the John Doe Defendants 1 through 20 and ABC Corporations 1 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## TENTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS CHILLEMI JR., CHILLEMI SR. SHAH, SPINA, MEDICAL DIAGNOSTIC SERVICES, FIRST COLUMBUS MEDICAL AND JOHN DOES 1 THROUGH 20 AND ABC CORPORATIONS 1 THROUGH 20

### [RICO, pursuant to 18 U.S.C. § 1962(c)]

474. The allegations of paragraphs 1 through 345 are hereby repeated and realleged as though fully set forth herein.

### THE RICO ENTERPRISE

475. At all times relevant herein, Middletown Chiropractic was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

476. From in or about 2017 through the present, Defendant Spina, together with Defendants Chillemi Jr., Chillemi Sr., Shah, Medical Diagnostic Services, First Columbus Medical and one or more of the John Doe Defendants 1 through 20 and ABC Corporations 1 through 20, knowingly conducted and participated in the affairs of the Middletown Chiropractic Enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein, in the representative list of predicate acts set forth in the accompanying Appendix, which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

477. At all relevant times mentioned herein, Defendant Spina exerted control over, and directed the operations of the Middletown Chiropractic Enterprise. Defendant Spina utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted fraudulent bills and supporting documents to Plaintiffs for services that were the result of an unlawful kickback scheme.

478. At all relevant times mentioned herein, Defendants Chillemi Jr., Chillemi Sr., Shah, Medical Diagnostic Services, First Columbus Medical and/or one or more of the John Doe Defendants 1 through 20 and ABC Corporations 1 through 20 were associated with the Middletown Chiropractic Enterprise and participated in the conduct of its affairs through a pattern of racketeering activity. In particular, Chillemi Jr. and Chillemi Sr., through Medical Diagnostic Services and First Columbus Medical, forged a relationship with the Middletown Chiropractic Enterprise through which, in exchange for a kickback and/or other financial compensation, Middletown Chiropractic referred patients to Medical Diagnostic Services and/or First Columbus Medical for Functional Evaluation Testing pursuant to a predetermined course of treatment, irrespective of medical necessity. In addition, Defendants Chillemi Jr. and Chillemi Sr., through Medical Diagnostic Services and First Columbus Medical, provided the essential means for the Enterprise to fraudulently bill insurance companies for services rendered pursuant to an unlawful kickback scheme.

479. It was both foreseeable and the intended consequence that the Covered Persons that were being referred to Medical Diagnostic Services and/or First Columbus Medical by Middletown Chiropractic would be used as a source to submit bills and induce payment from insurers in general, and Plaintiffs in particular, in connection with fraudulent claims.

480. On information and belief, Defendant Shah was associated with the Middletown Chiropractic Enterprise and participated in the conduct of its affairs through a pattern of racketeering activity. In addition, by abdicating ownership and control over Medical Diagnostic Services and First Columbus Medical and agreeing to allow Chillemi Jr. and Chillemi Sr. to enter into illicit relationships on behalf of Medical Diagnostic Services and First Columbus Medical, Defendant Shah provided the essential means for Defendant Chillemi Jr. and Chillemi Sr. to forge a relationship and/or agreement with Defendant Spina that ensured

that the doctors associated with the Middletown Chiropractic Enterprise referred patients to Medical Diagnostic Services and/or First Columbus Medical for Functional Evaluation Testing irrespective of medical necessity, in exchange for a kickback and/or other financial compensation, which resulted in fraudulent bill submissions to insurance companies, including but not limited to Plaintiffs.

**THE PATTERN OF RACKETEERING ACTIVITY
(RACKETEERING ACTS)**

481.    The racketeering acts set forth herein were carried out over a two-year period, were related and similar, and were committed as part of Defendants' scheme to defraud insurers.

482.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Middletown Chiropractic continues to pursue collection on the fraudulent bills to the present day.

483.    As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Defendants, acting with the knowledge that the use of the mails would follow in the ordinary conduct of the Middletown Chiropractic Enterprise's business and/or with use of the mails reasonably foreseen even though not actually intended, caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341.  The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Middletown Chiropractic Enterprise based upon materially false and misleading information.

484.    Through the Middletown Chiropractic Enterprise, Defendants submitted or caused to be submitted fraudulent claim forms seeking payment for healthcare services that were provided as a result of an unlawful kickback scheme, irrespective of medical necessity.

The bills and supporting documents that were sent by Defendants, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants engaged in a continuous series of predicate acts of mail fraud.

485.    A sample list of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendants in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

486.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

487.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

## DAMAGES

488.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company and Allstate Fire & Casualty Insurance Company have been injured in their business and property and have been damaged in the aggregate amount presently in excess of $19,000.00, the exact amount to be determined at trial.

489.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Chillemi Jr., Chillemi Sr., Shah, Spina, Medical Diagnostic Services, First Columbus Medical and one or more of the John Doe Defendants 1 through 20 and ABC Corporations 1 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## ELEVENTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS CHILLEMI JR., CHILLEMI SR. SHAH, MANFREDI, BARNES, MEDICAL DIAGNOSTIC SERVICES, FIRST COLUMBUS MEDICAL AND JOHN DOES 1 THROUGH 20 AND ABC CORPORATIONS 1 THROUGH 20

### [RICO, pursuant to 18 U.S.C. § 1962(c)]

490.    The allegations of paragraphs 1 through 345 are hereby repeated and realleged as though fully set forth herein.

### THE RICO ENTERPRISE

491.    At all times relevant herein, the Mount Vernon Medical Care was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

492.    From in or about 2014 through the present, Defendants Manfredi and Barnes, together with Defendants Chillemi Jr., Chillemi Sr., Shah, Medical Diagnostic Services, First Columbus Medical and one or more of the John Doe Defendants 1 through 20 and ABC Corporations 1 through 20, knowingly conducted and participated in the affairs of the Mount Vernon Medical Care Enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein, in the representative list of predicate acts set forth in the accompanying Appendix, which are incorporated by reference.  Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

493.    At all relevant times mentioned herein, Defendants Manfredi and Barnes exerted control over, and directed the operations of the Mount Vernon Medical Care Enterprise.  Defendants Manfredi and Barnes utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted fraudulent bills and supporting documents to Plaintiffs for services that were the result of an unlawful kickback scheme.

494.     At all relevant times mentioned herein, Defendants Chillemi Jr., Chillemi Sr., Shah, Medical Diagnostic Services, First Columbus Medical and/or one or more of the John Doe Defendants 1 through 20 and ABC Corporations 1 through 20 were associated with the Mount Vernon Medical Care Enterprise and participated in the conduct of its affairs through a pattern of racketeering activity.  In particular, Chillemi Jr. and Chillemi Sr., through Medical Diagnostic Services and First Columbus Medical, forged a relationship with the Mount Vernon Medical Care Enterprise through which, in exchange for a kickback and/or other financial compensation, Mount Vernon Medical Care referred patients to Medical Diagnostic Services and/or First Columbus Medical for Functional Evaluation Testing pursuant to a predetermined course of treatment, irrespective of medical.  In addition, Defendants Chillemi Jr. and Chillemi Sr., through Medical Diagnostic Services and First Columbus Medical, provided the essential means for the Enterprise to fraudulently bill insurance companies for services rendered pursuant to an unlawful kickback scheme.

495.     It was both foreseeable and the intended consequence that the Covered Persons that were being referred to Medical Diagnostic Services and/or First Columbus Medical by Mount Vernon Medical Care would be used as a source to submit bills and induce payment from insurers in general, and Plaintiffs in particular, in connection with fraudulent claims.

496.     On information and belief, Defendant Shah was associated with the Mount Vernon Medical Care Enterprise and participated in the conduct of its affairs through a pattern of racketeering activity.   In addition, by abdicating ownership and control over Medical Diagnostic Services and First Columbus Medical and agreeing to allow Chillemi Jr. and Chillemi Sr. to enter into illicit relationships on behalf of Medical Diagnostic Services and First Columbus Medical, Defendant Shah provided the essential means for Defendant Chillemi Jr. and Chillemi Sr. to forge a relationship and/or agreement with Defendants Manfredi and

Barnes that ensured that the doctors associated with the Mount Vernon Medical Care Enterprise referred patients to Medical Diagnostic Services and/or First Columbus Medical for Functional Evaluation Testing irrespective of medical necessity, in exchange for a kickback and/or other financial compensation, which resulted in fraudulent bill submissions to insurance companies, including but not limited to Plaintiffs.

## THE PATTERN OF RACKETEERING ACTIVITY
## (RACKETEERING ACTS)

497.    The racketeering acts set forth herein were carried out over a five-year period, were related and similar, and were committed as part of Defendants' scheme to defraud insurers.

498.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Mount Vernon Medical Care continues to pursue collection on the fraudulent bills to the present day.

499.    As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Defendants, acting with the knowledge that the use of the mails would follow in the ordinary conduct of the Mount Vernon Medical Care Enterprise's business and/or with use of the mails reasonably foreseen even though not actually intended, caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341.  The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Mount Vernon Medical Care Enterprise based upon materially false and misleading information.

500.    Through the Mount Vernon Medical Care Enterprise, Defendants submitted or caused to be submitted fraudulent claim forms seeking payment for healthcare services that were provided as a result of an unlawful kickback scheme, irrespective of medical necessity.

The bills and supporting documents that were sent by Defendants, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants engaged in a continuous series of predicate acts of mail fraud.

501.   A sample list of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendants in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

502.   Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

503.   Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

## DAMAGES

504.   By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company and Allstate Fire & Casualty Insurance Company have been injured in their business and property and have been damaged in the aggregate amount presently in excess of $64,000.00, the exact amount to be determined at trial.

505.   Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Chillemi Jr., Chillemi Sr., Shah, Manfredi, Barnes, Medical Diagnostic Services, First Columbus Medical and one or more of the John Doe Defendants 1 through 20 and ABC Corporations 1 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## TWELFTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS CHILLEMI JR., CHILLEMI SR. SHAH, COSTA, MEDICAL DIAGNOSTIC SERVICES, FIRST COLUMBUS MEDICAL AND JOHN DOES 1 THROUGH 20 AND ABC CORPORATIONS 1 THROUGH 20

### [RICO, pursuant to 18 U.S.C. § 1962(c)]

506.    The allegations of paragraphs 1 through 345 are hereby repeated and realleged as though fully set forth herein.

### THE RICO ENTERPRISE

507.    The Costa Enterprise (consisting of Chillemi Jr., Chillemi Sr., Shah, Costa, Medical Diagnostic Services, First Columbus Medical,  ABC Corporations 1 through 20 and one or more of the John Doe Defendants 1 through 20) is an Enterprise as that term is defined by 18 U.S.C § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).  The Costa Enterprise engaged in activities, including defrauding insurers that are based outside of New York, that affect interstate commerce.  The members of the Costa Enterprise are and have been associated through time, joined in purpose and organized in a manner that functioned as a continuing unit, with each member fulfilling a specific and necessary role to carry out and facilitate its specific purpose.  Specifically, the Costa Enterprise had a purpose of submitting fraudulent claims for Functional Evaluation Testing to Plaintiffs that were the result of an unlawful kickback scheme, relationships among its associates, as well as longevity sufficient to permit the enterprise's associates to pursue the enterprise's purpose.

508.    From in or about 2014 through the present, Defendant Costa, together with Defendants Chillemi Jr., Chillemi Sr., Shah, Medical Diagnostic Services, First Columbus Medical, one or more of ABC Corporations 1 through 20 and John Doe Defendants 1 through 20, knowingly conducted and participated in the affairs of the Costa Enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein, in

the representative list of predicate acts set forth in the accompanying Appendix, which are incorporated by reference.  Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

509.    At all relevant times mentioned herein, Defendant Costa exerted control over, and directed the operations of the Costa Enterprise.  Defendant Costa utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted fraudulent bills and supporting documents to Plaintiffs for services that were the result of an unlawful kickback scheme.

510.    At all relevant times mentioned herein, Defendants Chillemi Jr., Chillemi Sr., Shah, Medical Diagnostic Services, First Columbus Medical and/or one or more of the ABC Corporations 1 through 20 and John Doe Defendants 1 through 20 were associated with the Costa Enterprise and participated in the conduct of its affairs through a pattern of racketeering activity.  In particular, Chillemi Jr. and Chillemi Sr., through Medical Diagnostic Services and First Columbus Medical, forged a relationship with the Costa Enterprise through which, in exchange for a kickback and/or other financial compensation, the Costa Enterprise referred patients to Medical Diagnostic Services and/or First Columbus Medical for Functional Evaluation Testing pursuant to a predetermined course of treatment, irrespective of medical necessity.  In addition, Defendants Chillemi Jr. and Chillemi Sr., through Medical Diagnostic Services and First Columbus Medical, provided the essential means for the Costa Enterprise to fraudulently bill insurance companies for services rendered pursuant to an unlawful kickback scheme.

511.    It was both foreseeable and the intended consequence that the Covered Persons that were being referred to Medical Diagnostic Services and/or First Columbus Medical by the Costa Enterprise would be used as a source to submit bills and induce payment from insurers in general, and Plaintiffs in particular, in connection with fraudulent claims.

512.    On information and belief, Defendant Shah was associated with the Costa Enterprise and participated in the conduct of its affairs through a pattern of racketeering activity.  In addition, by abdicating ownership and control over Medical Diagnostic Services and First Columbus Medical and agreeing to allow Chillemi Jr. and Chillemi Sr. to enter into illicit relationships on behalf of Medical Diagnostic Services and First Columbus Medical, Defendant Shah provided the essential means for Defendant Chillemi Jr. and Chillemi Sr. to forge a relationship and/or agreement with Defendant Costa that ensured that the doctors associated with the Costa Enterprise referred patients to Medical Diagnostic Services and/or First Columbus Medical for Functional Evaluation Testing irrespective of medical necessity, in exchange for a kickback and/or other financial compensation, which resulted in fraudulent bill submissions to insurance companies, including but not limited to Plaintiffs.

513.    Accordingly, carrying out this scheme would be beyond the capacity of each member of the Costa Enterprise acting individually without the aid of each other.  The Costa Enterprise is distinct from and has an existence beyond the pattern of racketeering activity that is described herein, namely the recruiting, employing, overseeing, facilitating and coordinating the many professional and non-professionals who are responsible for the numerous acts of mail fraud described herein in connection with creating and maintaining the patient files and other records submitted in support of the kickback scheme, recruiting and supervising the personnel to perform the services that resulted in the fraudulent claims, establishing and entering into agreements concerning illegal referral relationship, and maintaining the bookkeeping and accounting manage the receipt an distribution of the insurance proceeds, among other functions.

514.    As a whole, Defendants acted hand-in-hand, with well-defined ongoing roles in the enterprise to achieve the common goal of defrauding Plaintiffs into paying bills for medical services that were not supplied pursuant to an unlawful kickback scheme.

## THE PATTERN OF RACKETEERING ACTIVITY
## (RACKETEERING ACTS)

515.    The racketeering acts set forth herein were carried out over a five-year period, were related and similar, and were committed as part of Defendants' scheme to defraud insurers.

516.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as the Costa Enterprise continues to pursue collection on the fraudulent bills to the present day.

517.    As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Defendants, acting with the knowledge that the use of the mails would follow in the ordinary conduct of the Costa Enterprise's business and/or with use of the mails reasonably foreseen even though not actually intended, caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Costa Enterprise based upon materially false and misleading information.

518.    Through the Costa Enterprise, Defendants submitted or caused to be submitted numerous fraudulent claim forms seeking payment for healthcare services that were provided as a result of an unlawful kickback scheme, irrespective of medical necessity.  The bills and supporting documents that were sent by Defendants, as well as the payments that Plaintiffs

made in response to those bills, were sent through the United States Postal Service.  By virtue of those activities, Defendants engaged in a continuous series of predicate acts of mail fraud.

519.    A sample list of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendants in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

520.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

521.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

## DAMAGES

522.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company, Allstate Fire & Casualty Insurance Company, and Allstate Property & Casualty Insurance Company have been injured in their business and property and have been damaged in the aggregate amount presently in excess of $29,000.00, the exact amount to be determined at trial.

523.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Chillemi Jr., Chillemi Sr., Shah, Costa, Medical Diagnostic Services, First Columbus Medical and one or more of the ABC Corporations 1 through 20 and John Doe Defendants 1 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## THIRTEENTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS CHILLEMI JR., CHILLEMI SR. SHAH, COSTA, MEDICAL DIAGNOSTIC SERVICES, AND ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 1 THROUGH 20 AND ABC CORPORATIONS 1 THROUGH 20

### [RICO, pursuant to 18 U.S.C. § 1962(c)]

524.    The allegations of paragraphs 1 through 345 are hereby repeated and realleged as though fully set forth herein.

### THE RICO ENTERPRISE

525.    At all times relevant herein, Medical Diagnostic Services was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

526.    From in or about 2014 through the present, Defendants Chillemi Jr., Chillemi Sr., Shah, Costa, and one or more of the John Doe Defendants 1 through 20 and ABC Corporations 1 through 20, knowingly conducted and participated in the affairs of the Medical Diagnostic Services Enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein, in the representative list of predicate acts set forth in the accompanying Appendix, which are incorporated by reference.   Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

527.    At all relevant times mentioned herein, Defendants Chillemi Jr., Chillemi Sr., Shah, Costa, and one or more of the John Doe Defendants 1 through 20 and ABC Corporations 1 through 20 exerted control over, and directed the operations of the Medical Diagnostic Services Enterprise.   Defendants utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted fraudulent bills

and supporting documents to Plaintiffs for services that were the result of an unlawful kickback scheme.

528.    At all relevant times mentioned herein, Defendants Chillemi Jr., Chillemi Sr., Shah, Costa, Medical Diagnostic Services, and/or one or more of the John Doe Defendants 1 through 20 and ABC Corporations 1 through 20 were associated with the Medical Diagnostic Services Enterprise and participated in the conduct of its affairs through a pattern of racketeering activity.  In particular, Chillemi Jr. and Chillemi Sr., through Medical Diagnostic Services, forged a relationship with Costa through which, in exchange for a kickback and/or other financial compensation, Costa referred patients to Medical Diagnostic Services for Functional Evaluation Testing pursuant to a predetermined course of treatment, irrespective of medical necessity.  In addition, Defendants Chillemi Jr. and Chillemi Sr., through Medical Diagnostic Services, provided the essential means for the Medical Diagnostic Services Enterprise and Costa to fraudulently bill insurance companies for services rendered pursuant to an unlawful kickback scheme.

529.    It was both foreseeable and the intended consequence that the Covered Persons that were being referred to the Medical Diagnostic Services Enterprise by Costa  would be used as a source to submit bills and induce payment from insurers in general, and Plaintiffs in particular, in connection with fraudulent claims.

530.    On information and belief, Defendant Shah was associated with the Medical Diagnostic Services Enterprise and participated in the conduct of its affairs through a pattern of racketeering activity.   In addition, by abdicating ownership and control over Medical Diagnostic Services and agreeing to allow Chillemi Jr. and Chillemi Sr. to enter into illicit relationships on behalf of Medical Diagnostic Services, Defendant Shah provided the essential means for Defendant Chillemi Jr. and Chillemi Sr. to forge a relationship and/or agreement

with Defendant Costa that ensured that the doctors associated with Costa referred patients to Medical Diagnostic Services Enterprise for Functional Evaluation Testing irrespective of medical necessity, in exchange for a kickback and/or other financial compensation, which resulted in fraudulent bill submissions to insurance companies, including but not limited to Plaintiffs.

## THE PATTERN OF RACKETEERING ACTIVITY
### (RACKETEERING ACTS)

531.    The racketeering acts set forth herein were carried out over a five-year period, were related and similar, and were committed as part of Defendants' scheme to defraud insurers.

532.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Medical Diagnostic Services continues to pursue collection on the fraudulent bills to the present day.

533.    As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Defendants, acting with the knowledge that the use of the mails would follow in the ordinary conduct of the Medical Diagnostic Services Enterprise's business and/or with use of the mails reasonably foreseen even though not actually intended, caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341.  The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Medical Diagnostic Services Enterprise based upon materially false and misleading information.

534.    Through the Medical Diagnostic Services Enterprise, Defendants submitted or caused to be submitted numerous fraudulent claim forms seeking payment for healthcare services that were provided as a result of an unlawful kickback scheme, irrespective of medical

necessity.  The bills and supporting documents that were sent by Defendants, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service.  By virtue of those activities, Defendants engaged in a continuous series of predicate acts of mail fraud.

535.    A sample list of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendants in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

536.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

537.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

## DAMAGES

538.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company, Allstate Fire & Casualty Insurance Company, Allstate New Jersey Insurance Company and Allstate Property & Casualty Insurance Company have been injured in their business and property and have been damaged in the aggregate amount presently in excess of $26,000.00, the exact amount to be determined at trial.

539.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Chillemi Jr., Chillemi Sr., Shah, Costa, Medical Diagnostic Services, and one or more of the John Doe Defendants 1 through 20 and ABC Corporations 1 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

**FOURTEENTH CLAIM FOR RELIEF**

**AGAINST DEFENDANTS CHILLEMI JR., CHILLEMI SR. SHAH, COSTA, FIRST COLUMBUS MEDICAL, AND ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 1 THROUGH 20 AND ABC CORPORATIONS 1 THROUGH 20**

**[RICO, pursuant to 18 U.S.C. § 1962(c)]**

540.    The allegations of paragraphs 1 through 345 are hereby repeated and realleged as though fully set forth herein.

**THE RICO ENTERPRISE**

541.    At all times relevant herein, First Columbus Medical was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

542.    From in or about 2014 through the present, Defendants Chillemi Jr., Chillemi Sr., Shah, Costa, and one or more of the John Doe Defendants 1 through 20 and ABC Corporations 1 through 20, knowingly conducted and participated in the affairs of the First Columbus Medical Enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein, in the representative list of predicate acts set forth in the accompanying Appendix, which are incorporated by reference.  Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

543.    At all relevant times mentioned herein, Defendants Chillemi Jr., Chillemi Sr., Shah, Costa, and one or more of the John Doe Defendants 1 through 20 and ABC Corporations 1 through 20 exerted control over, and directed the operations of the First Columbus Medical Enterprise.  Defendants utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted fraudulent bills and supporting documents to Plaintiffs for services that were the result of an unlawful kickback scheme.

140

544.    At all relevant times mentioned herein, Defendants Chillemi Jr., Chillemi Sr., Shah, Costa, First Columbus Medical, and/or one or more of the John Doe Defendants 1 through 20 and ABC Corporations 1 through 20 were associated with the First Columbus Medical Enterprise and participated in the conduct of its affairs through a pattern of racketeering activity.   In particular, Chillemi Jr. and Chillemi Sr., through First Columbus Medical, forged a relationship with Costa through which, in exchange for a kickback and/or other financial compensation, Costa referred patients to First Columbus Medical for Functional Evaluation Testing pursuant to a predetermined course of treatment, irrespective of medical necessity.   In addition, Defendants Chillemi Jr. and Chillemi Sr., through First Columbus Medical, provided the essential means for the First Columbus Medical Enterprise and Costa to fraudulently bill insurance companies for services rendered pursuant to an unlawful kickback scheme.

545.    It was both foreseeable and the intended consequence that the Covered Persons that were being referred to the First Columbus Medical Enterprise by Costa would be used as a source to submit bills and induce payment from insurers in general, and Plaintiffs in particular, in connection with fraudulent claims.

546.    On information and belief, Defendant Shah was associated with the First Columbus Medical Enterprise and participated in the conduct of its affairs through a pattern of racketeering activity.   In addition, by abdicating ownership and control over First Columbus Medical and agreeing to allow Chillemi Jr. and Chillemi Sr. to enter into illicit relationships on behalf of First Columbus Medical, Defendant Shah provided the essential means for Defendant Chillemi Jr. and Chillemi Sr. to forge a relationship and/or agreement with Defendant Costa that ensured that the doctors associated with Costa referred patients to the First Columbus Medical Enterprise for Functional Evaluation Testing irrespective of medical

necessity, in exchange for a kickback and/or other financial compensation, which resulted in fraudulent bill submissions to insurance companies, including but not limited to Plaintiffs.

## THE PATTERN OF RACKETEERING ACTIVITY
### (RACKETEERING ACTS)

547.    The racketeering acts set forth herein were carried out over a five-year period, were related and similar, and were committed as part of Defendants' scheme to defraud insurers.

548.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as First Columbus Medical continues to pursue collection on the fraudulent bills to the present day.

549.    As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Defendants, acting with the knowledge that the use of the mails would follow in the ordinary conduct of the First Columbus Medical Enterprise's business and/or with use of the mails reasonably foreseen even though not actually intended, caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341.  The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the First Columbus Medical Enterprise based upon materially false and misleading information.

550.    Through the First Columbus Medical Enterprise, Defendants submitted or caused to be submitted numerous fraudulent claim forms seeking payment for healthcare services that were provided as a result of an unlawful kickback scheme, irrespective of medical necessity.  The bills and supporting documents that were sent by Defendants, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States

Postal Service.  By virtue of those activities, Defendants engaged in a continuous series of predicate acts of mail fraud.

551.    A sample list of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendants in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

552.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

553.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

## DAMAGES

554.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Fire & Casualty Insurance Company have been injured in their business and property and have been damaged in the aggregate amount presently in excess of $2,500.00, the exact amount to be determined at trial.

555.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Chillemi Jr., Chillemi Sr., Shah, Costa, First Columbus Medical, and one or more of the John Doe Defendants 1 through 20 and ABC Corporations 1 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## FIFTEENTH CLAIM FOR RELIEF

## AGAINST CHILLEMI JR., CHILLEMI SR., SHAH, MEDICAL DIAGNOSTIC SERVICES, FIRST COLUMBUS MEDICAL, JOHN DOE DEFENDANTS 1 THROUGH 20 AND ABC CORPORATIONS 1 THROUGH 20

### (Common Law Fraud)
### (Fraudulent Incorporation of the Defendants Medical Diagnostic Services and First Columbus Medical)

556. The allegations of paragraphs 1 through 345 are hereby repeated and realleged as though fully set forth herein.

557. Defendants Chillemi Jr., Chillemi Sr., Shah, Medical Diagnostic Services, First Columbus Medical, John Doe Defendants 1 through 20 and ABC Corporations 1 through 20, intentionally, knowingly, fraudulently, and with an intent to deceive Plaintiffs, made various misleading statements intended to hold out the Medical Diagnostic Services and/or First Columbus Medical as legal professional service corporations in compliance with core licensing requirements when, in fact, they were not, thereby inducing Plaintiffs to make payments that Defendants were not entitled to because of their fraudulent incorporation and/or illegal corporate structure that rendered the Medical Diagnostic Services and/or First Columbus Medical not licensed in accordance with applicable New York State Law. As part of the fraudulent scheme implemented by Defendants, Medical Diagnostic Services and/or First Columbus Medical, with the assistance and knowledge of Defendants Chillemi Jr., Chillemi Sr., Shah, John Doe Defendants 1 through 20 and ABC Corporations 1 through 20, made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs for payment.

558. Defendants Chillemi Jr., Chillemi Sr., Shah, Medical Diagnostic Services, First Columbus Medical, John Doe Defendants 1 through 20 and ABC Corporations 1 through 20 intentionally, knowingly, fraudulently, and with an intent to deceive Plaintiffs, concealed the

144

fact that Defendant Chillemi Jr., Chillemi Sr., and/or one or more of the John Doe Defendants, not Defendant Shah, were the true owners of Medical Diagnostic Services and/or First Columbus Medical, by making false representations of material facts, including, but not limited to, the following fraudulent misrepresentations:

a) Each and every bill and report set forth Medical Diagnostic Services and/or First Columbus Medical as professional corporations owned by Defendant Shah, when, in fact, they were not. The submission of bills and reports containing the signatures of Defendant Shah was a fraudulent misrepresentation, intended to deceive and mislead Allstate into believing that Medical Diagnostic Services and/or First Columbus Medical were legal professional corporations when, in fact, they were not;

b) False and misleading statements and information regarding who owned, controlled and operated Medical Diagnostic Services and/or First Columbus Medical;

c) False and misleading statements and information intended to mislead Allstate into believing that Medical Diagnostic Services and/or First Columbus Medical were being operated by Defendant Shah, whose name was listed on the certificates of incorporation when, in fact, they were not;

d) False and misleading statements and information intended to mislead Plaintiffs that Medical Diagnostic Services and/or First Columbus Medical were licensed in accordance with applicable New York State Law, when, in fact, they were not;

e) False and misleading statements that Medical Diagnostic Services and/or First Columbus Medical were properly licensed and, therefore, eligible to recover No-fault benefits pursuant to Insurance Law 5102(a)(1) and 11 NYCRR 65-3.16(a)(12) when, in fact, they were not;

f) False and misleading statements intended to circumvent Article 15 of the New York State Business Corporation Law, which prohibits ownership by individuals not licensed to practice the profession for which a professional corporation was incorporated;

g) False and misleading statements and information, as contained in the signed medical reports and NYS N-F3s, that were intended to deceive and conceal the fact that Medical Diagnostic Services and/or First Columbus Medical were engaged in the illegal

corporate practice of medicine in contravention of New York State law, and that the Defendant Controllers, and/or others unknown to Plaintiffs, were billing for physician services through fraudulently incorporated PCs;

h)  False and misleading statements and information set forth in NYS N-F3 forms and/or medical reports indicating that Defendant Shah was actively involved in the operations of the Fraudulently Incorporated PCs when, in fact, he was not; and

i)  False and misleading statements contained in each separate bill, medical record and report submitted by Defendants to Plaintiffs regarding the relationship between Medical Diagnostic Services and/or First Columbus Medical and the Controllers; Medical Diagnostic Services and/or First Columbus Medical and Defendant Shah; and Defendant Shah and the Controllers, which concealed or failed to disclose the actual relationship between said parties and the existence of a fraudulent corporate structure.

559.  Defendants knew the foregoing material misrepresentations to be false when made, particularly that Medical Diagnostic Services and/or First Columbus Medical were properly licensed in accordance with New York State Law and eligible to recover No-fault benefits, and made these false representations with the intention and purpose of inducing Allstate to rely thereon.

560.  Allstate did in fact reasonably and justifiably rely on the foregoing material misrepresentations and/or omissions and upon a state of facts that Allstate was led to believe existed as a result of Defendants' acts of fraud and deception, and which led to Allstate making substantial payments to Medical Diagnostic Services and/or First Columbus Medical.

561.  Had Allstate known of the illegal corporate structure, which were contrary to all indications reflected in the medical reports, treatment verifications, and bills for medical services and other documents they submitted in support of payment, Plaintiffs would not have paid Medical Diagnostic Services and/or First Columbus Medical's claims for No-fault insurance benefits submitted in connection therewith.

562.     Plaintiffs were thus injured as a proximate result and are entitled to recover and recoup the payments they made to Medical Diagnostic Services and/or First Columbus Medical, which were fraudulently incorporated in violation of New York State Law, in accordance with the Court of Appeals' decision in *State Farm Mut. Auto. Ins. Co. v. Mallela*, 4 N.Y.3d 313, 827 N.E.2d 758, 794 N.Y.S.2d 700 (2005).

563.     Furthermore, Defendants' far reaching pattern of fraudulent conduct evinces a high degree of moral turpitude and wanton dishonesty which, as alleged above, has harmed, and will continue to harm, the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

564.     By reason of the foregoing, Plaintiffs have sustained compensatory damages and been injured in their business and property in an amount as yet to be determines, but believed to be in excess of $187,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

### SIXTEENTH CLAIM FOR RELIEF

### AGAINST MANFREDI, BARNES, MOUNT VERNON MEDICAL CARE, JOHN DOE DEFENDANTS 1 THROUGH 20 AND ABC CORPORATIONS 1 THROUGH 20

**(Common Law Fraud)**
**(Fraudulent Incorporation of the Defendant Mount Vernon Medical Care)**

565.     The allegations of paragraphs 1 through 345 are hereby repeated and realleged as though fully set forth herein.

566.     Defendants Manfredi, Barnes, Mount Vernon Medical Care, John Doe Defendants 1 through 20 and ABC Corporations 1 through 20, intentionally, knowingly, fraudulently, and with an intent to deceive Plaintiffs, made various misleading statements intended to hold out Mount Vernon Medical Care as a legal professional service corporation in compliance with core licensing requirements when, in fact, it was not, thereby inducing

Plaintiffs to make payments that Mount Vernon Medical Care was not entitled to because of its fraudulent incorporation and/or illegal corporate structure that rendered Mount Vernon Medical Care not licensed in accordance with applicable New York State Law.  As part of the fraudulent scheme implemented by Defendants, Mount Vernon Medical Care, with the assistance and knowledge of Defendants Manfredi, Barnes, John Doe Defendants 1 through 20 and ABC Corporations 1 through 20, made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs for payment.

567.   Defendants Manfredi, Barnes, Mount Vernon Medical Care, John Doe Defendants 1 through 20 and ABC Corporations 1 through 20 intentionally, knowingly, fraudulently, and with an intent to deceive Plaintiffs, concealed the fact that Defendant Manfredi and/or one or more of the John Doe Defendants, not Defendant Barnes, was the true owner of Mount Vernon Medical Care, by making false representations of material facts, including, but not limited to, the following fraudulent misrepresentations:

a) Each and every bill and report set forth Mount Vernon Medical Care  as a professional corporations owned by Defendant Barnes, when, in fact, it was not.  The submission of bills and reports containing the signature of Defendant Barnes was a fraudulent misrepresentation, intended to deceive and mislead Allstate into believing that Mount Vernon Medical Care was a legal professional corporations when, in fact, it was not;

b) False and misleading statements and information regarding who owned, controlled and operated Mount Vernon Medical Care;

c) False and misleading statements and information intended to mislead Allstate into believing that Mount Vernon Medical Care was being operated by Defendant Barnes, whose name was listed on the certificate of incorporation when, in fact, it was not;

d) False and misleading statements and information intended to mislead Plaintiffs that Mount Vernon Medical Care was licensed in accordance with applicable New York State Law, when, in fact, it was not;

148

e) False and misleading statements that Mount Vernon Medical Care was properly licensed and, therefore, eligible to recover No-fault benefits pursuant to Insurance Law 5102(a)(1) and 11 NYCRR 65-3.16(a)(12) when, in fact, it was not;

f) False and misleading statements intended to circumvent Article 15 of the New York State Business Corporation Law, which prohibits ownership by individuals not licensed to practice the profession for which a professional corporation was incorporated;

g) False and misleading statements and information, as contained in the signed medical reports and NYS N-F3s, that were intended to deceive and conceal the fact that Mount Vernon Medical Care was engaged in the illegal corporate practice of medicine in contravention of New York State law, and that Manfredi, and/or others unknown to Plaintiffs, were billing for physician services through a fraudulently incorporated PC;

h) False and misleading statements and information set forth in NYS N-F3 forms and/or medical reports indicating that Defendant Barnes was actively involved in the operation of Mount Vernon Medical Care when, in fact, it was not; and

i) False and misleading statements contained in each separate bill, medical record and report submitted by Defendants to Plaintiffs regarding the relationship between Mount Vernon Medical Care and Defendant Barnes; Defendant Barnes and Manfredi; and Mount Vernon Medical Care and Manfredi, which concealed or failed to disclose the actual relationship between said parties and the existence of a fraudulent corporate structure.

568.    Defendants knew the foregoing material misrepresentations to be false when made, particularly that Mount Vernon Medical Care was properly licensed in accordance with New York State Law and eligible to recover No-fault benefits, and made these false representations with the intention and purpose of inducing Allstate to rely thereon.

569.    Allstate did in fact reasonably and justifiably rely on the foregoing material misrepresentations and/or omissions and upon a state of facts that Allstate was led to believe existed as a result of Defendants' acts of fraud and deception, and which led to Allstate making substantial payments to Mount Vernon Medical Care.

570.     Had Allstate known of the illegal corporate structure, which were contrary to all indications reflected in the medical reports, treatment verifications, and bills for medical services and other documents they submitted in support of payment, Plaintiffs would not have paid Mount Vernon Medical Care's claims for No-fault insurance benefits submitted in connection therewith.

571.     Plaintiffs were thus injured as a proximate result and are entitled to recover and recoup the payments they made to Mount Vernon Medical Care, which was fraudulently incorporated in violation of New York State Law, in accordance with the Court of Appeals' decision in *State Farm Mut. Auto. Ins. Co. v. Mallela*, 4 N.Y.3d 313, 827 N.E.2d 758, 794 N.Y.S.2d 700 (2005).

572.     Furthermore, Defendants' far reaching pattern of fraudulent conduct evinces a high degree of moral turpitude and wanton dishonesty which, as alleged above, has harmed, and will continue to harm, the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

573.     By reason of the foregoing, Plaintiffs have sustained compensatory damages and been injured in their business and property in an amount as yet to be determines, but believed to be in excess of $99,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## SEVENTEENTH CLAIM FOR RELIEF

## AGAINST ALL DEFENDANTS

### (Common Law Fraud)
### (Kickback Scheme)

574.     The allegations of paragraphs 1 through 345 are hereby repeated and realleged as though fully set forth herein.

575.    Defendants Chillemi Jr., Chillemi Sr., Shah, Abrams, Avgerinos, Barnes, A. Cancellieri, C. Cancellieri, Costa, Julewicz, Manfredi, Reyfman, Rosen, Piazza, Spina, Medical Diagnostic Services, First Columbus Medical, Avgerinos Chiropractic, Bedford-Flatbush Chiropractic, Cancellieri Chiropractic, Drs. Abrams, Piazza & Julewicz, LR Medical, Mount Vernon Medical Care, Middletown Chiropractic, John Doe Defendants 1 through 20 and ABC Corporations 1 through 20, intentionally, knowingly, fraudulently, and with an intent to deceive Plaintiffs, made numerous false and misleading statements of material fact as to the necessity of Functional Evaluation Testing services purportedly rendered, thereby inducing Plaintiffs to make payments to Medical Diagnostic Services and First Columbus Medical that the Defendants were not entitled to because of their fraudulent nature.  As part of the fraudulent scheme implemented by Defendants Chillemi Sr. and/or Chillemi Jr., and one or more of the John Doe Defendants, the Medical Diagnostic Services and First Columbus Medical made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs for payment.

576.    Defendants Chillemi Jr., Chillemi Sr., Shah, Abrams, Avgerinos, Barnes, A. Cancellieri, C. Cancellieri, Costa, Julewicz, Manfredi, Reyfman, Rosen, Piazza, Spina, Medical Diagnostic Services, First Columbus Medical, Avgerinos Chiropractic, Bedford-Flatbush Chiropractic, Cancellieri Chiropractic, Drs. Abrams, Piazza & Julewicz, LR Medical, Mount Vernon Medical Care, Middletown Chiropractic, John Doe Defendants 1 through 20 and ABC Corporations 1 through 20 intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Plaintiffs, concealed the fact that the bills and referrals submitted to Plaintiffs in support of their claims for reimbursement of No-fault benefits for Functional Evaluation Testing and related services were misrepresented.

577.    Defendants  Chillemi Jr., Chillemi Sr., Shah, Abrams, Avgerinos, Barnes, A. Cancellieri, C. Cancellieri, Costa, Julewicz, Manfredi, Reyfman, Rosen, Piazza, Spina, Medical Diagnostic Services, First Columbus Medical, Avgerinos Chiropractic, Bedford-Flatbush Chiropractic, Cancellieri Chiropractic, Drs. Abrams, Piazza & Julewicz, LR Medical, Mount Vernon Medical Care, Middletown Chiropractic, John Doe Defendants 1 through 20 and ABC Corporations 1 through 20 intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Plaintiffs, concealed the fact that, in many instances, the billed for Functional Evaluation Testing and related services were medically unnecessary.

578.    Defendants Chillemi Jr., Chillemi Sr., Shah, Abrams, Avgerinos, Barnes, A. Cancellieri, C. Cancellieri, Costa, Julewicz, Manfredi, Reyfman, Rosen, Piazza, Spina, Medical Diagnostic Services, First Columbus Medical, Avgerinos Chiropractic, Bedford-Flatbush Chiropractic, Cancellieri Chiropractic, Drs. Abrams, Piazza & Julewicz, LR Medical, Mount Vernon Medical Care, Middletown Chiropractic, John Doe Defendants 1 through 20 and ABC Corporations 1 through 20 intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Plaintiffs, concealed the fact that the services were provided pursuant to a protocol that was intended to maximize Defendants' profit and reimbursement of payments from the Plaintiffs, as opposed to medical necessity.

579.    On information and belief, Defendants Chillemi Jr., Chillemi Sr., Shah, Abrams, Avgerinos, Barnes, A. Cancellieri, C. Cancellieri, Costa, Julewicz, Manfredi, Reyfman, Rosen, Piazza, Spina, Medical Diagnostic Services, First Columbus Medical, Avgerinos Chiropractic, Bedford-Flatbush Chiropractic, Cancellieri Chiropractic, Drs. Abrams, Piazza & Julewicz, LR Medical, Mount Vernon Medical Care, Middletown Chiropractic, John Doe Defendants 1 through 20 and ABC Corporations 1 through 20

intentionally, knowingly, fraudulently, and with the intent to deceive, submitted patient medical records, reports, treatment verifications and bills for medical treatment which contained false representations of material facts, including but not limited to the following fraudulent material misrepresentations:

a)   False and misleading statements and information designed to conceal the fact that the billed for Functional Evaluation Testing was not rendered as billed and/or misrepresented;

b)   False and misleading statements and information designed to conceal the fact that Referring Providers made referrals for services to Medical Diagnostic Services and First Columbus Medical in exchange for a kickback and/or other financial compensation;

c)   False and misleading statements and information designed to conceal that Medical Diagnostic Services, First Columbus Medical and the Defendant Referring Providers had a "financial relationship" based on which the Referring Providers made referrals to Medical Diagnostic Services and First Columbus Medical for covered persons allegedly treated by such practitioners;

d)   False and misleading statements and information designed to conceal that Defendant Referring Providers submitted claims to Plaintiffs for Functional Evaluation Testing rendered pursuant to a prohibited referral; and

e)   False and misleading statements designed to conceal that services provided by the Referring Providers, based on the results of the Functional Evaluation Testing, were medically necessary.

580.   On information and belief, in numerous instances, the records, reports and bills submitted by Defendants to Plaintiffs in connection with Functional Evaluation Testing set forth fictional representations intended to justify the medical necessity of the services provided.

581.   The foregoing was intended to deceive and mislead the Plaintiffs into believing that the Medical Diagnostic Services, First Columbus Medical and the Referring Providers, were providing medically necessary services when, in fact, they were not.

582.   Defendants knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

583.   Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations, which Plaintiffs was led to believe existed as a result of Defendants' acts of fraud and deception.

584.   Had Plaintiffs known of the fraudulent content of, and misrepresentations in, the records, reports, treatment verifications, and bills for Functional Evaluation Testing, it would not have paid the Defendants' claims for No-fault insurance benefits submitted in connection therewith.

585.   By reason of the foregoing, Plaintiffs have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $480,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

**EIGHTEENTH CLAIM FOR RELIEF**

**<u>AGAINST ALL DEFENDANTS</u>**

**(Common Law Fraud)**

586.   The allegations of paragraphs 1 through 345 are hereby repeated and realleged as though fully set forth herein.

587.   Defendants Chillemi Jr., Chillemi Sr., Shah, Abrams, Avgerinos, Barnes, A. Cancellieri, C. Cancellieri, Costa, Julewicz, Manfredi, Reyfman, Rosen, Piazza, Spina, Medical Diagnostic Services, First Columbus Medical, Avgerinos Chiropractic, Bedford-Flatbush Chiropractic, Cancellieri Chiropractic, Drs. Abrams, Piazza & Julewicz, LR Medical, Mount Vernon Medical Care, Middletown Chiropractic, John Doe Defendants 1 through 20

154

and ABC Corporations 1 through 20 intentionally, knowingly, fraudulently, and with an intent to deceive Plaintiffs, made numerous false and misleading statements of material fact as to the necessity of the medical services purportedly rendered and that the medical services were provided when in fact they were not provided as billed and exaggerated the level of service, if any, purportedly provided, thereby inducing Plaintiffs to make payments to Defendants that Defendants were not entitled to because of their fraudulent nature.  As part of the fraudulent scheme, Chillemi Jr., Chillemi Sr., Shah, Abrams, Avgerinos, Barnes, A. Cancellieri, C. Cancellieri, Costa, Julewicz, Manfredi, Reyfman, Rosen, Piazza, Spina, Medical Diagnostic Services, First Columbus Medical, Avgerinos Chiropractic, Bedford-Flatbush Chiropractic, Cancellieri Chiropractic, Drs. Abrams, Piazza & Julewicz, LR Medical, Mount Vernon Medical Care, Middletown Chiropractic, John Doe Defendants 1 through 20 and ABC Corporations 1 through 20 made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs for payment.

588.    Defendants Chillemi Jr., Chillemi Sr., Shah, Abrams, Avgerinos, Barnes, A. Cancellieri, C. Cancellieri, Costa, Julewicz, Manfredi, Reyfman, Rosen, Piazza, Spina, Medical Diagnostic Services, First Columbus Medical, Avgerinos Chiropractic, Bedford-Flatbush Chiropractic, Cancellieri Chiropractic, Drs. Abrams, Piazza & Julewicz, LR Medical, Mount Vernon Medical Care, Middletown Chiropractic, John Doe Defendants 1 through 20 and ABC Corporations 1 through 20 intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Plaintiffs, concealed the fact that the bills submitted to Plaintiffs for reimbursement of No-fault benefits for services relating to the performance of Functional Evaluation Testing were materially misrepresented.

589.    Defendants Chillemi Jr., Chillemi Sr., Shah, Abrams, Avgerinos, Barnes, A. Cancellieri, C. Cancellieri, Costa, Julewicz, Manfredi, Reyfman, Rosen, Piazza, Spina,

Medical Diagnostic Services, First Columbus Medical, Avgerinos Chiropractic, Bedford-Flatbush Chiropractic, Cancellieri Chiropractic, Drs. Abrams, Piazza & Julewicz, LR Medical, Mount Vernon Medical Care, Middletown Chiropractic, John Doe Defendants 1 through 20 and ABC Corporations 1 through 20 intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Plaintiffs, concealed the fact that, in many instances, the services relating to Functional Evaluation Testing were provided pursuant to a pre-determined protocol that was intended to maximize Defendants' profit and reimbursement of payments from the Plaintiffs, as opposed to medical necessity.

590.    On information and belief, Defendants intentionally, knowingly, fraudulently, and with the intent to deceive, submitted patient medical records, reports, treatment verifications and bills for medical treatment which contained false representations of material facts, including but not limited to the following fraudulent material misrepresentations:

a)  False and misleading statements and information designed to conceal the fact that the billed for Functional Evaluation Testing was not rendered and/or not rendered as billed, fabricated,  misrepresented and/or of no diagnostic value;

b)  False and misleading statements and information as to the results of the Functional Evaluation Testing as well as the diagnosis, for said injury;

c)  False and misleading test results, reports and bill that sought reimbursement for Functional Evaluation Testing when in fact, in many instances, such services were not rendered;

d)  False and misleading statements designed to conceal the fact that the Functional Evaluation Testing was not provided as billed;

e)  False and misleading statements and information designed to conceal the fact that the Functional Evaluation Testing was not provided by a physician of other qualified healthcare professional;

f)  False and misleading statements contained in the bills for Functional Evaluation Testing submitted to Plaintiffs that Medical Diagnostic Services and First Columbus Medical performed Functional Evaluation Testing on Covered Persons reimbursable pursuant to CPT Codes 95831, 95832, 95851, 95852 and 97750, when in fact they did not;

g) False and misleading statements contained in the medical reports that Medical Diagnostic Services and First Columbus Medical submitted to Plaintiffs regarding the muscle testing data and findings;

h) False and misleading statements contained in the medical reports that Medical Diagnostic Services and First Columbus Medical submitted to Plaintiffs regarding motor deficit impairments that were fabricated;

i) False and misleading statements contained in the medical reports that Medical Diagnostic Services and First Columbus Medical submitted to Plaintiffs regarding misrepresented diagnoses of nerve impairment;

j) False and misleading statements inflating the billing for Functional Evaluation Testing purportedly performed no Covered Persons in the bills submitted to Plaintiffs;

k) False and misleading statements contained in the medical reports and bills submitted Plaintiffs that the services were preformed, to the extent they were performed at all, by employees of First Columbus, rather than by independent contractors;

l) False and misleading statements designed to conceal that services provided by the Referring Providers, based on the results of the Functional Evaluation Testing, were medically necessary; and

m) Other misrepresentations, including but not limited to those contained in paragraphs a through l above.

591. On information and belief, in numerous instances, the medical records, reports and bills submitted by Defendants to Plaintiffs in connection with Functional Evaluation Testing set forth fictional representations of services provided. The false representations contained therein not only were intended to defraud Plaintiffs but constitute a grave and serious danger to the Covered Persons and the consumer public, particularly if the sham and fictional diagnoses and test results were to be relied upon by any subsequent healthcare provider.

592. The foregoing was intended to deceive and mislead the Plaintiffs into believing that Medical Diagnostic, First Columbus Medical and Defendant Referring Providers were providing medically valid services when, in fact, they were not.

593. Defendants knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

594. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations, which Plaintiffs were led to believe existed as a result of Defendants' acts of fraud and deception.

595. Had Plaintiffs known of the fraudulent content of, and misrepresentations in, the medical records, reports, treatment verifications, and bills for medical treatment, they would not have paid Medical Diagnostic Services and First Columbus Medical's claims for No-fault insurance benefits submitted in connection therewith.

596. Furthermore, Defendants' far reaching pattern of fraudulent conduct evinces a high degree of moral turpitude and wanton dishonesty which, as alleged above, has harmed, and will continue to harm, the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

597. By reason of the foregoing, Plaintiffs have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $299,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## NINETEENTH CLAIM FOR RELIEF
## AGAINST ALL DEFENDANTS

### (Unjust Enrichment/Restitution)

598. The allegations of paragraphs 1 through 345 are hereby repeated and realleged as though fully set forth herein.

599.    By reason of their wrongdoing, Defendants have been unjustly enriched, in that they have, directly and/or indirectly, received substantial moneys from Plaintiffs that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

600.    Plaintiffs are entitled to recover restitution for the amount that Defendants were unjustly enriched as a result of payments made by Plaintiffs to said Defendants.

601.    By reason of the foregoing, Plaintiffs have sustained compensatory damages and have been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $600,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

### TWENTIETH CLAIM FOR RELIEF

### AGAINST DEFENDANTS CHILLEMI JR., CHILLEMI SR., SHAH, MEDICAL DIAGNOSTIC SERVICES AND FIRST COLUMBUS MEDICAL, JOHN DOES 1 THROUGH 20 AND ABC CORPORATIONS 1 THROUGH 20

**(Unjust Enrichment)**
**(Services by Independent Contractors)**

602.    The allegations of paragraphs 1 through 345 are hereby repeated and realleged as though fully set forth herein.

603.    In contravention of 11 NYCRR 65-3.11, the Controllers, through First Columbus Medical, submitted bills to Plaintiffs seeking reimbursement for services purportedly provided by independent contractors.

604.    Pursuant to 11 NYCRR 65-3.11, a provider's entitlement to seek recovery of No-fault benefits directly from the insurer is contingent upon a direct assignment of such benefits to the "providers of services."

605.   A provider cannot be reimbursed for services rendered by an independent contractor, since it is not the "provider of services" in possession of a *direct* assignment as required under 11 NYCRR § 65-3.11(a).

606.   By reason of their wrongdoing, Defendants have been unjustly enriched, in that they have, directly and/or indirectly, received substantial moneys from Plaintiffs for services purportedly rendered by independent contractors, to which they were never entitled, and that, in equity and good conscience, they should not be permitted to keep.

607.   By reason of the foregoing, Plaintiffs have sustained compensatory damages and have been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $94,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## TWENTY-FIRST CLAIM FOR RELIEF

### AGAINST CHILLEMI JR., CHILLEMI SR., MANFREDI, SHAH, BARNES, MEDICAL DIAGNOSTIC SERVICES, FIRST COLUMBUS MEDICAL, MOUNT VERNON MEDICAL CARE, JOHN DOE DEFENDANTS 1 THROUGH 20 AND ABC CORPORATIONS 1 THROUGH 20

**(Declaratory Judgment)**
**(Corporate Practice Of Medicine**
**New York State Business Corporation Law §§ 1501,** *et seq.***)**

608.   The allegations of paragraphs 1 through 345 are hereby repeated and realleged as though fully set forth herein.

609.   For a period of at least five years, the Controllers have used the name of Defendants Shah and/or Barnes to circumvent the strict tenets of Article 15 of the Business Corporation Law and incorporate the Fraudulently Incorporated PCs and submit bills to insurers thereunder.

610.    Under New York law, a professional corporation is not eligible to recover No-fault benefits if it is not licensed in accordance with applicable New York State Law and any such entity does not have standing to seek reimbursement under the No-fault Law.  As a matter of eligibility and standing, the New York Court of Appeals held in *State Farm Mut. Auto. Ins. Co. v. Mallela*, 4 N.Y.3d 313, 827 N.E.2d 758, 794 N.Y.S.2d 700 (2005), that a fraudulently incorporated and/or professional corporation not licensed in accordance with New York State Law, such as the Fraudulently Incorporated PCs, not formed and/or operated in accordance with Article 15 of the Business Corporation Law, is not entitled to recover No-fault benefits.

611.    As the Fraudulently Incorporated PCs are fraudulently incorporated and/or are not licensed and/or operated in accordance with applicable New York State Law, with a nominal owner listed on each certificate of incorporation filed with the Department of State, concealing the true owners, it is respectfully requested that this Court issue an order declaring that Allstate is under no obligation to pay any of Fraudulently Incorporated PCs' No-fault claims because the Fraudulently Incorporated PCs are not properly licensed in accordance with New York State Law.

612.    As the Fraudulently Incorporated PCs are fraudulently incorporated and/or fraudulently licensed and/or operated, with nominal owners listed on the certificates of incorporation filed with the Department of State, concealing the true beneficial owners, it is respectfully requested that this Court issue an order declaring that the Fraudulently Incorporated PCs are ineligible to recover benefits under the New York State No-fault Law and, therefore, Allstate is under no obligation to pay any of Fraudulently Incorporated PCs' No-fault claims because of the Fraudulently Incorporated PCs' illegal corporate structure.

613.    Allstate has no adequate remedy at law.

614.    The Fraudulently Incorporated PCs will continue to bill Allstate for No-fault services despite their illegal corporate form and fraudulent incorporation absent a declaration by this Court that their activities are unlawful and that Allstate has no obligation to pay the pending, previously-denied and any future No-fault claims submitted by the Fraudulently Incorporated PCs due to their illegal corporate structure.

## TWENTY-SECOND CLAIM FOR RELIEF

## <u>AGAINST ALL DEFENDANTS</u>

**(Declaratory Judgment)**
**(Unlawful Kickback Scheme)**

615.    The allegations of paragraphs 1 through 345 are hereby repeated and realleged as though fully set forth herein.

616.    In order to be eligible to receive No-fault benefits, a provider must adhere to all applicable New York statutes, which grant the authority to provide health services in New York State.

617.    Section 6530(18) of New York's Education Law prohibits "[d]irectly or indirectly offering, giving, soliciting, or receiving or agreeing to receive, any fee or other consideration to or from a third party for the referral of a patient or in connection with the performance of professional services…" N.Y. Educ. Law § 6530(18), (19); *see also* 8 N.Y.C.R.R. § 29.1(b)(3), (4).

618.    The payment by a healthcare practitioner or PC to another party for the referral of a patient is a practice prohibited by New York State Law.

619.    On information and belief, Defendants engaged in a kickback scheme through which, in exchange for a kickback and/or other financial compensation, the Referring Providers referred their patients to Medical Diagnostic Services and First Columbus Medical

for Diagnostic Testing pursuant to a predetermined course of treatment, irrespective of medical necessity.

620.    On information and belief, Chillemi Jr. and Chillemi Sr., through Medical Diagnostic Services and First Columbus Medical, paid kickbacks and/or other financial compensation to the Referring Providers in order to receive referrals and be able to "treat" and/or "test" patients at the offices of such Referring Providers.

621.    Once the referral was made by the Referring Providers to Medical Diagnostic Services and First Columbus Medical, for Functional Evaluation Testing, Medical Diagnostic Services and First Columbus Medical billed insurance companies, in general, and Plaintiffs, in particular, for performing the actual Functional Evaluation Testing, while the Referring Providers billed insurance companies, in general, and Plaintiffs, in particular, for interpreting and reviewing the Functional Evaluation Testing results, all of which was based on the referral(s) by the Referring Providers.

622.    On information and belief, at all relevant times mentioned herein, the referrals for Functional Evaluation Testing were made pursuant a medical protocol, irrespective of medical necessity, that resulted from the financial arrangement or kickback scheme negotiated amongst the Defendants.

623.    Because the Covered Persons purportedly treated by Medical Diagnostic Services, First Columbus Medical and the Referring Providers were referred for Functional Evaluation Testing as a result of a kickback scheme in furtherance of Defendants' scheme to defraud, any bills submitted to Plaintiffs for such services were fraudulent and, as such, never eligible for reimbursement.

624.    In view of the unlawful kickback scheme in violation of N.Y. Educ. Law § 6530(18), (19) and 8 N.Y.C.R.R. § 29.1(b)(3), (4), Medical Diagnostic Services, First

Columbus Medical and the Defendant Referring Providers are not entitled to recover No-fault benefits under New York State Law.

625.     Medical Diagnostic Services, First Columbus Medical and the Defendant Referring Providers continue to engage in an unlawful kickback scheme.  Medical Diagnostic Services, First Columbus Medical and the Defendant Referring Providers continue to challenge prior claim denials.

626.     A justiciable controversy exists between Plaintiffs and Medical Diagnostic Services, First Columbus Medical and the Defendant Referring Providers since Medical Diagnostic Services, First Columbus Medical and the Defendant Referring Providers challenge Plaintiffs' ability to deny such claims.

627.     Plaintiffs have no adequate remedy at law.

628.     Medical Diagnostic Services, First Columbus Medical and the Defendant Referring Providers will continue to bill Plaintiffs for No-fault services and continue to engage in unlawful kickbacks for patient referrals absent a declaration by this Court that such activities are unlawful and that Plaintiffs have no obligation to pay the pending, previously-denied and any future No-fault claims submitted by Medical Diagnostic Services, First Columbus Medical and the Defendant Referring Providers while they were engaged in an unlawful kickback scheme.

## TWENTY-THIRD CLAIM FOR RELIEF

## AGAINST DEFENDANTS CHILLEMI JR., CHILLEMI SR., SHAH, MEDICAL DIAGNOSTIC SERVICES AND FIRST COLUMBUS MEDICAL, JOHN DOES 1 THROUGH 20 AND ABC CORPORATIONS 1 THROUGH 20

**(Declaratory Judgment)**
**(Services by Independent Contractors)**

629.     The allegations of paragraphs 1 through 345 are hereby repeated and realleged as though fully set forth herein.

630.     Pursuant to 11 NYCRR 65-3.11, a provider's entitlement to seek recovery of No-fault benefits directly from the insurer is contingent upon a direct assignment of such benefits to the "providers of services."

631.     A provider cannot be reimbursed for services rendered by an independent contractor, since it is not the "provider of services" in possession of a *direct* assignment as required under 11 NYCRR § 65-3.11(a).

632.     When services are performed by an independent contractor, the professional corporation is not deemed to be the licensed provider of those services and, thus, not entitled to reimbursement.

633.     On information and belief, First Columbus Medical submitted bills to Plaintiffs seeking reimbursement for services purportedly provided by independent contractors.

634.     Because the independent contractor purportedly performed the billed-for services, First Columbus Medical does not have, and never had, any right to bill for or collect No-fault benefits in connection with those services.

635.     First Columbus Medical continues to submit bills for services purportedly provided by independent contractors.  First Columbus Medical continues to challenge prior claim denials.

636.     A justiciable controversy exists between Plaintiffs and First Columbus Medical since First Columbus Medical challenges Plaintiffs' ability to deny such claims.

637.     Plaintiffs have no adequate remedy at law.

638.     First Columbus Medical will continue to bill Plaintiffs for No-fault services purportedly rendered by independent contractors absent a declaration by this Court that

Plaintiffs have no obligation to pay the pending, previously-denied and any future No-fault claims submitted by First Columbus Medical for services purportedly provided by independent contractors.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury.

**WHEREFORE,** Plaintiffs demand judgment as follows:

i)    Compensatory damages in an amount in excess of $600,000.00, the exact amount to be determined at trial, together with prejudgment interest;

ii)   Punitive damages in such amount as the Court deems just;

iii)  Treble damages, costs and reasonable attorneys' fees on the First through Fourteenth Claims for Relief, together with prejudgment interest;

iv)   Compensatory and punitive damages on the Fifteenth through Eighteenth Claims for Relief, together with prejudgment interest;

v)    Compensatory damages on the Nineteenth and Twentieth Claims for Relief, together with prejudgment interest;

vi)   Declaratory Relief on the Twenty-First Claim for Relief declaring that Plaintiffs are under no obligation to pay any of the Fraudulently Incorporated PCs' No-fault claims because of their illegal corporate structure;

vii)  Declaratory Relief on the Twenty-Second Claim for Relief declaring that Plaintiffs are under no obligation to pay any of the Medical Diagnostic Services, First Columbus Medical and/or the Referring Providers' No-fault claims that were the result of an unlawful kickback scheme;

viii) Declaratory Relief on the Twenty-Third Claim for Relief declaring that Plaintiffs are under no obligation to pay First Columbus's No-fault claims that were the result of services provided by one or more independent contractors; and

ix)   Costs, reasonable attorneys' fees and such other relief that the Court deems just and proper.

Dated: New York, New York,
       June 13, 2019

                    Morrison Mahoney, LLP

                    By  /s/ James A. McKenney
                        Robert A. Stern
                        James A. McKenney
                        Daniel S. Marvin
                        Robin K. Pass
                        Attorneys for Plaintiffs
                        Wall Street Plaza
                        88 Pine Street, Suite 1900
                        New York, New York 10005
                        (212) 825-1212

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, ALLSTATE FIRE & CASUALTY INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, ALLSTATE NEW JERSEY INSURANCE COMPANY, ALLSTATE NEW JERSEY PROPERTY & CASUALTY INSURANCE COMPANY AND ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, | X ) ) ) ) ) ) |
| PLAINTIFFS, | ) ) ) |
| -AGAINST- | ) ) ) |
| MICHAEL CHILLEMI JR., MICHAEL CHILLEMI, SR., D.C., JOHN MANFREDI, D.C., LANDIS BARNES, D.O., NILAY R. SHAH, M.D., DAVID ABRAMS, D.C., FOKION AVGERINOS, D.C., ANGELA CANCELLIERI, D.C., CHARLES CANCELLIERI, D.C., STEPHEN J. COSTA, D.C., DENNY JULEWICZ, D.C., JOHN PIAZZA, D.C., LEONID REYFMAN, M.D. A/K/A LEON REYFMAN, ALAN ROSEN, D.C., JEFFREY SPINA, D.C., AVGERINOS CHIROPRACTIC, P.C., BEDFORD-FLATBUSH CHIROPRACTIC, P.C., CANCELLIERI CHIROPRACTIC, P.C., DRS. ABRAMS, PIAZZA & JULEWICZ DC, PLLC, FIRST COLUMBUS MEDICAL P.C., LR MEDICAL, PLLC, MEDICAL DIAGNOSTIC SERVICES P.C., MIDDLETOWN CHIROPRACTIC P.C. D/B/A CHIROCARE CHIROPRACTIC, MOUNT VERNON MEDICAL CARE, P.C. D/B/A MOUNT VERNON MEDICAL CARE AND REHABILITATION, JOHN DOES 1 THROUGH 20 AND ABC CORPORATIONS 1 THROUGH 20, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| DEFENDANTS. | ) X |

19-CV-3051
(ERK)(VMS)

JURY TRIAL
DEMANDED

---

**AMENDED COMPLAINT**

---

**MORRISON MAHONEY, LLP**
**ATTORNEYS FOR ALLSTATE**
**WALL STREET PLAZA**
**88 PINE STREET, SUITE 1900**
**NEW YORK, NEW YORK 10005**
**TELEPHONE: (212) 825-1212**